# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TEXARKANA DIVISION

| | |
|---|---|
| MAXELL, LTD., *Plaintiff*, v. APPLE INC., *Defendant*. | Civil Action No. 5:19-cv-00036-RWS **JURY TRIAL DEMANDED** |

**PLAINTIFF MAXELL, LTD.'S OPPOSED MOTION TO COMPEL DEFENDANT APPLE INC. TO PRODUCE TIMELY DISCOVERY**

Apple is engaged in a sharp and calculated strategy to delay discovery in a fashion that is guaranteed to prejudice Maxell and disrupt the Court's Docket Control Order. Apple's responses and objections show that Apple treats *deadlines* as *starting points* for collecting discovery. The result is a woefully deficient production and interrogatory "responses" that suggest answers in the future, if at all. This must be addressed now to avoid more prejudice from Apple's delays, including waiting until the final days of discovery to provide relevant, responsive information.

**I.    The Court Should Order Apple to Substantially Complete its Document Production by September 6, 2019.**

On July 10, each party was to produce "all documents… that are relevant to the pleaded claims or defenses involved in this action, except to the extent these disclosures are affected by the time limits set forth in the Patent Rules…." D.I. 42 at 3(b); D.I. 46. Disregarding "all documents," Apple contends July 10 is merely the date for productions to **begin**. Apple thus produced only 190 documents—with no user manuals, licenses, sales, or marketing information.[1] Apple claims it will produce *some* of these materials by August 14, Apple's LPR 3-4 deadline. But Apple insists it can continue to slow-roll production at least until the close of fact discovery.

Under any interpretation of the Discovery Order and Patent Rules, Apple's document production should be substantially complete by August 14—including "all documents" required by ¶3(b) of the Discovery Order and those required by LPR 3-4. Despite Maxell's repeated requests, and offers of two different proposed deadlines, Apple refuses to provide any date certain by which its production will be substantially complete other than the close of discovery.

In the ordinary case, Maxell would have served RFPs along with other discovery (on June 18) and Apple would have had to produce its materials within 30 days—July 18—or seek

---

[1] Maxell substantially completed its production July 10, excepting documents needing third party consent. It sought consent once the Protective Order issued and produced most such materials. Apple claims it withheld documents pending consent, but provides no details about whether consent has yet been sought.

additional time from the Court. F.R.C.P. 34(b). But this Court's experience with patent cases, including the unique discovery challenges they present, led to the development of a model discovery that requires early and robust disclosures from the parties. The Court's mandatory Additional Disclosures are intended to "obviate the need for requests for production." D.I. 42 at fn. 1. Rather than the 30 days allowed under Rule 34, the Court set a date certain for the production of all relevant materials—July 10. D.I. 46. In direct defiance of the purpose of the Discovery Order, Apple seeks to evade timely document production in a way it could not under the traditional operation of Rule 34. Apple should not be permitted to game the system this way.

As of this filing, Apple's production is deficient. Apple has not produced any sales or marketing documentation, a majority of its licenses, or corporate organization and policy documentation. It produced *some* technical documentation, but is still deficient in this category too. Maxell requests that Apple be ordered to substantially complete its production of all relevant materials by September 6 (3.5 weeks after the latest it should have done so under the rules).[2]

## II. Apple's Must Provide Substantive, Complete Interrogatory Responses.

Apple has not provided substantive, complete responses to *any* of Maxell's first set of interrogatories and has agreed to fully "supplement" only one. Apple's refusals to respond are based on improper objections; sometimes Apple simply states it will provide a response in the future. Such unilateral delay of discovery without good cause or seeking an extension from Maxell or the Court is contrary to F.R.C.P. 33(b)(2). Maxell requests that Apple be required to provide substantive, binding responses no later than September 6 (**7 weeks** after initially due).

**Interrogatory Nos. 3, 4, 5, and 9** seek information regarding Apple's licenses, sales, awareness of the asserted patents, and forecasts. For each, Apple responded: "At an appropriate

---

[2] Apple also tries to use its delayed production as a way to avoid providing timely interrogatory responses. It is for this reason too that it is necessary to provide a date certain for substantial completion.

time contemplated by the Docket Control Order…, Apple will identify documents pursuant to [F.R.C.P.] 33(d) from which Maxell may derive [responsive] information." *See* Ex. A. The "appropriate time" to respond to an interrogatory is 30 days after service. F.R.C.P. 33(b)(2). Apple's use of Rule 33(d) as a placeholder to buy time to substantively respond is improper. Rule 33(d) requires "specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them…." It "requires more than a promise to produce certain unspecified records at some future time." *Parks, LLC v. Tyson Foods, Inc*., No. 5:15-cv-00946, 2015 U.S. Dist. LEXIS 112861, at *13-14 (E.D. Pa. August 25, 2015).

When confronted, Apple agreed to update the responses to identify relevant documents "as soon as they are produced." But this agreement, when accompanied by delays in document production, provides no assurance that Apple will provide fulsome responses at any time before the close of fact discovery. As noted, Apple refuses to commit to a date by which its production will be substantially complete, which means there is no date by which Maxell can expect Apple's response to the interrogatories to be complete. This is true even for interrogatories for which Apple has provided a date certain for supplementation given Apple's tendency to treat deadlines as dates for providing initial, rather than complete, responses.

Apple's intent to delay is evident from its statement that Maxell cannot "unilaterally change Apple's production obligations by virtue of its interrogatories." A party is not required to respond to an interrogatory using F.R.C.P. 33(d). Apple could provide a narrative response, which has no impact on the production. By relying on documents to respond to interrogatories while simultaneously withholding the production of such documents, Apple is depriving Maxell of its ability to obtain discovery in this case until Apple decides it is time. Apple should be required to provide complete response to these interrogatories by September 6.

**Interrogatory No. 2** seeks Apple's basis for its contention that any accused product does not infringe. In its initial disclosures, Apple states that it "is currently aware of the legal theories and factual bases of its claims and defenses listed below," which includes non-infringement. *See,* Ex. B (excerpt of Apple Initial Disclosures). But Apple refuses to provide a response, stating it seeks early disclosure of expert opinions and that non-infringement contentions are not required. Maxell recognizes it may not seek early expert opinion and does not intend to do so. Rather, Maxell seeks the *factual bases* for non-infringement that Apple has already explicitly stated is within its possession. If Apple has "legal theories and factual bases" for its claims of non-infringement currently within its possession, Apple must be compelled to disclose them now.

**Interrogatory No. 3** seeks certain information regarding Apple's patent licenses that relate to the Accused Products. Ex. A. Apple stated it will eventually produce and identify a subset of its licenses that it unilaterally deems are "reasonably relevant to the technology and/or functionalities accused in this case and reasonably proximate to the dates of a hypothetical negotiation or negotiations asserted by Maxell," but refuses to identify all licenses that relate to the accused, or reasonably similar, products. Apple also provides no detail regarding how it is making its relevance determinations and refuses to provide information regarding how the royalty/consideration of each license was determined. Apple should not be permitted to limit its discovery in this way. License agreements that pertain to the accused products, and information about how consideration was reached, are highly relevant to a damages analysis—at least to *Georgia-Pacific* factors 2 and 12 and to the form of a license that would have been entered into as a result of a hypothetical negotiation. This is true even if the technology of the agreements is arguably dissimilar from that of the asserted patents. *See, e.g.*, *Mirror Worlds Techs., LLC v. Apple Inc.*, No. 6:13-cv-419, 2016 WL 4265758, at *1 (E.D. Tex. Mar. 17, 2016) (granting

motion to compel license agreements related to wireless technology when patents were arguably directed to unrelated technology because they may be relevant to Georgia-Pacific factors 2 and 12 and to the form of a license). Moreover, Maxell should not be asked to trust Apple to be the arbiter of what license agreements are relevant to Maxell's claims, particularly when it is clear Apple is so resistant to providing timely, responsive discovery.

**Interrogatory No. 4** seeks certain information relating to Apple's sales and profits from the accused products. Apple has stated it will eventually produce information regarding revenues, costs, and/or profits relating to U.S. sales, but refuses to provide units sold, or entities responsible for sales/distribution, customers of sales/distributions. Information regarding Apple's sales networks and distribution channels is relevant to the issue of damages. Furthermore, authorized sellers of Apple's products may have information regarding the operation, use, and marketing of the accused products and Maxell is entitled to know the identity of such entities.

**Interrogatory No. 5** seeks information regarding Apple's first awareness of the asserted patents. Ex. A. Apple states it will eventually produce and identify documents regarding when Apple first learned of the patents, but refuses to provide details regarding the circumstances surrounding such awareness, such as actions taken upon becoming aware. Maxell is alleging willful infringement in this litigation, which is based in part on years of negotiations between the parties. The circumstances surrounding Apple's first awareness of the patents and actions taken since are thus squarely relevant to the claims of this case and must be provided.

**Interrogatory No. 6** seeks the part number and supplier of the relevant components and the cost to Apple of such components. Ex. A. To eliminate doubt about what Maxell seeks, Maxell provided an excel chart with the interrogatory that Apple could fill in, which identified the specific components and which information was sought. Ex. C. Apple refused to respond,

5

stating it is compound[3] and constitutes at least 21 separate interrogatories. Apple's position is absurd. Interrogatory subparts are not counted as discrete subparts if they are "logically or factually subsumed within and necessarily related to the primary question." *Krawczyk v. City of Dallas*, No.3:03-cv-0584, 2004 U.S. Dist. LEXIS 30011, at *7 (E.D. Tex. Feb. 27, 2004). Maxell could have simply propounded an interrogatory asking Apple to provide the requested information for the relevant components implicated by the asserted patents. That Maxell attempted to clarify and limit the scope of what constitutes a "relevant component" should not be held against it and suddenly transform a single interrogatory into 21.

Following meet and confer, Apple stated it will produce and identify Bills of Materials (BOMs) for the accused products in response to this interrogatory. Reliance on F.R.C.P. 33(d) is not appropriate here. First, the BOMs do not have the requested cost information. Second, the burden on Maxell of working through BOMs produced as separate 100+ page PDFs for each accused product to identify relevant components is substantially greater than it would be for a highly sophisticated company like Apple, who undoubtedly meticulously tracks this information, to perform searches on its own system. This is particularly true given that Apple is aware of the terminology it uses to describe the various components, which may be unknown to Maxell.

**Interrogatory No. 7** asks Apple to identify any steps taken to avoid infringing any claim of an asserted patent. Ex. A. Apple responds that it has not infringed and otherwise refuses to provide any response on the basis of an objection that the interrogatory seeks expert discovery. While Apple may takes steps in the *future* that may implicate expert discovery, such objection does not apply to prior conduct. If Apple took any steps in the past to avoid infringement, that is a fact that Maxell is entitled to discover now.

---

[3] Apple also improperly objects to Interrogatories 1, 3-5, and 9 as compound, intending to use those objections as a basis to avoid answering future interrogatories. Maxell requests the Court nip these discovery games in the bud and order Apple to comply with its discovery obligations.

6

**Interrogatory No. 8** asks Apple to describe any acceptable, non-infringing alternatives. Apple again refuses to respond on the basis that the interrogatory seeks expert discovery. This District has held that a defendant must identify non-infringing alternatives prior to the deadline for expert disclosures to enable a plaintiff to conduct discovery into the alternatives. *See, e.g.*, *Godo Kaisha IP Bridge 1 v. Broadcom Ltd.*, No. 2:16-CV-134-JRG-RSP, 2017 WL 2869344, at *2-3 (E.D. Tex. Apr. 20, 2017)(striking expert opinions based on non-infringing alternatives not previously disclosed, stating "Defendants provide no adequate explanation for failing to disclose its non-infringing alternatives and the prejudice to [Plaintiff] for failing to respond to the interrogatory is significant."). Apple cannot withhold this discovery until expert reports.

**Interrogatory No. 9** asks Apple to identify documents related to sales forecasts and projections for the accused categories of products. Although Apple stated in its response that it will produce documents related to the specific accused products, following meet and confer it now appears that Apple refuses to provide even this information. Forecasts are relevant to the issue of damages. Where a damages expert calculates patent damages as a lump-sum royalty, she may estimate future use of the patented invention. *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1327 (Fed. Cir. 2009). This District recently upheld a damages assessment that "conservatively account[ed] for future sales of accused products based on forecasts and inferences drawn from [defendant's] past sales." *Ericsson Inc., et al, v. TCL Commc'ns Tech. Holdings, Inc.*, No. 2:15-cv-00011-RSP, 2018 WL 2149736, at *7 (E.D. Tex. May 10, 2018).

### III. Conclusion

Maxell requests that Apple be ordered to substantially complete its production and provide fulsome, binding interrogatory responses by no later than September 6. Otherwise, Apple will continue to ignore its discovery obligations to will severely prejudice Maxell.

Dated: August 5, 2019      By:  /s/ Jamie B. Beaber

Geoff Culbertson
Kelly Tidwell
Patton, Tidwell & Culbertson, LLP
2800 Texas Boulevard (75503)
Post Office Box 5398
Texarkana, TX 75505-5398
Telephone: (903) 792-7080
Facsimile: (903) 792-8233
gpc@texarkanalaw.com
kbt@texarkanalaw.com

Jamie B. Beaber
Alan M. Grimaldi
Kfir B. Levy
James A. Fussell, III
Baldine B. Paul
Tiffany A. Miller
Saqib J. Siddiqui
Bryan C. Nese
William J. Barrow
Alison T. Gelsleichter
MAYER BROWN LLP
1999 K Street, NW
Washington, DC 20006
Telephone: (202) 263-3000
Facsimile: (202) 263-3300
jbeaber@mayerbrown.com
agrimaldi@mayerbrown.com
klevy@mayerbrown.com
jfussell@mayerbrown.com
bpaul@mayerbrown.com
tmiller@mayerbrown.com
ssiddiqui@mayerbrown.com
bnese@mayerbrown.com
wbarrow@mayerbrown.com
agelsleichter@mayerbrown.com

Robert G. Pluta
Amanda Streff Bonner
MAYER BROWN LLP
71 S. Wacker Drive
Chicago, IL 60606
(312) 782-0600
rpluta@mayerbrown.com

>asbonner@mayerbrown.com
>
>*Counsel for Plaintiff Maxell, Ltd.*

## CERTIFICATE OF CONFERENCE

I certify that Plaintiff Maxell, Ltd. has complied with the requirements of Local Rule CV-7(h) and the Discovery Order governing this case. Specifically, Maxell sent Apple a written statements outlining its deficient discovery on July 19, 2019. The parties held a telephonic meet and confer on July 30, 2019, which was attended by lead and local counsel for both parties. On August 2, 2019, Apple provided a written response to Maxell's July 19 letter stating the requested items that it would disclose and the reasons why any requested items would not be disclosed. Although the parties discussed their respective positions, they did not come to an agreement regarding the items identified in this motion.

>*/s/ Jamie B. Beaber*
>Jamie B. Beaber

**CERTIFICATE OF SERVICE**

The undersigned certifies that all counsel of record who are deemed to have consented to electronic service are being served this 5th day of August, 2019, with a copy of this document via the Court's electronic CM/ECF system.

Dated: August 5, 2019 　　　　　　　　　　　 */s/ Jamie B. Beaber*
　　　　　　　　　　　　　　　　　　　　　　　Jamie B. Beaber