IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | |
|---|---|
| MAXELL LTD., <br><br> Plaintiff, <br><br> v. <br><br> APPLE INC, <br><br> Defendant. | § § § § § § § § § § § § CIVIL ACTION NO. 5:19-CV-00036-RWS |

**ORDER**

Before the Court is Apple's Motion for Partial Dismissal for Failure to State a Claim (Docket No. 27).  Briefing in this matter has concluded, and the Court heard this motion on August 28, 2019. Docket No. 67.  For the reasons stated below, Defendant's motion is **GRANTED-IN-PART** and **DENIED-IN-PART**.

I. **Background**

Plaintiff Maxell, Ltd. filed its complaint for patent infringement against Apple on March 15, 2019.  Docket No. 1.  The complaint alleges that Apple infringes 10 patents related to mobile device technology under theories of direct infringement, induced infringement, willful infringement and contributory infringement.  *Id.*

The complaint alleges that from June 2013 to "late 2018," Maxell and Apple had "numerous meetings and interactions" in furtherance of a "potential business transaction" related to the patented technology.  *Id.* ¶ 5.  According to the complaint, these meetings and interactions involved discussions of the patents and Apple's ongoing use of the patented technology.  *Id.*  The complaint provides a specific date during this period on which Maxell asserts Apple was placed

on notice of each of the asserted patents.  For each patent, the complaint further states "Apple will thus have known and intended (since receiving such notice) that its continued actions would actively induce and contribute to actual infringement" of the patent.  *See, e.g.*, *id.* ¶ 30.

Maxell's infringement allegations for each patent are similar.  Portions of the complaint regarding the '317 Patent, entitled "*portable terminal with the function of navigation*," are representative of the dispute:

> 23. Apple has directly infringed one or more claims of the '317 Patent . . . by or through making, using, importing, offering for sale and/or selling its telecommunications technology, including by way of example a product known as the iPhone XS
>
> 24. The iPhone XS includes a screen for displaying information, at least a GPS chipset/cellular chipset/Wi-Fi chipset/iBeacon/compass/gyroscope for providing location and/or orientation information, "Maps" and "Find My Friends" software that allows users to access location information including the present location of the device and orientation of the device and use such information to provide walking navigation information and/or share location.  The iPhone XS further uses location servers to provide walking navigation information, route information, and/or to provide its position to additional devices in order to allow users to walk to a particular shared location.  For example, the following excerpts from Apple's websites provide non-limiting examples of the iPhone XS at least claims 1-3, 5-7, and 10-11 of the '317 Patent:



See https://support.apple.com/en-us/HT201493



See https://www.apple.com/ios/maps/

> 25. The foregoing features and capabilities of the iPhone XS, and Apple's description and/or demonstration thereof, including in user manuals and advertising, reflect Apple's direct infringement by satisfying every element of at least claims 1-3, 5-7, and 10-11 of the '317 Patent, under 35 U.S.C. § 271(a).

*Id.* at ¶ 23–25. The complaint then lists numerous additional devices, termed the " '317 Accused Products," which it alleges "also include a 'Maps' application, a 'Find My Friends' application, and/or 'Location' services as advertised on Apple's website." *Id.* ¶ 26. The complaint continues:

> 27. Apple has indirectly infringed at least claims 1-3, 5-7, and 10-11 of the '317 Patent . . . by, among other things, actively inducing the use, offering for sale, selling, or importation of at least the '317 Accused Products. Apple's customers who purchase devices and components thereof and operate such devices and components in accordance with Apple's instructions directly infringe one or more claims of the '317 Patent in violation of 35 U.S.C. § 271. Apple instructs its customers through at least user guides or websites, such as those located at: https//support.apple.com/en_US/manuals or https://www.apple.com/ios/maps/. Apple is thereby liable for infringement of the '317 Patent pursuant to 25 U.S.C. § 271(b).

*Id.* ¶ 27. The complaint then sets out the allegations for contributory and willful infringement. *Id.* ¶ 28–31.

## II.    Applicable Law

When considering a motion to dismiss under Federal Rule of Procedure 12(b)(6), a court must assume that all well-pled facts are true and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.) L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court must then decide whether those facts state a claim that is plausible on its face. *Bowlby*, 681 F.3d at 219. The

complaint need not contain detailed factual allegations, but a plaintiff must plead sufficient factual allegations to show that he is plausibly entitled to relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56, 570 (2007) ("[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677–79, 684 (2009) (discussing *Twombly* and applying *Twombly* generally to civil actions pleaded under Rule 8). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).

Induced infringement under 35 U.S.C. § 271(b) requires (1) an act of direct infringement by another, and (2) that the defendant knowingly induced the infringement with the specific intent to encourage the other's infringement. *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1378 (Fed. Cir. 2005). Thus, the complaint must (1) adequately plead direct infringement by the defendant's customers, (2) contain facts plausibly showing that the defendant specifically intended for its customers to infringe and (3) contain facts plausibly showing that defendant knew the customer's acts constituted infringement. *See In re Bill of Lading Transmission & Processing Sys. Patent Lit.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012).

A plaintiff claiming contributory patent infringement under 35 U.S.C. § 271(c) must allege (1) an act of direct infringement, (2) that the defendant "knew that the combination for which its components were especially made was both patented and infringing" and (3) that the components have "no substantial non-infringing uses." *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1312 (Fed. Cir. 2005) (internal quotations omitted).

Willful infringement requires a showing that (1) "the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent" and (2) the risk of

infringement "was either known or so obvious that it should have been known to the accused infringer." *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007). "At the pleading stage, a plaintiff alleging a cause of action for willful infringement must plead facts giving rise to at least a showing of objective recklessness of the infringement risk. . . . Actual knowledge of infringement or the infringement risk is not necessary to plead a claim for willful infringement, but the complaint must adequately allege factual circumstances in which the patents-in-suit [are] called to the attention of the defendants." *Monec Holding AG v. Motorola Mobility, Inc.*, 897 F. Supp. 2d 225, 236 (D. Del. 2012) (internal quotations omitted); *see Elbit Sys. Land and C4I Ltd. v. Hughes Network Sys., LLC*, No. 2:15-cv-37, 2016 WL 3878246, at *1 (E.D. Tex. Mar. 30, 2016) (quoting *Monec Holding*, 897 F. Supp. 2d at 236)).

### III. Discussion

Apple raises three arguments in support of its motion for partial dismissal: (1) the Court should dismiss Maxell's induced infringement claims for failing to plausibly allege specific intent; (2) the Court should dismiss Maxell's claims for pre-suit indirect and willful infringement of the '586 Patent for not plausibly alleging Apple's knowledge of the patent; and (3) the Court should dismiss Maxell's claims for pre-suit indirect and willful infringement of all asserted patents for failing to plausibly allege knowledge of infringement. Docket No. 27.

#### A. *Induced Infringement Claims*

Apple moves to dismiss Maxell's induced infringement claims, arguing that the complaint does not plausibly allege Apple had "specific intent" to induce infringement. Docket No. 27 at 6. Apple alleges that the complaint cites broadly to Apple's website and user manuals, without alleging how the instructions directed Apple's customers to use the accused products in an infringing manner. *Id.* at 6–8. Referring to the paragraphs stating the induced infringement claims

for each patent, Apple argues the complaint repeats the same "boilerplate" language that "Apple instructs its customers through at least user guides or websites . . . ." *Id.* at 6 (referring to ¶¶ 27, 41, 56, 69, 86, 99, 112, 129, 142 and 157).

Apple incorrectly asserts that the complaint includes "nothing more than citations to Apple's user guides and websites . . . ." *Id.* at 8. Maxell alleged significantly more. The complaint sets out detailed allegations of direct infringement, identifying the accused functionalities and accused devices for each patent. *See, e.g., id.* ¶¶ 24–26. The complaint further includes screen-shots and descriptions of Apple's online user manuals and advertisements, which the complaint alleges contain "descriptions and demonstrations" of the accused functionalities. *See, e.g., id.* ¶¶ 24–25. Some of the pictured webpages appear to contain directions for customers to use the accused functionalities. *See id.* ¶ 24 (a screenshot of Apple's website describing how users can use the "Find my Friends" app on an iPhone, iPad, iPod touch or Apple Watch). Advertising the benefits of the accused functionalities gives rise to a reasonable inference that Apple intended to induce its customers to infringe the patent. *Bill of Lading*, 681 F.3d at 1342–45; *Uniloc USA, Inc. v. Avaya Inc.*, No. 6:15-cv-1175, 2016 WL 7042236, at *4 (E.D. Tex. May 14, 2016); *BMC Software v. ServiceNow, Inc.*, No. 2:14-cv-903, 2015 WL 2379333, at *3 (E.D. Tex. May 18, 2015) (holding allegations that a defendant's activities specifically highlighted the infringing features of the accused products sufficiently to pleaded induced infringement).

The complaint further alleges that Apple's customers directly infringe the patents by using the accused products in accordance with Apple's instructions and that Apple provides customers instructions on how to infringe the patents with its user manuals and websites. Docket No. 1 ¶ 27. The preceding discussion identifying the accused functionalities and the screenshots of advertisements and instructions on Apple's website, coupled with this allegation, are more than

enough to give rise to a reasonable inference that Apple intended to induce infringement.  *See Uniloc*, 2016 WL 7042236, at *4 (finding allegations that the defendant's customers directly infringe the patents-in-suit and that the defendant provided step-by-step instructions for customers on how to infringe adequately pleaded specific intent).

Apple suggests that courts "routinely dismiss inducement claims premised on general citations to user manuals and websites."  *See* Docket No. 27 at 7 (citing *Stragent, LLC v. BMW of N. Am., LLC*, No. 6:16-cv-446-RWS-KNM, 2017 U.S. Dist. LEXIS 156084, at *25 (E.D. Tex. Mar. 3, 2017); *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, No. 6:14-cv-752-JRG-JDL, 2015 U.S. Dist. LEXIS 107354, at *12–13 (E.D. Tex. Jul. 15, 2015); *Am. Vehicular Scis. LLC v. Mercedes-Benz U.S. Int'l, Inc.*, No. 6:13-cv-307 MHS-JDL, 2014 U.S. Dist. LEXIS 184564, at *11 (E.D. Tex. Feb. 7, 2014)).  However, the cases that Apple cites are readily distinguishable.  The court in *Core Wireless* explicitly recognized that "the provision of instructions by an accused infringer may indicate specific intent to induce infringement."  2015 U.S. Dist. LEXIS 107334, at *13.  However, reference to instructions without allegations of which functionalities are at issue or facts identifying how those instructions direct customers to use the products in an infringing manner is insufficient.  *Id.*  The court in *Stragent* similarly found that "generic statements" regarding the provisions of instructions are insufficient, but when alleged with supplemental facts, including "advertisements, promotions, and publications of demonstrational videos" of the accused products, would sufficiently support an induced infringement claim.  2017 U.S. Dist. LEXIS 156084, at *25.

Maxell identified the accused functionalities and included citations and screenshots of Apple's advertisements and user guides with alleged "descriptions and demonstrations" for those accused functionalities.  These factual allegations are sufficient to give rise to a reasonable

inference that Apple specifically intended to induce infringement.  For these reasons, Apple's motion to dismiss Maxell's induced infringement claims should be **DENIED.**

### B. *Pre-suit Indirect and Willful Infringement of the '586 Patent*

Apple next seeks dismissal of Maxell's claims for pre-suit indirect and willful infringement of the '586 Patent.  Apple argues the complaint does not plausibly allege pre-suit knowledge of the '586 Patent.  Docket No. 27 at 8.  The complaint asserts Apple "has been on notice of the '586 Patent since, at least, October 9, 2018."  Docket No. 1 ¶ 145.  Apple contends this is facially implausible because the '586 Patent did not issue until February 19, 2019.  Docket No. 27 at 8 (citing *Diamond Grading Techs. v. Am. Gem. Soc'y*, No. 2:14-cv-1162, 2016 WL 3902482, at *5–6 (E.D. Tex. Mar. 30, 2016) ("[M]ere notice of the pendency of a patent application is not sufficient to support a finding of willful infringement of a subsequently issued patent: . . . [f]iling an application is no guarantee any patent will issue.") (internal quotations omitted)).

Maxell argues in its response that, in October 2018, it also provided Apple with notice that the '586 Patent application had "already been allowed by the PTO."  Docket No. 31 at 8.  Because this fact is not included in Maxell's complaint, the Court may not consider it in evaluating the motion to dismiss.  *See Lone Star*, 594 F.3d at 387; *Ford v. United Airlines, Inc.*, No. 4:18-cv-0924, 2018 WL 3157021, at *1 n.3 (S.D. Tex. June 27, 2018).

Knowledge of a patent application alone is insufficient to demonstrate knowledge of the later issued patent.  *See State Indus. V. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985); *Diamond Grading*, 2016 WL 105697, at *5–6 (granting a motion to dismiss under Rule 12(b)(6) where Plaintiff failed to allege knowledge of the ultimately issued patent).  Considering only those facts included in the complaint, Maxell has alleged nothing more than knowledge of the patent application.  The complaint alleges that the Apple had knowledge of the '586 patent since October

2018, but the patent issued in February 2019. Moreover, the complaint alleges that Maxell's interactions with Apple regarding its patents continued only until "as recently as late 2018," months before the '586 Patent issued. *See* Docket No. 1 ¶ 5. Maxell has thus pleaded only that Apple had knowledge of the '586 Patent application and has not alleged facts sufficient to plausibly allege that Apple had knowledge of the ultimately issued '586 patent.

It may be, as was suggested in *Blitzsafe Texas, LLC v. Volkswagen Gr. Of Am. Inc.*, that there are cases where a party's exposure to a patent application may give rise to knowledge of a later issued patent. No. 2:15-cv-1274, 2016 WL 4778699, at *6 (E.D. Tex. Aug. 19, 2016) ("For example, if an accused infringer receives notice of a patent application for which a notice of allowance has been issued, the accused infringer may well be found to have knowledge of the claims when they issue."). However, the Court is limited to considering only those facts contained in the complaint. Those facts allege only that Apple had knowledge of the '586 patent application.

Maxell has thus failed to plausibly allege that Apple had pre-suit knowledge of the '586 Patent. Apple's motion to dismiss Maxell's claims of pre-suit indirect and willful infringement of the '586 Patent is **GRANTED.**

### C. *Pre-suit Indirect and Willful Infringement of All Asserted Patents*

Apple finally moves to dismiss Plaintiff's pre-suit indirect and willful infringement claims for failing to plausibly allege knowledge of infringement. Docket No. 27 at 10. Apple argues that, although the complaint alleges Apple had knowledge of the asserted patents, the complaint never alleges how Apple was placed on notice of alleged *infringement*. *Id.* at 10–11. That is, Maxell fails to allege what activities or products allegedly infringed the asserted patents. *Id.*

With regard to willful infringement, "[a]ctual knowledge of infringement . . . is not necessary to plead a claim for willful infringement, but the complaint must adequately allege

factual circumstances in which the patents-in-suit are called to the attention of defendants." *See Elbit Sys. Land*, 2016 WL 3878246, at *3.

Apple argues that the complaint does not allege "if or how Maxell ever made Apple aware of what activities or products allegedly infringed." Docket No. 27 at 11. The Court disagrees. The complaint states that Apple and Maxell met and communicated multiple times between June 2013 and "late 2018" to discuss a potential business transaction relating to the asserted patents. Docket No. 1 ¶ 5. The complaint states that, through these meetings and Apple's further inquiries, Maxell shared "detailed information regarding Maxell's patents, the developed technology, and Apple's ongoing use of this patented technology," including "detailed explanations regarding Maxell's patents and allegations." *Id.* The complaint further includes specific dates, during this time-span, for each patent at issue, on which it alleges Apple was placed on notice of the patents and its infringing activities. *See, e.g.*, *id.* ¶ 30 ("Apple has been on notice of the '317 Patent since, at least, June 25, 2013. By the time of trial, Apple will thus have known and intended (since receiving such notice), that its continued actions would actively induce and contribute to actual infringement . . . ."). Maxell's allegations that the parties discussed the patents, Apple's products and Apple's use of the patented technology during a six-year negotiation period, assumed true, give rise to a reasonable inference that Apple was on notice of both the patents and the alleged infringement. *See Eidos Display, LLC v. Chi Mei Innolux Corporation*, No. 6:11-CV-00201, 2017 WL 9288140, at *5 (E.D. Tex, Apr. 6, 2017) (finding pre-suit knowledge that defendant's activities were allegedly infringing where, years before suit the defendant received a letter requesting the defendant evaluate the relationship between the asserted patent and defendant's identified products). Apple argues the complaint fails to allege what happened at the meetings, what products

were discussed, or how any infringement allegations were communicated. The pleading standards do not require this level of specificity.

Apple's reference to *Deere & Co. v. AGCO Corp.*, No. 18-827-CFC, 2019 U.S. Dist. LEXIS 25885 (D. Del. Feb. 19, 2019) is unavailing. *See* Docket No. 37 at 5. The complaint in *Deere* cited a letter sent to defendants allegedly giving notice of the patent and infringement. The court found the complaint insufficient because it did not allege that the letter identified the infringing products or that the letter stated that those products infringed any of the patents. 2019 U.S. Dist. LEXIS 25885, at *15–16. By contrast, here, Maxell alleged "numerous meetings" over the course of six years in which the patents, products and allegations in the complaint were discussed.

These factual allegations are sufficient to support a reasonable inference that Apple had pre-suit knowledge of both the patents and the infringement. Apple's motion to dismiss Maxell's claims for pre-suit indirect and willful infringement of all asserted patents is **DENIED**.

## IV. Conclusion

It is accordingly

**ORDERED** that Defendant Apple's motions to dismiss Maxell's induced infringement claims and the claims for pre-suit indirect and willful infringement are **DENIED**. It is further

**ORDERED** that Defendant Apple's motion to dismiss Maxell's claims for pre-suit indirect and willful infringement of the '586 patent is **DISMISSED WITHOUT PREJUDICE.**

It is so **ORDERED.**

**SIGNED this 23rd day of October, 2019.**

ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE