IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| MAXELL LTD., | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO. 5:19-CV-00036-RWS |
| | § | |
| v. | § | |
| | § | |
| APPLE INC, | § | |
| | § | |
| Defendant. | § | |

**ORDER**

Before the Court is Plaintiff Maxell, Ltd.'s Opposed Motion to Compel Apple Inc. to Produce Timely Discovery (Docket No. 56). Maxell moves to compel document production and responses to Interrogatory Nos. 2–9. For the reasons set forth below, Maxell's motion is **GRANTED-IN-PART** and **DENIED-IN-PART**.

**I.    Legal Standard**

Under Rule 26(b)(1) of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." FED. R. CIV. P. 26(b)(1). Federal Rule of Evidence 401 defines relevant evidence "as evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." "Relevancy is broadly construed, and a request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party." *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 470 (N.D. Tex. 2005) (citations omitted).

The discovery rules are given broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials. *Herbert v. Lando*, 441 U.S. 153, 176 (1979). "It hardly bears repeating that control of discovery is committed to the sound discretion of the trial

court . . . ." *Williamson v. U.S. Dep't of Agric.*, 815 F.2d 368, 382 (5th Cir. 1987). Nevertheless, discovery does have "ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)).

"The party resisting discovery bears the burden to clarify and explain its objections and to provide support for those objections." *Fed. Trade Comm'n v. Liberty Supply Co.*, No. 4:15-cv-829, 2016 WL 4272706, at *4 (E.D. Tex. Aug. 15, 2016) (quoting *Enron Corp. Savings Plan v. Hewitt Assocs., L.L.C.*, 258 F.R.D. 149, 159 (S.D. Tex. 2009). Additionally, "the party resisting discovery must show specifically how . . . each [request] is not relevant or how each question is overly broad, burdensome or oppressive:"

> In order to satisfy its burden, the objecting party must make a specific, [detailed showing of how a request is burdensome. A mere] statement by a party that a request is overly broad and unduly burdensome is not adequate to voice a successful objection. Broad-based, non-specific objections are almost impossible to assess on their merits, and fall woefully short of the burden that must be borne by a party making an objection to an interrogatory or document request. A party asserting undue burden typically must present an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request.

*Id.* (quotations and citations omitted). Because the Defendants seek to limit the world of discoverable material, they bear burden of justifying their proposed limitation. *Id.*

## II. <u>Motion to Compel Documents</u>

Maxell asks the Court to compel Apple to "substantially complete its document production." Maxell argues that this action's Docket Control Order (Docket No. 46) and Discovery Order (Docket No. 42) required both parties to produce "all documents . . . that are relevant to the pleaded claims or defenses involved in this action, except to the extent these disclosures are affected by the time limits set forth in the Patent Rules . . ." by July 10, 2019. Yet, according to Maxell, Apple only produced 190 documents on July 10 and is trying to "slow-roll production at least until the close of fact discovery."

Apple accuses Maxell of seeking to impose an arbitrary document production deadline. Apple contends that "no court in this district has ever interpreted the Paragraph 3(b) date as a deadline to complete document production." Apple also points out that Maxell did not comply with its interpretation of the order by producing additional documents on July 29. Apple assures the Court that it is complying with the Discovery Order, having produced documents on July 18, July 26, August 2 and August 14.

Maxell is correct that the date to "Comply with Paragraphs 1 & 3 of the Discovery Order (Initial and Additional Disclosures)" provided in the parties' Docket Control Order was not merely the date that discovery begins. *Cf.* FED. R. CIV. P. 26(d)(1) (explaining that discovery may commence after the parties comply with Rule 26(f)). However, in this case, it was unreasonable to expect Apple to produce *all* relevant documents, apart from those provided for in the Local Patent Rules, by July 10.[1]

Maxell accused various functions and technologies in numerous Apple iOS devices, including several generations of iPhone and iPad products, of infringing 10 patents. Such broad allegations necessarily contemplate extensive discovery and document production. *Cf.* FED. R. CIV. P. 26(b)(1) (Discovery should be "proportional to the needs of the case, considering the importance of the issues at stake in the action [and] the amount in controversy . . . ."). As is typical, the parties agreed to an "Additional Disclosures" deadline that fell less than two months after Apple answered the complaint and less than one month after the Court's scheduling conference. But it is clear by the present dispute that the parties did not agree what this deadline meant. Though

---

[1] Maxell's motion to compel was filed before the August 14, 2019 deadline to comply with P.R. 3-4. At the hearing on the present motion, Maxell suggested that Apple had not produced "documentation sufficient to show the operation of any aspects or elements of an Accused Instrumentality identified by the patent claimant in its P. R. 3-1(c) chart" as required by P.R. 3-4. Apple contends it complied with the Patent Rules. As this issue was not briefed, and is not properly before the Court, the Court will not address this allegation.

Apple should have begun collecting and producing documents before the Additional Disclosures deadline, its inability to complete document production by that deadline is understandable.

Based on the present pleadings and arguments, however, the Court cannot determine whether Apple has met its discovery obligations to date. The parties agree document production is ongoing, and Apple represented that it does not have some of the categories of documents Maxell seeks. Moreover, Apple has not taken the position that there is any category of document that it will not produce, other than those addressed in Interrogatory No. 9. Without some evidence, other than attorney argument, the Court cannot weigh the truth of these assertions. *See Fed. Trade Comm'n v. Liberty Supply Co.*, 2016 WL 4272706, at *4.

Apple agreed to substantially complete all discovery by November 27, 2019, Docket No. 100 at 69:16–19, and the Court expects it to meet this deadline. Accordingly, Maxell's motion to compel document production is **DENIED**. However, this order does not reduce or eliminate Apple's obligation to "produce or permit the inspection of all documents, electronically stored information, and tangible things in [its] possession, custody, or control that are relevant to the pleaded claims or defenses involved in this action."

### III. Interrogatory No. 2

Interrogatory No. 2 requests Apple's non-infringement contentions:

> To the extent You contend that any Accused Product does not infringe any Asserted Claim of any Patent-in-Suit, state, with particularity for each such claim, limitation-by- limitation, Your full basis for any such contention

This district's local patent rules do not require non-infringement contentions. *Huawei Techs. Co. v. T-Mobile US, Inc.*, No. 2:16-cv-00052-JRG-RSP, 2017 WL 9988630, at *1 (E.D. Tex. Aug. 25, 2017). Instead, those contentions are left for expert opinions and expert discovery. "A party is not entitled to obtain early disclosure of expert opinions via interrogatory." *Promethean Insulation Tech. LLC v. Sealed Air Corp.*, No. 2:13-CV-1113-JRG-RSP, 2015 WL

11027038, at *2 (E.D. Tex. Oct. 13, 2015).  Maxell's Interrogatory No. 2 seeks expert discovery that is not appropriate at this phase of litigation.  Accordingly, Maxell's motion to compel is **DENIED** with respect to Interrogatory No. 2.

### IV.     Interrogatory No. 3

Maxell requests that Apple identify all intellectual property agreements that relate to the Accused Products:

> Identify all patent licenses, covenants-not-to-sue, or other agreements Concerning patents or intellectual property (collectively, "Agreements") to which You are a party that relate to the Accused Products or products that are reasonably similar to the Accused Products, and, for each such Agreement, identify the parties, the date it was entered into, the termination date (if any), the royalty rate and/or consideration paid, and identify how the parties arrived at such royalty rate and/or consideration.

In general, licenses and other agreements are discoverable.  *See, e.g.*, *Charles E. Hill & Assocs., Inc. v. ABT Elecs., Inc.*, 854 F. Supp. 2d 427, 428 (E.D. Tex. 2012) (noting, in analyzing whether settlement negotiations are privileged, that license agreements are generally discoverable).  Apple has not established why it should not be required to produce and identify the Agreements Maxell asks for.  Nor has Apple carried its burden to explain why it waited so long to begin seeking third-party consent for certain Agreements.

However, Maxell's demand that Apple "identify how the parties arrived at such royalty rate and/or consideration" for each Agreement is overbroad and unduly burdensome.  This demand seeks a narrative response with respect to each Agreement related to every Accused Product and every similar product.  The burden of this discovery outweighs its likely benefit.  Accordingly, Maxell's motion to compel is **GRANTED-IN-PART** with respect to Interrogatory No. 3's

demand to identify Agreements, and **DENIED-IN-PART** with respect to the demand to "identify how the parties arrived at such royalty rate and/or consideration."[2]

## V. Interrogatory No. 4

Maxell requests sales and customer date with Interrogatory No. 4:

For each Accused Product, state in detail on a monthly, quarterly and yearly basis, all sales, revenues, income, and profits generated by or realized from the licensing, sales or distribution of such product from 2013 to present, including but not limited to, (a) the number of units sold, distributed, and/or licensed, (b) the gross revenue (dollars) generated from the sales, distribution, and/or licensing, (c) the production cost, (d) the gross profit margin attendant to the sales, distribution, and/or licensing, (e) the net profit margin attendant to the sales, distribution, and/or licensing, (f) the Entities responsible for the sales, distribution, and/or licensing, (g) the customers of the sales, distribution, and/or licensing, and (h) the location of such sales, distribution, and/or licensing.

The dispute as to this interrogatory relates to sections (f)–(h). The parties dispute the breadth of these requests. Apple understands this request to ask for information related to every customer and end-user of the accused products. Accordingly, Apple states it has not and will not produce this information, because, in part, it is irrelevant and collecting this information would be unduly burdensome. Maxell represents it is not seeking information about individuals purchasing phones. Instead, Maxell seeks information about distribution channels and large resellers.

Apple has failed to establish that this request, as clarified by Maxell, is unduly burdensome, not proportional to the needs of the case or cumulative. Accordingly, Maxell's motion to compel is **GRANTED** as to Interrogatory No. 4.

## VI. Interrogatory No. 5

Maxell requests that Apple explain the circumstance around Apple's first notice of the Asserted Patents and what Apple did in response:

---

[2] Nothing in this order should be construed to limit discovery into how specific agreements were reached, where appropriate.

> For each Patent-in-Suit, state with particularity the circumstances surrounding Your first awareness of the patent, including the date when You first became aware of the patent, the Persons involved in the circumstances and events when You first became aware of the patent, the identity and content of any Communications or Documents relating to Your awareness of the patent, and all actions taken by You relating to, or as a result of, Your becoming aware of the patent, including any Communications, Documents, and/or actions related to a potential business arrangement between Maxell and Apple.

Maxell contends Apple has produced documents that Apple asserts are responsive to this interrogatory. However, Maxell asserts that these documents do not fully respond to the interrogatory and fail to explain the circumstances surrounding such awareness and what action, if any, was taken upon such awareness. Apple responds that the years of negotiations between the parties do not provide a basis for Apple to provide a narrative response describing each action taken over that time period. Moreover, Apple contends that Maxell now has all the relevant information needed through its document production.

Apple has not established that it may avoid explaining what, if anything, Apple did in response to its first awareness of the Patents-in-Suit. Though documents and emails may show the conversations that lead to first awareness, those documents may not reflect actions taken or not taken. Apple also provided no specific explanation of its burden in responding to this interrogatory by giving a narrative response. Accordingly, Maxell's motion to compel Interrogatory No. 5 is **GRANTED**.

### VII. Interrogatory No. 6

With Interrogatory No. 6, Maxell seeks information about the components comprising the accused product and provided a chart explaining the information sought:

> Complete the attached chart entitled "Interrogatory No. 6" identifying for each Accused Product the supplier, internal model number, and supplier model number of the relevant components implicated by the Patents-in-Suit, such as the components implicated in implementing or performing the Accused Features or Functions, including the dates Apple utilized such components in each Accused Product, and identify the cost to You for each component from 2013 to present. If

there are any other components configured to implement the Accused Features or Functions from 2013 to present, identify such component and the requested information at the end of the chart.

The attached chart seeks the "Internal Model No.," "Supplier," "Supplier Model No." and "Cost Per Unit" for 21 components[3] found in each of the 121 accused products.

Apple complains that this interrogatory asks for 10,164 different pieces of information and is compound. Apple contends that the information this interrogatory seeks is available in the Bills of Material ("BOMs") and Cost Pub. Documents Apple has produced.

When "the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records," Rule 33(d) allows a party to respond by specifying records that must be reviewed. However, this rule only applies where "the burden of deriving or ascertaining the answer will be substantially the same for either party." Here, the BOMs are separate documents that are hundreds of pages long. Each BOM may contain some of the information sought by this interrogatory, but Apple has not contended that any one, or any subset, includes all the information Maxell seeks. Apple "may not avoid answers by imposing on the interrogating party a mass of business records from which the answers cannot be ascertained by a person unfamiliar with them." *Quintel Tech. Ltd. v. Huawei Techs. USA, Inc.*, No. 4:15-cv-307-AM-CMC, 2017 WL 3712346, at *7 (E.D. Tex. June 29, 2017) (citing *Oleson v. Kmart Corp.*, 175 F.R.D. 560, 564 (D. Kan. 1997)).

The information Maxell seeks is basic information on the components Apple uses in its products: model numbers, suppliers and costs. Though Apple's counsel argued otherwise, "[i]t is

---

[3] Not every component is found in every product. The components are: Application Processor chipset, Camera Module(s) (Primary/Front-Facing), Camera Module(s) (Secondary/Rear-Facing) Image Sensor(s) (Secondary/Rear-Facing), Bluetooth Chipset, GPS Chipset, WiFi Chipset, Baseband Processor Chipset, Gyroscope(s), Accelerometer, Proximity Sensor, Power Management Circuit / Processor, Audio Decoder, Antenna, RF Chipset, Compass Image Signal Processor, Duplexer, Power Amplifier and Processor/CPU.

difficult to imagine how [Maxell] and Apple could be in the same position to obtain the requested information about [who provides] Apple's [components]" and how much they cost. *See Pers. Audio, LLC v. Apple, Inc.*, No. 9:09-CV-111, 2010 WL 9499679, at *3 (E.D. Tex. June 1, 2010) (analyzing reliance on Rule 33(d) to explain how accused products work). Under these circumstances, Apple's use of Rule 33(d) does not provide Maxell sufficient detail to permit it to locate and identify the information as readily as Apple can; therefore, Maxell's motion to compel Interrogatory No. 6 is **GRANTED**.

### VIII. Interrogatory No. 7

Maxell's Interrogatory No. 7 asks Apple to identify any step it has ever taken to avoid infringing any claim of any Asserted Patent:

> Identify the steps, if any, You have ever taken to avoid infringing any claim of any Patent-in-Suit. For instance, include in Your response a description of all activities and circumstances relating to any actual, proposed, contemplated, or attempted design modifications involving each Accused Product since becoming aware of such Patent-in-Suit.

Apple argues that this interrogatory asks for expert discovery. It does not. The interrogatory only asks for the facts concerning what steps, if any, Apple took in response to allegations of infringement, such as modifying products or designing around the Asserted Patent. It does not seek expert opinion, such as whether products infringe the Asserted Patents or whether the Asserted Patents are invalid. Accordingly, Maxell's motion to compel is **GRANTED** as to Interrogatory No. 7.

### IX. Interrogatory No. 8

Maxell requests that Apple identify any alleged non-infringing alternatives:

> If You contend that acceptable, non-infringing alternatives to the inventions claimed in the Patents-in-Suit have existed or exist, specifically describe each alternative, state when it became available, describe in detail the basis for Your contention that it is non-infringing, and identify all Documents related to this contention.

Apple cannot wait until the discovery deadline to produce the documents it may contend are non-infringing alternatives. Doing so would deprive Maxell of the opportunity to conduct its own discovery into the existence, availability and feasibility of these alternatives. However, as discussed with Interrogatory No. 2, Apple is not required to provide expert opinion testimony until that deadline, so it need not "describe, in detail, the basis for its contention that it is non-infringing." Accordingly, Maxell's motion to compel is **GRANTED-IN-PART** and **DENIED-IN-PART** as to Interrogatory No. 8.

### X.    Interrogatory No. 9

In Interrogatory No. 9, Maxell requests sales forecasts and projections:

> State all facts and identify, by bates number, all Documents related to any sales forecasts and/or projections prepared by or for You, including without limitation forecasts and/or projections related to projected revenue, profitability, and/or units of iPhones, iPads, iPod Touches, Apple Watches, and Mac products expected or anticipated to be sold or distributed in the United States on or before 2022.

Maxell says this interrogatory is relevant to damages, including damages from future use of the patented invention.

Apple contends that any sales forecasts are not proportional to the needs of the case "because Apple (1) produced financial data for actual sales, and (2) can provide supplemental discovery regarding sales extending beyond fact discovery." Apple argues that the forecasts are only relevant to future damages, "[b]ut Maxell can make such an estimate by extrapolating from past sales." According to Apple, "there is no prejudice to Maxell not getting forecasts if Apple will itself not rely on them." Apple further agreed that it would not challenge Maxell's expert's extrapolation methodology, but clarified that it may still challenge Maxell's expert's calculation. Maxell did not agree to this stipulation.

The parties agree that future sales are relevant to this case. Apple has not provided a convincing argument for avoiding answering this interrogatory. That Apple has and continues to

produce sales data does not explain why it would be burdensome or disproportionate to produce its sales forecasts. Accordingly, Maxell's motion to compel is **GRANTED** as to Interrogatory No. 9.

### XI. Conclusion

As set forth above, it is **ORDERED** that Maxell's motion to compel (Docket No. 56) is **GRANTED** as to Interrogatory Nos. 4, 5, 6, 7 and 9. It is further

**ORDERED** that Maxell's motion to compel is **GRANTED-IN-PART** and **DENIED-IN-PART** as to Interrogatory Nos. 3 and 8. Finally, it is

**ORDERED** that Maxell's motion to compel is **DENIED** with respect to Interrogatory No. 2 and Maxell's motion to compel document production.

**So ORDERED and SIGNED this 13th day of November, 2019.**

ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE