# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TEXARKANA DIVISION

| | | |
|---|---|---|
| MAXELL LTD., | § | |
| | § | |
| Plaintiff, | § | **CIVIL ACTION NO. 5:19-CV-00036-RWS** |
| | § | |
| v. | § | |
| | § | |
| APPLE INC, | § | |
| | § | |
| Defendant. | § | |

## ORDER

Before the Court is Defendant Apple, Inc.'s Motion to Transfer Venue to the Northern District of California under 28 U.S.C. § 1404 (Docket No. 57). Apple contends that venue is clearly more convenient in the Northern District of California. For the reasons set forth below, Apple's Motion is **DENIED**.

## I.    Background

Plaintiff Maxell Ltd. sued Apple, Inc. alleging infringement of 10 Maxell patents.[1] Maxell alleges that various aspects of Apple's iPhone, iPad and Mac products infringe the Asserted Patents, including: cameras; navigation capabilities; authentication systems; telecommunications techniques; video streaming; "do not disturb" functionality; power management technologies; and smartwatch integration.

### A.    The Parties

Apple is a Delaware corporation headquartered in Cupertino, California, within the Northern District of California ("NDCA"). Docket No. 57-1 ¶ 6. According to Apple's declarant, Michael Jaynes, most of Apple's management, marketing, research and development employees

---

[1] U.S. Patent Nos. 6,748,317; 6,580,999; 8,339,493; 7,116,438; 6,408,193; 10,084,991; 6,928,306; 6,329,794; 10,212,586 and 6,430,498 (collectively, the "Asserted Patents").

as well as its 12 relevant witnesses are all in NDCA. *Id.* at ¶¶ 7, 15, 22–35. Furthermore, Apple asserts that its engineering, sales and marketing documents are either located in NDCA or electronically accessible from there, and none are located in the Eastern District of Texas ("EDTX"). *Id.* at ¶¶ 33–36. According to Mr. Jaynes, Apple has no regular place of business or employees relevant to this case in EDTX. *Id.* at ¶¶ 19–20, 36.

Apple has several operations elsewhere in Texas, including thousands of employees at its facilities in Austin. Docket No. 65-3; Docket No. 65-4. Apple holds out its Austin facilities as playing "a very critical and integral role—they are designing chips that go into all the devices [Apple] sell[s]." Docket No. 65-3 at 3.[2] It is a base of Apple's microchip design. *Id.* Apple's Austin engineers played a major role in developing Apple's 'A' series processors and other components in the iPhone and iPad. *Id.* Apple also manufactures its Mac Pro computers in Austin. *Id.* Apple's Texas facilities house Apple's customer support services for its iOS and Mac devices. Docket No. 65-5 at 2. And Apple at least partially supports its Maps software from Austin. *Id.*

Maxell is a Japanese corporation headquartered in Kyoto, Japan. As for Maxell's connections with this district, Hitachi Maxell, Ltd.,[3] the prior owner of the Asserted Patents, worked with Alan Loudermilk in this district beginning in 2014. Docket No. 65-51 ¶¶ 5, 8. Mr. Loudermilk began working as Maxell's agent and representative for licensing negotiations with Apple concerning some of the Asserted Patents. *Id.* ¶ 4. Mr. Loudermilk's documents from the negotiations are located in this district. *Id.* ¶ 6–7.

██████████████████████████████

██████████████████████████████

██████████████████████████████

---

[2] Cites to docket entries are to the ECF pagination.
[3] The relationship between Maxell, Hitachi Maxell and Hitachi is discussed *infra* in Section I.B.



Apple moves the Court to transfer this case to NDCA for convenience under 28 U.S.C. § 1404. However, before analyzing the traditional § 1404(a) factors, the Court must resolve the parties' dispute regarding the forum selection clause contained in a 2011 NDA.

B.      *Prior Negotiations and Communications Concerning the Asserted Patents*

The parties have a history of negotiations dating back to the early 2010s. Interwoven into this legacy is the corporate history of Maxell and third-party Hitachi, Ltd ("Hitachi"). Prior to October 2017, Maxell was known as Hitachi Maxell, Ltd. Following a reorganization, Hitachi Maxell, Ltd. became Maxell Holdings, Ltd. by way of a name change and transferred certain assets to Maxell, Ltd., including the Asserted Patents. In this litigation, Maxell has treated Maxell, Ltd. as the direct successor to Hitachi Maxell, Ltd. [4]

Between at least 2011 and June 2013, Hitachi owned some of the Asserted Patents, including the '317, '999, '498 and '493 patents. Hitachi is a separate entity from the Maxell entities, but it has held varying ownership interests in Hitachi Maxell, Ltd. After June 2013, Hitachi transferred the Asserted Patents to Hitachi Maxell, Ltd.



---

[4] For the purposes of discovery Maxell has treated both Maxell, Ltd. and the extinct Hitachi Maxell, Ltd. as a single entity and responded to discovery on behalf of both entities.



In June 2013, Apple and Hitachi began separate discussions over Hitachi's "Consumer's Smart Phone Related Patents." *See* Docket No. 57-22. ███████████████████████████

## II.   Applicability of the ████████████████████

Apple now contends that the forum selection clause in the ████████████████████ mandates transfer to NDCA.

### A.   *Legal Standard*

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it

---

██████████████████████████████████████████████████████
████████████████████████

might have been brought." 28 U.S.C. § 1404(a). A case may also be transferred under § 1404(a) if there is an applicable forum selection clause. *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 63 (2013). If a party files such a motion, then "proper application of § 1404(a) requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases.' " *Id.* at 59–60.

To determine whether transfer pursuant to a forum-selection clause is appropriate, courts follow a two-step analysis. Before addressing transfer under the traditional factors, the Court must determine the applicability of the Confidentiality Agreement's forum selection clause. *See Gen. Protecht Grp., Inc. v. Leviton Mfg. Co.*, 651 F.3d 1355, 1359 (Fed. Cir. 2011) [hereinafter *GPG*]. The Federal Circuit has held that a forum selection clause applies if the nexus between the case and the agreement at issue is "non-frivolous." *Id.* In the context of defenses to infringement claims, non-frivolous means that "[t]he outcome of that dispute will determine whether the patentee can sustain its suit for infringement." *Id.* "A bare allegation that a license provides a defense to the claims in suit fails to meet this standard and will not trigger a forum selection clause." *Uniloc 2017 LLC v. Cisco Sys., Inc.*, No. 2:18-cv-00505-JRG, 2019 WL 4451329, at *1 (E.D. Tex. Sept. 16, 2019) (citing *Id.*). Courts in this district have noted that "[b]eyond this, however, the Federal Circuit has provided little guidance." *EVS Codec Techs., LLC v. LG Elecs., Inc.*, No. 2:18-CV-00343-JRG, 2019 WL 2904747, at *2 (E.D. Tex. July 5, 2019). In the past, courts in this district used a less than one-half and nearer to the one-quarter standard to find an "attachment point" where the defense became "non-frivolous." *Id.* (citing *Zix Corp. v. Echoworx Corp.*, No. 2:15-cv-01272-JRG, 2016 WL 7042221, at *3 (E.D. Tex. June 9, 2016)). Under this standard, that attachment point is "almost assuredly . . . found before we reach the mid-point of

the spectrum," and that it is probably "found nearer the one-quarter marker." *Zix*, 2016 WL 7042221 at \*3.

If the court finds that the parties' dispute triggers a valid forum selection clause, then the "district court should ordinarily transfer the case to the forum specified in that clause [unless there are] extraordinary circumstances unrelated to the convenience of the parties" that disfavor transfer. *Atl. Marine*, 571 U.S. at 62. "[T]his requires district courts to adjust their usual § 1404(a) analysis in three ways." *Id.* at 63. "First, the plaintiff's choice of forum merits no weight" and "the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.* "Second, [the] court . . . should not consider arguments about the parties' private interests" and "may consider arguments about public-interest factors only." *Id.* at 64. Third, when a forum selection clause controls, "a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations." *Id.* at 64.

B.     *The Parties' Positions*

Maxell asserts that Apple willfully infringed the Asserted Patents based on the June 25, 2013 letter Hitachi sent to Apple. Apple contends that the 2013 letter was protected by the

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

█████████████████████████████ Docket No. 57 at 11. Apple further argues that "the mere existence of these disputes regarding the scope ███████████████ compels transfer to NDCA because resolving them requires interpreting the contract under California law . . . ." Docket No. 69 at 8. Apple concludes that this creates a "non-frivolous" nexus between the agreement and this case, compelling transfer.

Maxell acknowledges that "the existence of an *applicable* forum selection clause that governs the dispute could remove the weight given to a plaintiff's choice of forum and reduce venue transfer considerations to public-interest factors only." Docket No. 65 at 12 (emphasis in original). However, Maxell argues that the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮forum selection clause does not apply. First, Maxell points out that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮ and Apple has not shown that it applies *at all* to Maxell. Maxell highlights the ▮▮▮▮ provision that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Second, Maxell notes that it is not relying on ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮ as a basis for willful infringement, but the separate June 2013 licensing negotiations. It points out that the two negotiations involved "very different offered transaction[s]:" ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Docket No. 65 at 13. Thus, Maxell contends that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" Docket No. 76 at 2 (quoting Docket No. 57-22 at 3) (emphasis in original), whereas the 2013 negotiations were "directed to ▮▮▮▮ the patents-in-suit" ▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* (emphasis in original). Maxell points out that ▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮ Docket No. 57-22 at 3.

Finally, Maxell argues that Apple's actions show that the ▮▮▮▮▮▮▮ negotiations were separate and not covered by ▮▮▮▮▮▮▮▮▮▮▮▮ Maxell contends that ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

C.      *Analysis*

Apple's position is that, because the ████████████ mandates NDCA, the case must be transferred to NDCA to determine if the ████████████ applies.  This is not the test. Instead, "the Court must determine where [Apple]'s license defense falls on the continuum between wholly frivolous and success on the merits."  *Uniloc 2017*, 2019 WL 4451329, at \*2.  The merit of Apple's defense turns on two issues, both of which must be non-frivolous: (1) that the 2013 letter is within the scope ████████████ and (2) that ████████████ ████████ is binding on Maxell.

The ████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████  *Id.* at 2.  ████████████████████████████

████████████████████████████████████████████████

████████████████████  Docket No. 57-21 at 3.

The parties focus on whether the 2013 letter ████████████ but the 2013 letter's status ████████████████████████████ must be established first.  As explained below, ████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

Page **8** of **23**

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████ *Id.* at 4–5. Thus,

████████████████████████████████████ the Disclosing Party and its successor (Hitachi

and Maxell, respectively) is free to disclose the letter as it sees fit, including to support willful

infringement claims.

Even if this were not true, ████████████████████████████████████

████████████████████████████████ The 2013 letter ████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████

    ████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████

    ████████████████████████████████████████████

████████████████████████████████████████████████



There is no non-frivolous argument that the 2013 letter is subject to ███████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████ Thus, the ███████████████ does not provide an applicable venue-selection clause, and the Court proceeds with the traditional § 1404(a) analysis.

## III. Venue

### A. Legal Standard

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). The Fifth Circuit has developed a test based on several private and public interest factors to determine whether transfer is appropriate under § 1404(a). *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*"). The private interest factors include: (1) the availability of compulsory process to secure the attendance of witnesses, (2) the cost of attendance for willing witnesses, (3) the relative ease of access to sources of proof and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *Id.* The public interest factors include: (1) the administrative difficulties flowing from court congestion, (2) the local interest in having localized interests decided at home, (3) the familiarity of the forum with the law that will govern the case and (4) the avoidance of unnecessary problems of conflict of laws. *Id.*

A plaintiff's choice of venue is not an express factor in the analysis. *Seven Networks, LLC v. Google LLC*, 2:17-CV-00442-JRG, 2018 WL 4026760, at *8 (citing *Volkswagen II*, 545 F.3d at

Case 5:19-cv-00036-RWS Document 131 Filed 11/27/19 Page 11 of 23 PageID #: 7651

315). However, a moving defendant must demonstrate "that the transferee forum is '*clearly* more convenient.' " *In re HP Inc.*, No. 2018-149, 2018 WL 4692486, at *2 (Fed. Cir. Sept. 25, 2018) (alteration in original) (quoting *In re Toyota Motor Corp.*, 747 F.3d 1338, 1341 (Fed. Cir. 2014)). By applying this elevated burden of proof, the plaintiff's choice of forum is given the appropriate deference. *Seven Networks*, 2018 WL 4026760, at *2 (citing *Volkswagen II*, 545 F.3d at 315).

"Motions to transfer venue are to be decided based on 'the situation which existed when suit was instituted.' " *In re EMC Corp.*, 501 F. App'x 973, 976 (Fed. Cir. 2013) (quoting *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960)). However, the Court may consider circumstances that were "apparent at the time the suit was filed." *Id.*

### B.     Discussion

As an initial matter, Maxell does not dispute that the case could have been brought in NDCA. Accordingly, the Court focuses its analysis on the convenience factors.

### C.     Private Interest Factors

As noted above, the private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 315 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). The Court addresses each in turn.

#### 1.     Access to Sources of Proof

"The first factor focuses on the locations of sources of proof, such as documents and physical evidence." *Remmers v. United States*, No. CIV. A. 1:09-CV-345, 2009 WL 3617597, at *4 (E.D. Tex. Oct. 28, 2009). "Courts analyze this factor in light of the distance that documents, or other evidence, must be transported from their existing location to the trial venue." *Uniloc USA, Inc. v. Activision Blizzard, Inc.*, No. 6:13-CV-256, 2014 WL 11609813, at *2 (E.D. Tex. July 16,

2014) (citing *Volkswagen II*, 545 F.3d at 316) (noting that this factor is still relevant even if documents are stored electronically).

This factor turns on which party "most probably [has] the greater volume of documents relevant to the litigation and their presumed location in relation to the transferee and transferor venues." *Id.* (citing *In re Nintendo Co.*, 589 F.3d 1194, 1199 (Fed. Cir. 2009); *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009); *Volkswagen II*, 545 F.3d at 314–15). "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech*, 566 F.3d at 1345 (citation omitted). "That access to some sources of proof presents a lesser inconvenience now than it might have absent recent developments does not render this factor superfluous." *Volkswagen II*, 545 F.3d at 316.

Apple contends that all its relevant documents, witnesses and evidence and any relevant third-party evidence are located or electronically accessible from NDCA. Docket No. 57 at 14. According to Apple, engineers located in Apple's Cupertino, California headquarters developed the accused technology in NDCA. Thus, Apple says the related design and development documents, as well as the marketing, sales and financial information, are "stored in computers in or accessible from" Cupertino.

Apple also contends that relevant third-party evidence is located in NDCA, specifically wireless transmission chipsets supplied by Intel and Qualcomm. According to Apple, both companies are located in California and documents related to their chipsets are "more likely to be located in or electronically accessible from NDCA than EDTX."

Apple then argues that there is no relevant evidence in this district. As to itself, Apple contends that no relevant evidence or witnesses are in EDTX. As to Maxell, Apple says Maxell

has no physical presence or relevant evidence here.  In particular, Apple complains that Maxell only identified a single witness with any ties to EDTX, Maxell's former outside counsel, Alan Loudermilk.  Apple further argues that Mr. Loudermilk is irrelevant to the transfer analysis given his former role as hired outside counsel.

Maxell responds that Apple failed to provide evidence of categories and volumes of physical documents, or even better, examples of physical evidence that might have a real bearing on allegations of infringement.  Thus, to Maxell, "there is no basis for the court to assign great weight."  Moreover, Maxell contends that Apple ignored the fact that its documents do not exist only in NDCA and ignored its facility in Austin, Texas.  According to Maxell, Apple did not address the physical location of its documents, only the accessibility, and many of these documents may be located in Austin.

As to third-party evidence, Maxell explains that relevant parts and services incorporated in the accused products are supplied by companies in Texas.  Maxell points to Samsung Semiconductor, which supplies chips from its Austin factory, and Flex, which manufactures the accused Mac computers in Texas.  Mr. Loudermilk's documents, which Maxell contends are relevant to damages and willfulness, are also located in this district.

Finally, Maxell notes that some of its own documents are more easily accessible in this district, including documents moved here during prior litigation and evidence related to MRDA's research incorporating technologies from some of the Asserted Patents.

Apple points to various employee witnesses as sources of proof.  However, "witnesses are not sources of proof; sources of proof are sources of document[ary] and physical evidence." *Seven Networks*, 2018 WL 4026760, at *3 (marshaling sources) (quotation omitted).  Thus, Apple's witnesses are considered under the second or third private factor.

"[A]s the Fifth Circuit explained in *Volkswagen II*, the fact 'that access to some sources of proof presents a lesser inconvenience now than it might have absent recent developments does not render this factor superfluous.' " *In re TS Tech United States Corp.*, 551 F.3d 1315, 1321 (Fed. Cir. 2008). "Despite technological advances in transportation of electronic documents, physical accessibility to sources of proof continues to be a private interest factor to be considered." *Implicit v. Trend Micro*, No. 6:16-cv-00080-JRG, 2016 WL 9245067, at *2 (E.D. Tex. Sep. 1, 2016) (citing *Volkswagen II*, 545 F.3d at 316).[6]

Here, the record is not clear that any relevant documents are located in NDCA. Apple relies on the declaration of its employee, Mr. Jaynes, but Mr. Jaynes only represented that various Apple documents "reside on local computers ***and/or*** servers located in ***or*** around Cupertino ***or accessible*** in Cupertino." Docket No. 57-1 ¶¶ 33, 34, 35 (emphasis added). That the documents ***may*** be available in NDCA and ***may*** reside in NDCA provides no guidance for the Court. *Seven Networks*, 2018 WL 4026760, at *4 ("That evidence may or might exist is not enough . . . ."). On this record Apple's relevant evidence may be located at any number of its facilities or servers, and Apple is equally capable of accessing these documents from any of its facilities, including those in Texas. That Apple can access its own documents at its headquarters, or at any of its other facilities, is of no weight. *Implicit*, 2016 WL 9245067, at *2.

Similarly, the evidence before the Court is that significant third-party documents are located in California but not necessarily in the Northern District. Likewise, third-party evidence, and perhaps Apple's own evidence, is located in Texas, but not necessarily in the Eastern District. Apple's contention that Qualcomm or Intel documents are available in NDCA is pure speculation.

---

[6] Further, the venue analysis does not consider accessibility during discovery; instead, "[the] venue analysis is concerned only with the presentation of evidence *at and during trial*." *Seven Networks*, 2018 WL 4026760, at *3 n4 (marshaling citations) (emphasis original).

Moreover, Apple is inconsistent in its arguments, arguing for its own documents that the venue test requires the documents be in NDCA, but arguing for third parties that they be *electronically available* in NDCA. To the extent electronic availability is a factor in the venue analysis, the evidence is that all the documents are equally electronically available in EDTX as in NDCA.

The only documents that any party has established are within either EDTX or NDCA is Mr. Loudermilk's documents and any relevant documents held by █████ MDRA. While defendants generally carry the heavier evidentiary burden in patent infringement lawsuits, *In re Genentech, Inc.*, 566 F.3d at 1345, this evidence should not be ignored, especially in light of Apple's own lack of specificity. On this record, Apple has not established that access to evidence at trial is more convenient in NDCA than in EDTX, and this factor is neutral.

> 2.  The availability of compulsory process to secure the attendance of witnesses

This factor is directed towards unwilling third-party witnesses. *Seven Networks*, 2018 WL 4026760, at *7 (citing *Volkswagen II*, 545 F.3d at 316). " 'A district court should assess the relevance and materiality of the information the witness may provide' and where a party has 'identified witnesses relevant to [the] issues [present in a case], [ ] the identification of those witnesses weighs in favor of [the identifying party].' " *Id.* at *8 (quoting *In re Genentech*, 566 F.3d at 1344). "[T]o properly analyze convenience, specific witnesses should be identified with, at a minimum, a general statement providing the expected relevant and material information to the litigation at hand." *Realtime Data, LLC v. Rackspace US, Inc.*, No. 6:16-cv-00961-RWS-JDL, 2017 WL 772653, at *10 (E.D. Tex. Feb. 28, 2017).

The parties primarily dispute how, if at all, compulsory service of potential witnesses from third-party suppliers weighs on this factor. However, neither party identifies specific unwilling third-party witnesses who may be called to trial in NDCA but not EDTX.

Apple focuses on unidentified Intel and Qualcomm engineers who supported the development of parts of Apple's products. Apple also contends that Maxell's initial disclosures identify potentially necessary third-party witnesses based in California.

Maxell notes that Apple only broadly contended that Qualcomm or Intel witnesses may be called at trial and never asserted the testimony from either company or any specific employee would be necessary at trial. Maxell then contends that it is irrelevant that the companies are based in California, because both are subject to this Court's subpoena power. Finally, Maxell explains that, if testimony from third party companies is necessary, chances are that testimony will be provided by videotape deposition. According to Maxell, even for trials in California, Apple typically uses videotape deposition testimony from Qualcomm and Intel representatives, rather than calling those witnesses at trial. Finally, by Maxell's count, there are 17 total third party manufacturers thus far identified, 15 of which are subject to this Court's compulsory service power and only five of which are subject to NDCA's.

The parties agreed that Intel and Qualcomm, the only potential witnesses directly addressed by Apple, are relevant. However, both entities are subject to this Court's subpoena power by their facilities in Texas. FED. R. CIV. P 45(c)(1)(B)(ii); *Papst Licensing*, 2016 U.S. Dist. LEXIS 177687 at *13 ("the availability of compulsory process is not measured as against a specific employee of a third-party corporation, but rather the corporation itself"). As such, they do not weigh for or against transfer.

As for the other third parties found in the parties Initial Disclosures Docket No. 57-17 at 11-22, and summarized in Maxell's Appendix 1, Docket No. 65-54, there are approximately 17

potentially relevant third parties.[7]  Of these, 11 have Texas locations and are subject to the Court's absolute subpoena power.  Limiting the analysis to the parties identified in Maxell's Initial Disclosures, there are 10 third-party entities and six are subject to this Court's subpoena power.[8]  Only Skyworks, Universal Scientific, Hitachi and Sony Corporation of America appear to be outside this Court's reach.  However, Apple has not shown that these entities are within the subpoena power of NDCA.  Nor has Apple shown that any of the entities based outside of California are subject to NDCA's subpoena power.

As for individuals, the California individuals Maxell identified in its initial disclosures are either Apple employees and do not weigh on this factor, or are prosecution counsel who are rarely called at trial or even deposed during discovery and provide very little weight.  *AGIS Software Dev. LLC v. HTC Corp.*, 2:17-CV-00514-JRG, 2018 WL 4680558, at *7 n.5 (E.D. Tex. Sept. 28, 2018) ("Since patent prosecuting attorneys are rarely called to trial, especially where as in this case there is no claim of inequitable conduct, the Court gives little weight to the availability of [prosecution counsel].").

Based on the evidence before the Court, Apple has not established that the availability of compulsory service weighs in favor of transfer.  Accordingly, this factor is neutral.  *See St. Lawrence Communs. LLC v. Apple Inc.*, No. 2:16-cv-82, 2017 WL 3712153, *3 (E.D. Tex. Feb. 6, 2017) ("[T]his factor's neutrality is amplified by the fact that this Court's deposition subpoena power is equal to that of [NDCA], and Apple fails to explain or acknowledge any inconvenience that would result from presenting deposition testimony at trial"); *e-Watch Inc.*, 2016 WL 7338342 at *3; *Papst Licensing*, 2016 U.S. Dist. LEXIS 177687 at *13-14.

---

[7] Excluding Intel and Qualcomm.  This counts Hitachi, MDRA and two Samsung subsidiaries as independent third parties.  Alternatively treating the Samsung entities as a single entity or discounting Hitachi and MDRA does not affect the analysis.
[8] Again, excluding Intel and Qualcomm.

3. <u>Costs of attendance for willing witnesses</u>

When analyzing this factor, all parties and witnesses must be considered. *In re Volkswagen AG*, 371 F.3d 201, 204 (5th Cir. 2004) ("*Volkswagen I*"). However, "[t]his factor [] primarily concerns the convenience of nonparty witnesses." *Seven Networks*, 2018 WL 4026760, at *10 (quotations omitted). A district court should assess the "relevance and materiality of the information the witness may provide," but it is not necessary for a party "to show that the potential witness has more than relevant and material information." *In re Genentech*, 566 F.3d at 1343.

"When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204–05. "However, as other courts applying Fifth Circuit venue law have noted, the convenience of party witnesses is given little weight." *Seven Networks*, 2018 WL 4026760, at *9.

Apple focuses on the fact that its own witnesses are located in NDCA and that the "likely" third-party witnesses for the '193 patent are located in NDCA. Apple also contends that Maxell's own employees and the inventors are located in Japan and NDCA is more convenient for those witnesses as well. According to Apple, it will take twice as long for those witnesses to travel to Texarkana than San Francisco.

Maxell responded that little weight should be given to Apple's self-identified witnesses, particularly because Apple rarely calls the same witnesses at trial that it identifies in its motions to transfer. Maxell also notes that some of the accused products appear to be designed at Apple's Austin facility, and for those witnesses, this Court is more convenient. As to the third-party witnesses, Maxell notes that those entities have Texas offices from which witnesses may also travel. Maxell also contrasted these theoretical witnesses with the only identified third-party witness, Mr. Loudermilk, who lives in Marshall. Maxell notes that Mr. Loudermilk is undoubtedly

important to this case because his testimony will be relevant to the relationship and communications between Hitachi Maxell and Apple. Maxell contends that Mr. Loudermilk will probably be the only third-party witness called at trial. As to its own witnesses, Maxell contends that its own relevant witnesses, including specifically Kenji Nakamura, regularly travel to this district as part of their duties with respect to MRDA.

Apple disputes the importance of Mr. Loudermilk and maintains that NDCA is more convenient for Maxell's own witnesses. Moreover, Apple argues that Maxell cannot rely on MRDA, a wholly-owned subsidiary of Maxell, to justify its venue choice.

As is often the case in the convenience analysis, the Court must work with an incomplete record. Apple is easily able to identify its own employee-witnesses, and for those 12 witnesses, NCDA is more convenient than the Eastern District of Texas. Maxell, as plaintiff in a patent case, has few of its own employee-witnesses.

As for willing third-party witnesses, the record is even more speculative. Apple contends that these witnesses are closer to NDCA, whereas Maxell contends they may be closer to EDTX. "This demonstrates why there is a need to specifically identify witnesses, to the best of a party's ability, in their motion to transfer." *Virginia Innovation Scis., Inc. v. Amazon.com, Inc.*, No. 4:18-CV-474, 2019 WL 3082314, at *20 (E.D. Tex. July 15, 2019) (citing *Seven Networks*, 2018 WL 4026760, at *4). However, "given that this Court has already considered those unwilling third party witnesses in its consideration of the second factor, it would be improper to include them in consideration of the third private interest factor: 'the cost of attendance for *willing* witnesses.'" *Seven Networks*, 2018 WL 4026760, at *10 (quoting *Volkswagen I*, 371 F.3d at 203 (emphasis added) (citation omitted)).

As to the witnesses located in Japan, "because these witnesses would have to travel a significant distance regardless of whether they have to travel to the [NDCA] Courthouse or [Texarkana] Courthouse, the Court does not consider their location." *Virginia Innovation*, 2019 WL 3082314, at *20 (citing *In re Genentech, Inc.*, 566 F.3d at 1343–44).

Thus, the Court has identified and considered the following in evaluating this factor: a single willing third-party witness, Mr. Loudermilk, Apple's 12 specifically identified witnesses and Kenji Nakamura, a Maxell employee.

As noted above, "[w]hile the Court must consider the convenience of both the party and non-party witnesses, it is the convenience of non-party witnesses that is the more important factor and is accorded greater weight in a transfer of venue analysis." *Godo Kaisha IP Bridge 1 v. Broadcom Ltd.*, No. 2:16-cv-0134-JRG-RSP, 2017 WL 750290, at *5, (E.D. Tex. Feb. 27, 2017) (citations omitted); *see also Frito-Lay N. Am., Inc. v. Medallion Foods, Inc.*, 867 F. Supp. 2d 859, 870–71 (E.D. Tex. 2012) ("[I]t is the convenience of non-party witnesses, rather than of party witnesses, that is more important and accorded greater weight in a transfer of venue analysis.") (citation omitted). The inconvenience experienced by the foreign party-based witnesses are of little weight. *Virginia Innovation*, 2019 WL 3082314, at *20 (citing *In re Genentech, Inc.*, 566 F.3d at 1343–44). The 12 California party-based witnesses weigh in favor of transfer due to the varied topics which the Apple witnesses are expected to address. Mr. Loudermilk's non-party status and the inconvenience he would face attending a trial in NDCA when compared to this district weighs heavily against transfer. Ultimately, this factor weighs slightly in favor of transfer.

### 4. Other Practical Problems

"Practical problems include those that are rationally based on judicial economy." *Eolas Technologies, Inc. v. Adobe Sys., Inc.*, 6:09-CV-446, 2010 WL 3835762 (E.D. Tex. Sept. 28, 2010), *aff'd*, *In re Google, Inc.*, 412 F. App'x. 295 (Fed. Cir. 2011). "[T]he existence of

duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer." *Id.*; *see also Volkswagen II*, 566 F.3d at 1351 (" '[T]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Court leads to the wastefulness of time, energy and money that § 1404 was designed to prevent.' ") (quoting *Continental Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960)).  Based on the experience gained in the prior cases involving Maxell and the Asserted Patents, the Court has some familiarity with the Asserted Patents and the accused technologies.  It does not appear that NDCA has any experience with these patents.  Accordingly, this factor weighs slightly against transfer.  *See Realtime Data LLC v. Dropbox, Inc.*, No. 6:15-CV-465-RWS-JDL, 2016 WL 153860, at *5 (E.D. Tex. Jan. 12, 2016).

    D.    *Public Interest Factors*

As explained *supra*, the public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Volkswagen I*, 371 F.3d at 203 (citing *Piper Aircraft*, 454 U.S. at 241 n.6).

    1.    Court Congestion

"To the extent that court congestion is relevant, the speed with which a case can come to trial and be resolved may be a factor" in the transfer analysis.  *In re Genentech*, 566 F.3d at 1347.  This factor is the most speculative, and the speed of the transferee district court should not alone outweigh the other factors.  *Id.*  Time to trial in this district is significantly quicker than NDCA—16.8 months versus 22.8 months.[9]  Accordingly, this factor weighs against transfer.

[9] https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0930.2019.pdf.

2.      <u>Local Interest</u>

"The Court must also consider local interest in the litigation because '[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation.'" *Mears Techs., Inc. v. Finisar Corp.*, No. 2:13-CV-376-JRG, 2014 WL 1652603, at *4 (E.D. Tex. Apr. 24, 2014) (quoting *Volkswagen I*, 371 F.3d at 206).

Apple contends that NDCA has a strong local interest in this case based on Apple's headquarters in the district and the employees based there.  Maxell contends that Apple overstates the balance of interests.  According to Maxell, the location of Apple's headquarters only slightly favors transfer in a patents case, but Apple's partially taxpayer funded facility in Austin and Maxell's business in this district—which will be affected by the validity of the Asserted Patents— disfavor transfer.

Typically, patent cases concerning nationally sold products do not include any particular localized interests.  *See In re TS Tech USA Corp.*, 551 F.3d 1315, 1321 (Fed. Cir. 2008).  The community of NDCA has an interest in Apple, which has been headquartered there for more than 40 years.  But the taxpayers of this district also have an interest in the projects they help fund. *Papst Licensing*, 2016 U.S. Dist. LEXIS 177687, at *20.  The residents of this district also have significant interest in companies conducting research in this district based on the Asserted Patents. Further, significant acts, including the design and manufacture of some accused products and their components, occur in Texas.  *See Mears Techs.*, 2014 WL 1652603, at *4.  Accordingly, this factor is neutral.

3.      <u>Familiarity of the Forum with Law</u>

"Patent claims are governed by federal law, and as such both [courts are] capable of applying patent law to infringement claims."  *See In re TS Tech*, 551 F.3d at 1320 (quotes omitted).

As discussed above, the Confidentiality Agreement has no applicability to the claims of this case. Accordingly, this factor is neutral as well. *Id.*

> 4.   Unnecessary Problems of Conflict of Laws

The parties agree that this factor is neutral.

## IV.   **Conclusion**

In sum, one public interest factor weighs against transfer, one private interest factor weighs slightly against transfer and one private interest factors weighs slightly in favor of transfer.  On this record, Apple has not established that NDCA is clearly more convenient than this district. Accordingly, Apple's Motion to Transfer (Docket No. 57) is **DENIED**.  Apple's Motion to Stay Pending Resolution of Its Motion to Transfer (Docket No. 97) is **DENIED-AS-MOOT**.

**So ORDERED and SIGNED this 3rd day of January, 2020.**

ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE