**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION**

| | |
|---|---|
| MAXELL, LTD., *Plaintiff*, v. APPLE INC., *Defendant*. | Case No. 5:19-cv-00036-RWS<br>**LEAD CASE**<br>**JURY TRIAL DEMANDED**<br>PUBLIC VERSION |

**MAXELL, LTD.'S OPPOSED MOTION TO COMPEL[1]**

[1] In exchange for an extension in response time to a discovery letter sent by Maxell, Ltd. on December 18, 2019, Apple agreed to an expedited briefing schedule of three business days with respect to any resultant Motion to Compel. This applies to all issues herein except those related to Licenses, Marketing Surveys, and Prior Litigation Documents.

Despite this Court's clear discovery rules, and an order from the Court compelling Apple to comply with its discovery obligations, Maxell is again in the unfortunate place of having to seek the Court's help. In its prior Motion to Compel, Maxell expressed concerns about Apple's discovery misconduct, including Apple's delayed document production, such that Maxell would be left with little time to review dense technical and financial material Apple was deliberately withholding. Maxell's concerns have sadly come true.

Apple's discovery misconduct is not limited to a failure to produce materials, but also to a pattern of abusing this Court's discovery rules and procedures. For its P.R. 3-4 disclosures, Apple produced the bare minimum it unilaterally deemed "sufficient to show" the operation of the accused functionalities, relying primarily on a limited source code production; thereafter, Apple took the stance that this was the extent of its obligation in this case. Every time Maxell requested production of additional, obviously relevant materials, Apple objected on the basis the requests were not proportional to the needs of the case (albeit never explaining why) and demanded unprecedented, detailed explanations for why the materials should be produced (often on a document-by-document basis). Even then, Apple limited production (if it happened at all) to just a small subset of the relevant materials.

Apple's misconduct also includes delaying repeated requests for meet and confers in a plain rejection of the Discovery Order. For example, Maxell made a written request on January 27 for Apple to produce 11 relevant licenses. On January 31, Apple stated Maxell had not supported its assertion of relevance and demanded additional information, which Maxell provided the next day along with a request to meet and confer. Apple responded on February 3 and again demanded additional information, which Maxell yet again provided on February 5, again with a request to meet and confer. Both times, Apple ignore the requested meet and confer.

Under the Discovery Order, Apple should have met and conferred and provided Maxell a final position by February 10. Yet, on February 13, Apple stated that it was looking into the issue, provided no detail about what it would provide (or not), and put off a meet and confer until its "investigation" was complete. Unfortunately, Apple treats the meet and confer requirement much as it has the rest of its discovery obligations, with a refusal to comply.

**I. Deficient Categories of Materials**

**Technical Documents**. After months of back and forth regarding Apple's technical document production, Apple represented it had "conducted a reasonable investigation for the accused functionalities and produced all responsive technical documents that could be located after a reasonable search." Ex. A (Excerpt of 1/31/2020 Letter). Although Apple's representation would appear to close the matter, Maxell's review of Apple's productions, source code, and publicly available information indicates that relevant technical documents have in fact not been produced. The sheer volume of materials that Apple claims do not exist raise questions into whether such investigation was sufficient. Examples of such materials include:[2]

- **Complete Schematics**. Apple has not produced schematics for 29 accused products. Certain produced schematics are incomplete excerpts. For example, [redacted].
- **Documents Describing Cellular Functionalities**. Relevant to the '193 Patent, Maxell requested documents regarding how signals transmit through different components to send and receive signals to a cell tower. Apple stated [redacted]. Apple clearly has additional, relevant documentation.

[2] Maxell provides at least one basis for its belief that additional documents exist in this Motion. Additional support for its belief is included in Exhibit B.

- [redacted] **Code**. A datasheet produced by third-party [redacted] Apple has not produced code or settings information that it uses to configure/integrate [redacted]. This is relevant to Maxell's claims regarding the asserted '193 Patent.

- **Requirements Specifications**. Apple produced [redacted], but none it provided to [redacted]. Such documents exist according to, for example, [redacted]

- **Testing Documents**. Apple produced nothing describing testing specifications or results for a majority of the accused functionalities (*e.g.*, performance of open loop power control and inner loop power control as required by WCDMA standards, FaceTime, Low Power Mode, Siri features (Announce Calls, VoiceOver), AirDrop, Bluetooth pairing, unlocking via Bluetooth, Power Reserve Mode, Express Transit, Shutdown and boot-up procedures). Testing documents must exist based on, for example, [redacted]

- [redacted] Apple produced [redacted], but not for the [redacted] in the iPhone 6S Plus, iPhone 6s, iPhone SE, iPad 5th generation (WiFi), iPad 5th generation (WiFi + Cellular), or iPod Touch 5th generation.

- **Technical Specifications** [redacted]. Beyond publicly available user guides, webpages, and [redacted], Apple produced very few technical documents describing the design, development, or operation of accused functionalities low power mode, implementation of Siri, Paired Unlock, Announce Calls, Location calculation by Maps, Open-loop power control, Closed-loop power control, Watch Application, Maps application, VoiceOver and Do Not Disturb, FaceTime functionality, Express Transit, Power Reserve Mode, Bluetooth functionality relevant to '586 and '438 Patents, and shutdown and boot-up for iOS and watch OS products.[3]

- **Camera Module Specifications**. Apple produced documents corresponding only to image sensors in the cameras, not hardware specifications for the camera modules, [redacted]s.

- **Source Code**. Apple stated its Source Code production would be complete on February 12. Maxell is reviewing Code the week of February 17, but based on Apple's February 6th interrogatory response, it appears Apple still has not produced the following Code (or has

---

[3] Apple has previously stated tha[redacted]." Ex. A (excerpt of 1/23/20 Meet and Confer Tr. at11:3-9). It is difficult to believe that [redacted].

not identified which produced code relates to the noted operating systems):

[redacted]

**<u>Non-Source Code Documents on Source Code Computer</u>**. Maxell agreed to heightened restrictions governing production of "Source Code," including to review code on standalone computers at Apple's counsel's offices during business hours and to printing restrictions of no more than 250 pages total. D.I. 45 at 11(c). The agreement protects Source Code only, but Apple produced over a thousand non-source code documents on the Source Code computers, improperly restricting Maxell's ability to access, review, and use such materials.

Maxell first raised this issue in September and again in December, at which point it provided specific examples and requested their production. They included [redacted]— highly relevant and directly addressing claimed functionality. Apple responded it was proper for the documents to be on the Source Code computer because [redacted]. Ex. A (Excerpt of 1/15/2020

Letter). [redacted]. Apple collected materials from its Source Code repositories and placed them on the Source Code computers so that the materials could be reviewed subject to the heightened restrictions. [redacted] does not mean they qualify as Source Code for purposes of this case and the governing Protective Order.

Apple ultimately agreed to "investigat[e] the feasibility of separately producing the documents," but complained that the "process of doing so is time and labor intensive because every document must be located, collected, and reviewed for source code." Ex. A (Excerpt of 1/31/2020 Letter). To try to buy itself time, Apple requested Maxell prioritize the production. Maxell declined. Apple asserts this "belies any claim that Maxell needs these documents" and "confirms that this exercise is merely another manifestation of Maxell vexatiously litigating this case." *Id*. Not so. To "prioritize" requires Maxell to send attorneys cross-country to search for and review documents under the improper heightened restrictions—i.e. to suffer the exact prejudice it seeks to avoid. Apple, on the other hand, can do this without any such restrictions.

Apple has now started producing some of the documents.[4] But this does not fix the issue. Apple produced some of the spreadsheets as PDFs, which are virtually impossible to read. *See* Ex. C (Excerpt of produced spreadsheet). Because of the illegibility, Maxell requested the document be produced in native format. Apple refused, stating (inaccurately):

> After making the documents available for inspection [redacted] on the source code computer, we have produced, and continue to produce, the so-called "non-source code" documents in the ordinary course. Thus, these documents have already been produced in two different formats and there has been no refusal to produce anything. If I am missing some requirement to produce these documents a third time in yet another format, please let us know.

Ex. A (Excerpt of 2/10/2020 email). Maxell simply seeks the ability to review Apple's

[4] Notably, just two of the requested spreadsheets accounted for 134 produced pages and thus would have taken up 53% of Maxell's total allotted printouts from the Source Code computer.

documents free of improper restrictions. Apple's obstructive discovery should not be permitted.

**Forecast Documents.** The Court ordered Apple to respond to Maxell's Interrogatory No. 9, which requests facts and documents related to sales forecasts and projections for the accused categories of products. D.I. 126 at 10. Apple has now produced [redacted]. [5] It strains belief Apple has only [redacted][6] Thus, Apple's response and production (even after supplementation) remains incomplete.

**Licenses**. The Court also ordered Apple to respond in part to Maxell's Interrogatory No. 3 by identifying and providing certain information related to patent licenses or agreements related to the Accused Products. In response, Apple identified roughly [redacted] agreements it contends "relate to functionality accused by Maxell in its Infringement Contentions." Maxell requested 11 additional agreements,[7] explaining they are relevant because they relate to accused functionalities or establish Apple's licensing policies for the accused products. For example, prior to entering into a license agreement, HTC sued Apple for infringing U.S. Patent Nos. 7,716,505 and 7,765,414, which recite claims directed to power management similar to the asserted '794 Patent. Similarly, ZiiLabs asserted patents against Apple related to image data processing in the accused products, thus implicating the same ISP components and their functionality at issue for the asserted '991 and '493 Patents. Thus, the resultant licenses relate to accused functionalities. While Apple may point to the number of agreements it produced to argue it discharged its discovery obligations, volume does not equate to sufficiency. The Court

---

[5] Apple's current interrogatory response only identifies [redacted], though Maxell expects supplementation to reflect recent productions shortly.

[6] *See, e.g.*, https://9to5mac.com/2019/11/25/iphone-12-5g-demand/ (stating "Apple is reportedly telling its supply chain partners to expect in excess of 100 million orders for the iPhone 12 next year….").

[7] The agreements are with Immersion Corp., InterDigital, Inc., HTC Corp., Valencell Inc., Imagination Technologies, ZiiLabs Inc., Ltd., Kudelski Group, Wisconsin Alumni Research Foundation, Network-1 Technologies, Inc., InterTrust Technologies Corp., and Mobile Telecommunications Technology LLC.

did not limit the scope of agreements Apple had to identify in response to Interrogatory No. 3 and Apple admits it did not produce all agreements related to the Accused Products. Even so, Maxell requested production of only 11 agreements (out of surely hundreds that were not produced) that Maxell's research shows exist and are relevant. Apple should be held to the Court's prior Order and be required to produce this limited scope of additional materials.

**Marketing Surveys**. Maxell raised the lack of marketing materials in its first motion to compel, and Apple still has not completed its production. [redacted]. Maxell requested production of the [redacted] for the relevant timeframe, with no confirmation that the documents will be produced or do not exist. An [redacted] were also produced. Maxell received no timely response to its inquiry whether additional such documents exist. Survey documents go directly to the value of the accused functionalities.

**Prior Litigation Documents**. Given the incomplete nature of Apple's production, as outlined in part above, Maxell requested certain materials related to damages and infringement of accused products in litigations relevant to issues present in this case, with overlapping products, features, functionalities, or positions.[8] Such documents will have information regarding the design, operation, and value of accused functionalities and components.

The end of fact discovery is near. Yet, Apple continues to withhold discovery. Even if Apple were to produce everything now, Maxell has been prejudiced by not having had the benefit of access to relevant discovery in a timely manner. Maxell requests that Apple end its misconduct and the Court compels Apple to do so.

---

[8] Maxell has requested such materials from the cases against Apple brought by VirnetX, ZiiLabs, HTC, Wisconsin Alumni Research Foundation, Imperium IP Holdings, Kodak, and CalTech.

Dated: February 14, 2020

By: */s/ Jamie B. Beaber*

Geoff Culbertson
Kelly Tidwell
Patton, Tidwell & Culbertson, LLP
2800 Texas Boulevard (75503)
Post Office Box 5398
Texarkana, TX 75505-5398
Telephone: (903) 792-7080
Facsimile: (903) 792-8233
gpc@texarkanalaw.com
kbt@texarkanalaw.com

Jamie B. Beaber
Alan M. Grimaldi
Kfir B. Levy
James A. Fussell, III
Baldine B. Paul
Tiffany A. Miller
Saqib J. Siddiqui
Bryan C. Nese
William J. Barrow
Alison T. Gelsleichter
Clark S. Bakewell
MAYER BROWN LLP
1999 K Street, NW
Washington, DC 20006
Telephone: (202) 263-3000
Facsimile: (202) 263-3300
jbeaber@mayerbrown.com
agrimaldi@mayerbrown.com
klevy@mayerbrown.com
jfussell@mayerbrown.com
bpaul@mayerbrown.com
tmiller@mayerbrown.com
ssiddiqui@mayerbrown.com
bnese@mayerbrown.com
wbarrow@mayerbrown.com
agelsleichter@mayerbrown.com
cbakewell@mayerbrown.com

Robert G. Pluta
Amanda Streff Bonner
Mayer Brown LLP
71 S. Wacker Drive
Chicago, IL 60606
(312) 782-0600

rpluta@mayerbrown.com
asbonner@mayerbrown.com

*Counsel for Plaintiff Maxell, Ltd.*

**CERTIFICATE OF CONFERENCE**

I certify that Plaintiff Maxell, Ltd. has complied with the requirements of Local Rule CV-7(h) and the Discovery Order governing this case. Specifically, with respect to the issue of technical documents, non-source code documents on the source code computer, and forecasts, Maxell sent Apple a written statements outlining its deficient discovery on December 18, 2019. The parties held a telephonic meet and confer on January 23, 2020, which was attended by lead and local counsel for both parties. On January 15 and January 31, 2015, Apple provided a written response to Maxell's December 18 letter stating its position on the deficient materials identified by Maxell. For the reasons stated in its Motion, Maxell and Apple were not able to reach agreement on the items identified in this motion.

With respect to the issue of licenses and prior litigation documents and marketing surveys, Maxell sent Apple a written statements outlining its deficient discovery on January 27 and 28, 2020. Although the parties have exchanged emails regarding the licenses and prior litigation documents, and Maxell made multiple requests for a meet and confer, Apple did not provide its availability for a meet and confer or provide a written response stating whether it would or would not produce the requested materials within the timeframe set forth in the Discovery Order. On February 13 (more than 14 days after service of Maxell's written statement), Apple stated it was "still working through some issues regarding the documents mentioned in your below email. We hope to have more information early next week and any meet and confer before that would be premature." Given Apple's refusal to address the issues within the time set forth in the Discovery Order, Maxell proceeded with its motion.

*/s/ Jamie B. Beaber*
Jamie B. Beaber

*/s/ Geoff Culbertson*
Geoff Culbertson

**CERTIFICATE OF SERVICE**

The undersigned certifies that all counsel of record who are deemed to have consented to electronic service are being served this 14th day of February 2020, with a copy of this document via electronic mail.

*/s/ Jamie B. Beaber*
Jamie B. Beaber

[redacted]

[redacted]

[redacted]