PUBLIC VERSION

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION**

| | |
|---|---|
| MAXELL, LTD., | Case No. 5:19-cv-00036-RWS |
| *Plaintiff*, | |
| | **JURY TRIAL DEMANDED** |
| v. | |
| | PUBLIC VERSION |
| APPLE INC., | |
| *Defendant*. | |

**MAXELL, LTD.'S OPPOSED MOTION FOR SANCTIONS**

# <u>Table of Contents</u>

I.   **Background** ........................................................................................................... 1

    A.   **Governing Rules and Orders** ..................................................................... 1

    B.   **Maxell's Efforts to Obtain Relevant Discovery** ...................................... 2

    C.   **Exemplary Exchange Regarding Deficiencies** ........................................ 4

II.   **Legal Standard** ................................................................................................ 6

III.   **Argument** ......................................................................................................... 7

    A.   **Apple's Failure to Satisfy P.R. 3-4** ......................................................... 7

    B.   **Failure to Satisfy Order Directing Substantial Completion of Production** .............. 9

    C.   **Prejudice to Maxell** ................................................................................. 10

    D.   **Requests for Sanctions** ............................................................................ 11

IV.   **Conclusion** ....................................................................................................... 15

# <u>Table of Authorities</u>

**Cases**

*Apple Inc. v. Samsung Elecs. Co., Ltd.*, 2012 WL 2862613 (N.D. Cal. July 11, 2012) ................ 6

*Apple Inc. v. Samsung Elecs. Co., Ltd.*, No. C 11-1846, 2012 WL 1595784 (N.D. Cal. May 4, 2012) ................................................................................................................................. 13

*Burnett v. Ford Motor Co.*, C.A. No. 3:13-cv- 14207, 2015 WL 1527875 (S.D.W.Va. Apr. 3, 2015) .................................................................................................................................. 8

*Delphix Corp. v. Actifio, Inc.*, No. 13-cv-4613-BLF-HRL, 2015 WL 5693722 (N.D. Cal. Sept. 29, 2015) .............................................................................................................................. 8

*Edward D. Ioli Trust v. Avigilon Corp.*, C.A. No. 2:10-cv-605-JRG, 2012 WL 5830711 (E.D. Tex., Nov. 6, 2013) ................................................................................................................. 8

*Hullinger v. Anand*, No. CV 15-7185, 2016 WL 7444620 (C.D. Cal. Aug. 19, 2016) ................ 6

*Morrison Knudsen Corp. v. Fireman's Fund Ins. Co.*, 175 F.3d 1221 (10th Cir.1999) ................ 7

*Personal Audio, LLC v. Apple, Inc.*, No. 9-cv-111, 2011 WL 6148587 (E.D. Tex. June 16, 2011) ........................................................................................................................................... 7

*Roadway Express, Inc. v. Piper*, 447 U.S. 752 (1980) ................................................................ 7

*SynQor, Inc. v. Artesyn Techs., Inc.*, No. 2:07-CV-497, 2011 U.S. Dist. LEXIS 74337 (E.D. Tex. July 11, 2011) ..................................................................................................................... 7

*United States v. Ocwen Loan Servicing, LLC*, No. 4:12-cv-543, 2016 WL 3189589 (E.D. Tex. Jun. 8, 2016) ............................................................................................................................ 12

*VirnetX Inc. v. Cisco Sys., Inc.*, No. 6:10-CV-417, 2012 WL 7997962 (E.D. Tex. Aug. 8, 2012) ........................................................................................................................................... 11

**Rules**

Fed. R. Civ. P. 37(b)(2)(A) ........................................................................................................... 7

Fed. R. Civ. P. 37(b)(2)(C) ........................................................................................................... 7

Two primary orders and the Local Patent Rules govern the scope and timing of discovery in this case, and Apple has disobeyed them. Though Apple repeatedly represented to Maxell and the Court that its document and source code productions were complete under the rules, the representations were simply untrue. Moreover, Apple has refused to address its deficiencies in good faith, often disregarding the materiality and relevance of the materials sought and accusing Maxell of overreaching, harassing, and trying to drive up the costs of litigation. Now, however, we are in the final stages of fact discovery, and Maxell is having to work through documents and source code that *continue* to be produced instead of preparing for depositions and expert reports. Even worse, Apple still has not produced fulsome, complete discovery for all accused products, components, and functionalities. It is too late now for Maxell to review and make meaningful use of such late produced materials. To remedy the prejudice, the Court should 1) preclude Apple from using the discovery it failed to timely produce, including discovery produced after January 31; 2) deem certain accused products/components and source code to be representative of all versions of that product as detailed in the chart below; and 3) assess monetary sanctions.

## I.      Background

### A.      Governing Rules and Orders

Patent Rule 3-4(a) requires production of "[s]ource code, specifications, schematics, flow charts, artwork, formulas, or other documentation sufficient to show the operation of any aspects or elements of an Accused Instrumentality identified by the patent claimant in its P.R. 3-1(c) chart." D.I. 62 at 1-2. At a September 2019 hearing, Apple represented to the Court that it had timely complied with the P.R. 3-4 requirement. D.I. 90 (9/17/19 Hr'g. Tr. at 46:7-47:8). On this point, the Court was very clear: "If you haven't met that deadline, you're in violation of the Rule." *Id.* at 46:21-22. To which, Apple's counsel acknowledged: "we are taking the position that we have met that deadline and that is a hard deadline." *Id.* at 47:5-6. Despite such

1

representation, Maxell's review of Apple's technical documents and source code revealed that Apple had not only failed to meet the deadline but was withholding relevant documents and code for certain accused products and versions of accused operating systems.

Beyond the Patent Rules, Apple has ignored the "Additional Disclosures" requirement of this Court's Discovery Order D.I. 42 at 3(b). When that deadline passed with only a paltry production by Apple, Maxell quickly alerted the Court to ensure Apple's timely compliance. D.I. 56. Maxell argued that Apple's conduct must be addressed early "to avoid more prejudice from Apple's delays, including waiting until the final days of discovery to provide relevant, responsive information." *Id.* at 1. In response, the Court held: "Apple agreed to substantially complete all discovery by November 27, 2019… and the Court expects it to meet this deadline." D.I. 126 at 4. The Order reiterated Apple's obligation to "produce or permit the inspection of all documents… in [its] possession, custody, or control that are relevant to the pleaded claims or defenses…." *Id.* Acknowledging these obligations, Apple filed a Notice of Compliance on November 27 representing that it substantially completed its document and source code production. D.I. 147. In fact, however, Apple's production was woefully incomplete.

## B.      Maxell's Efforts to Obtain Relevant Discovery

Maxell has attempted to work with Apple on discovery from the beginning. On June 18, 2019, Maxell sent a letter identifying the most relevant categories of documents including, for example, technical specifications, schematics, and source code relating to the accused features and functionalities and to a limited number of implicated components, as well as non-technical materials such as market studies and customer surveys. Ex. A (6/18/19 Ltr. Beaber to Simmons). When Maxell asked whether there were any categories Apple would not produce, Apple responded it was "unaware of any areas where the parties are at an impasse."  Ex. B (7/18/19 Ltr. Beasley to Beaber). Apple also confirmed it would "continue to produce documents sufficient to

2

show information 'relevant to the pleaded claims or defenses involved in this action' on a rolling basis…." Ex. C (7/18/19 Ltr. Beasley to Beaber). Although not then clear, Apple's agreement to produce documents "sufficient to show" relevant information, as opposed to the relevant information itself, previewed Apple's unduly narrow view of discovery.

Apple's response to Maxell's Motion to Compel made clear that Maxell would have to push Apple to produce necessary relevant information. Maxell began to do so immediately. A week after Apple's in-Court representation that it had satisfied P.R. 3-4, Maxell sent a letter detailing undeniable deficiencies with Apple's productions. Ex. D (9/24/19 Ltr. Beaber to Beasley). Given the limited types of documents Apple had produced,[1] Maxell focused broadly on additional categories of documents it believed should exist and be produced, asserting that "it is almost certain that Apple has additional types of documents, including additional specifications, internal technical presentations, service manuals, testing documents, and many more documents from Apple's [component] suppliers." *Id.* Maxell identified deficiencies with Apple's source code production, including that Apple provided no way for Maxell to link any of the source code to a particular version of operating system and/or Accused Product. *Id.*

Apple responded that it had complied with its obligation to produce documents "sufficient to show the operation" of the accused functionalities and attacked Maxell's additional requests as impermissible under the Federal Rules. Ex. E (10/2/19 Ltr. Beasley to Beaber at 2). Though Maxell raised these categories of materials at the outset of the case, *to no objection*, Apple now asserted that "Maxell articulates no reasonable basis for why such documents are relevant to the case, nor why any such documents would provide any different or non-cumulative information of the accused functionalities above and beyond the documents already produced."

---

[1] At that time, Apple's technical production consisted only of publicly available specifications, developer documents and support information, ███████████████████████████████████████████████████████████████
████████████, and a small number of documents related to a subset of components from three suppliers.

*Id.* at 3. Apple asserted that "the source code provides the most complete and accurate representation of how the accused Apple products actually work," yet refused Maxell's request for a way to link the produced source code to the accused products: "Apple has no obligation … to re-organize its source code to make review more convenient to Maxell." *Id.* at 4-5.

The line was drawn. Apple resisted any attempt to expand its technical production beyond those minimum documents that it decided were sufficient to show the operation of the accused functionalities. Every time Maxell identified missing material, Apple responded that the request was not proportional to the case[2] and demanded specific explanations of relevance, though such is clear from Maxell's infringement contentions. This happened even when Maxell raised a new document that fell within a previously-addressed category of materials.[3] Thus, every time Maxell identified a document or piece of source code as missing, the parties engaged in weeks of discussion. The result is an uninterrupted five months of constant back and forth regarding Apple's deficient productions. All told, the parties have exchanged over 30 letters (not counting emails) and held at least five telephonic meet and confers regarding Apple's discovery deficiencies, most lasting over an hour.[4] *See* Miller Decl. at ¶ 19 (summarizing exchanges).

### C.    Exemplary Exchange Regarding Deficiencies

Maxell's efforts to obtain third-party component documents provides an example of the efforts Maxell has had to unnecessarily expend to obtain relevant discovery. Although Maxell requested such documents on June 18, 2019 (Ex. A), Apple's P.R. 3-4 production only contained a small handful of such documents. Maxell raised the deficiency at the hearing on its first Motion

---

[2] Despite many requests to explain why Maxell's requests were not proportional, Apple has provided no basis.
[3] For example, Maxell raised Apple's failure to produce component documents as early as 9/24/19. On December 18, Maxell identified specific components for which materials were missing. Ex. H. Apple responded "Maxell's efforts to shoehorn demands for newly identified components into its prior requests is without merit…"  Ex. I.
[4] This directly contradicts Apple's assertion to the Court that Maxell's approach to discovery is to vaguely allege deficiencies and then "run[] to court with aspersions of nefarious intent and misconduct." D.I. 199 at 1. Maxell has only filed two motions to compel, the second one following nearly five months of discovery discussions. Apple has "run to the Court" more often than Maxell.

to Compel and in its follow-up letter thereto, identifying exemplary components present in Maxell's infringement contentions for which documents were not produced (*e.g*., Avago AFEM-8056). D.I. 90 (9/17/19 Hr'g. Tr. at 13:22-14:17); Ex. D (9/24/19 Ltr. Beaber to Beasley). Though Apple had not previously objected to producing these documents, its attitude changed:

> Maxell appears to contend that if *any* third-party component is ever implicated by an accused feature in any incidental fashion whatsoever, beyond what Maxell has alleged in its infringement contentions, Apple must produce every technical document related to that component. This is not required by the local rules, and such a broad scope of discovery would impose an impossibly high and unreasonable burden on both Apple and its suppliers in a manner inconsistent with the proportionality rule under the Federal Rules of Civil Procedure. [ ] If there are specific, accused components for which Maxell legitimately contends it needs additional documents regarding accused functionality, where the component-level information are necessary to understand operation of the accused functionality, and that Maxell contends such documents are relevant, necessary, proportional to the needs of the case, and especially non-cumulative in light of the already-produced schematics, BOMs, user manuals, developer guides, and source code, please identify such components and articulate Maxell's basis for such contention.

Ex. E (10/2/19 Ltr. Beasley to Beaber). Maxell noted the narrow scope of its request and identified components for which the request was most important (*e.g*., Avago AFEM-8056). Ex. F (10/8/19 Ltr. Beaber to Beasley). Following Apple's November 27 production, Maxell identified a significant number of component documents as still missing.[5] Ex. H (12/18/19 Ltr. Beaber to Beasley) (identifying, *e.g.*, Avago AFEM-8056). In January, Apple responded that "[s]pecifications regarding the components identified in Maxell's letter… are not relevant to any claim or defense… as evidenced by the facts that these components are not accused in Maxell's infringement contentions and have not been identified in any prior correspondence."[6] Ex. I (1/15/20 Ltr. Pensabene to Beaber). But some components, like the Avago AFEM-8056, were identified in Maxell's contentions (*see* Ex. O (Excerpt of '193 Inf. Contentions) at 44), and in

---

[5] Maxell also subpoenaed the suppliers directly for component information. In many instances, the suppliers resisted or delayed production, noting that Apple should have the documents and was given permission to produce them.

[6] Maxell could not know of the identity of most of the implicated components until Apple provided such information in response to Maxell's interrogatory, which Apple did not begin until the end of November.

prior correspondence. Apple complained that component discovery was irrelevant and not proportional to the needs of the case, and argued Maxell never explained why it needed the documents. Ex. I (1/15/20 Ltr. Pensabene to Beaber). Nonetheless, on February 10 Apple produced many of the requested component documents, including the Avago datasheets Maxell identified months earlier. But even then, many datasheets were incomplete excerpts. For example, the AFEM-8056 datasheet contained only pages 1, 2, 66-74, and the back cover. Ex. N. Although ███████████████████████████████████████s, they have not been produced. *Id.* at 1.

## II.    Legal Standard

Federal Rule 37(b)(2) states that if a party "fails to obey an order to provide or permit discovery," the court may issue "further just orders," including without limitation that "facts be taken as established for purposes of the action" and that the disobedient party be prohibited "from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." Fed. R. Civ. P. 37(b)(2)(A). Instead of or in addition to these sanctions, a court must order the party and/or their counsel "to pay the reasonable expenses, including attorney's fees, caused by the failure…." Fed. R. Civ. P. 37(b)(2)(C). "With respect to monetary sanctions, once a violation is demonstrated, the disobedient party bears the burden of showing that the failure was justified or that special circumstances make an award of expenses unjust." *Hullinger v. Anand*, No. CV 15-7185, 2016 WL 7444620, at *8 (C.D. Cal. Aug. 19, 2016) (citing *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 2012 WL 2862613, at *6 (N.D. Cal. July 11, 2012). "Rule 37 sanctions must be applied diligently both 'to penalize those whose conduct may be deemed to warrant such a sanction, [and] to deter those who might be tempted to such conduct in the absence of such a deterrent.'" *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 763-64 (1980).

Rule 37 sanctions are appropriate where parties show a complete disregard of their

6

discovery obligations and violate the Court's discovery orders. *See SynQor, Inc. v. Artesyn Techs., Inc.*, No. 2:07-CV-497, 2011 U.S. Dist. LEXIS 74337, at *26-27 (E.D. Tex. July 11, 2011)(ordering Delta to pay $500,000.00 in civil contempt sanctions to SynQor and also granting SynQor's Motion for attorneys' fees and costs that were attributable to Delta's discovery abuses). "A refusal to disclose information without substantial justification is ground for sanctions." *Personal Audio, LLC v. Apple, Inc.*, No. 9-cv-111, 2011 WL 6148587 (E.D. Tex. June 16, 2011) (citing *Morrison Knudsen Corp. v. Fireman's Fund Ins. Co.*, 175 F.3d 1221, 1229–30 (10th Cir.1999).

## III.   Argument

Maxell attempted to get ahead of Apple's discovery abuses, bringing an early motion to compel to clarify Apple's obligations. Apple argued in response that, given the time then-remaining in fact discovery, Maxell's "aspersions of 'prejudice' ring hollow and are without explanation or basis." D.I. 62 at 1. But the prejudice Maxell tried to avoid has come to pass. Apple disobeyed P.R. 3-4, the Discovery Order, and this Court's order requiring substantial completion of discovery by November 27, 2019. Apple refuses to acknowledge its failures,[7] let alone provide substantial justification for them. Apple's actions have prejudiced Maxell and warrant sanctions.

### A.   Apple's Failure to Satisfy P.R. 3-4

Apple acknowledges it was required to produce documents and source code sufficient to show the operation of the accused functionalities by August 14, 2019. Under its narrow view of this obligation, Apple believes that it can unilaterally pick and choose the amount and types of

---

[7] Indeed, despite previously filing a Notice of Compliance with D.I. 126, Apple now posits that the Order did not actually require Apple to substantially complete its document production by November 27. Ex. M (3/4/20 Ltr. Pensabene to Beaber) ("Maxell identified no court order that Apple has violated other than its incorrect position that Apple was required by this Court's prior orders to complete essentially all document production by November 27.").

documents that are "sufficient to show" operation. But that interpretation of P.R. 3-4 has been rejected in this District: the rule "requires the alleged infringer to produce any and all documents describing the operation of any aspects or elements of an accused instrumentality." *Edward D. Ioli Trust v. Avigilon Corp*., C.A. No. 2:10-cv-605-JRG, 2012 WL 5830711, at *3 (E.D. Tex., Nov. 6, 2013).

Apple also believes it can pick and choose the types of documents that Maxell must rely on to prove its case, repeatedly asserting that source code provides the most complete and accurate representation of how the accused products work. *See, e.g*., Ex. E (10/2/19 Ltr. Beasley to Beaber). Maxell should not, however, be forced to prove its case to the jury using the most technical, and most restricted, discovery available. Alleged infringers must produce materials in addition to source code. *See e.g., Delphix Corp. v. Actifio, Inc*., No. 13-cv-4613-BLF-HRL, 2015 WL 5693722, at *5 (N.D. Cal. Sept. 29, 2015) ("Under Patent L.R. 3-4, Delphix is required to produce, in addition to source code, 'specifications, schematics, flow charts, artwork, formulas, or other documentation sufficient to show the operation of any aspects or elements of an Accused Instrumentality ….'"); *see also, e.g., Burnett v. Ford Motor Co*., C.A. No. 3:13-cv-14207, 2015 WL 1527875, at *5 (S.D.W. Va. Apr. 3, 2015) (Rejecting argument that source code need not be produced because documents relevant and necessary for the analysis and development of theory were already produced and holding "Plaintiffs should not be forced to rely on Ford's determination as to what is the 'most relevant' evidence in its possession.").

Regardless, under any reading of the rule, Apple did not produce materials "sufficient to show" the accused functionalities in August 2019. For example, at the outset Maxell identified "Maps" as an accused functionality and accused certain iPhones, iPads, and Watches. *See, e.g., Ex. P (Excerpt of '317 Inf. Contentions). Maxell also identified FaceTime as an accused

functionality and accused certain iPhones, iPads, iPod Touches, and MacBooks. *See, e.g.,* Ex. Q (Excerpt of '991 Inf. Contentions). Yet, Apple did not produce source code for 1) "Maps" for any accused Watch products; or 2) FaceTime for any accused MacBook product until February 19, 2020—more than six months after its P.R. 3-4 deadline. Further, in September 2019, Apple released a new operating system, iPadOS 13.1, which runs on several accused products. Although Maxell has requested that code since at least November 14, 2019, Apple did not address Maxell's request until March 5, 2020. *See* Ex. G (11/14/19 Ltr. Beaber to Beasley). This despite Apple's contention that the source code is "the most complete and accurate" evidence.

## B.    Failure to Satisfy Order Directing Substantial Completion of Production

The Court directed Apple to substantially complete production of all relevant documents by November 27, 2019. D.I. 126. On that date, Apple submitted a Notice of Compliance representing that it had. But Apple had to know that it was not being forthright. On December 6, Apple for the first time produced internal customer surveys regarding the accused products. Miller Decl. at ¶ 20. Maxell requested those materials in June 2019 and raised them in its first motion to compel. Ex. A; D.I. 90 (9/17/19 Hr'g. Tr. at 39:22-40:2). But even Apple's December 6 production was incomplete. ███████████████████████████

████████, which Maxell requested on January 28. Ex. J. Apple delayed responding until February 12, indicating then it was "working through some issues regarding the documents."[8] Ex. L. Finally, on February 20, Apple produced nearly 250 more internal-survey type documents.

Following review of Apple's November 27 productions and representations, Maxell raised (in 13 pages) additional deficiencies, including technical specifications for accused

---

[8] Apple made this statement **after** the time period set forth in the Discovery Order for meeting and conferring and providing a written response to a discovery request had expired, even though Maxell had made several requests for a meet and confer. Apple attacked Maxell's inclusion of this issue in its motion to compel as "willfully ignoring this Court's standing order requiring … meet and confer" (D.I. 205 at 1), but it is Apple that refused to meet and confer within the allotted time. Maxell is not required to wait indefinitely for Apple to respond to issues at its convenience.

functionalities, ███████████████████████████████ third-party component documents, 22 categories of source code, the improper production of documents on the source code computer, and deficient interrogatory responses. Ex. H. After additional back and forth and a meet and confer, Apple wrote on January 31 that "Apple has conducted a reasonable investigation for the accused functionalities and produced all responsive technical documents that could be located after a reasonable search." Ex. K (1/31/20 Ltr. Pensabene to Beaber). But Maxell believed material to be missing, and questioned the sufficiency of Apple's reasonable investigation. So Maxell filed a second motion to compel. Apple has produced over 4,200 documents since its January 31 representation of completion.[9]

All told, Apple has produced over 4,750 documents and significant additional source code after November 27. Its late productions consist of, for example, marketing surveys, third-party component datasheets, internal specifications, materials improperly produced on the source-code computer (*see* D.I. 197), and ███████████████.

## C.     Prejudice to Maxell

Maxell bears the burden to show that the accused products infringe its patents. Apple has withheld evidence central to Maxell's effort to carry that burden. This Court's rules and procedures are intended to facilitate discovery, save cost and time, and ensure the orderly progression of cases. The early disclosure of technical documents and information is critical to these intentions. Apple has abused the rules and procedures to withhold information, thereby impairing Maxell's ability to prosecute its case in exactly the way the rules and procedures are designed to prevent. Apple's conduct has required Maxell to dedicate countless hours and cost to identifying and pursuing Apple's production deficiencies. Regarding source code, Maxell has

---

[9] Although many of these are believed to be the materials that were improperly produced on the source code computer (*see* D.I. 197), that is not true for all.

expended substantial time and money to repeatedly send attorneys and experts to perform review of incomplete source code, often without up-to-date interrogatory responses linking source code to operating systems/accused products or complete technical documents that describe the functionalities in the source code. Moreover, Apple demanded that Maxell prepare supplemental infringement contentions based on incomplete source code, and then moved to compel further supplementation when it was dissatisfied with the results, thereby causing Maxell to expend unnecessary time and resources opposing a motion that was spurred by Apple's own deficiencies, and preparing iterative supplementations.

The biggest prejudice on Maxell, however, has been the divergence of time and effort spent addressing Apple's discovery misconduct at the expense of analyzing discovery, preparing for depositions and expert reports, and preparing the case for trial. Apple's eleventh-hour productions in February and March, when discovery is winding down and depositions are imminent, make this prejudice particularly acute. And there is no doubt that Apple will continue producing relevant materials up until the close of fact discovery. After months of fighting against such a result, Maxell should not be the party that suffers from Apple's gamesmanship.

### D.      Requests for Sanctions

Maxell requests its fees and expenses incurred in connection with the filing of its second motion to compel, this motion for sanctions, and for the iterative reviews of source code it has been forced to perform. Monetary sanctions alone, however, are not sufficient. Apple's persistent resistance to Maxell's reasonable discovery requests and delays in producing relevant information have impeded Maxell's ability to build its case. Monetary sanctions cannot remedy this harm. Nor are they sufficient to deter such conduct in the future. Where hundreds of millions of dollars are at stake, as here, Apple would be happy to pay a relatively small sum in exchange for the ability to delay discovery and handicap Maxell's case. Parties must be made aware that

they cannot just pay their way out of such discovery abuse. *See, e.g.*, *VirnetX Inc. v. Cisco Sys., Inc.*, No. 6:10-CV-417, 2012 WL 7997962, at *5 (E.D. Tex. Aug. 8, 2012) ("If the Court simply imposes fees and expenses and orders completion of [the] deposition, it would be a nominal sanction at best, as Apple would have accomplished what it conceivably wanted…. Such a nominal sanction would not provide any deterrent effect and would not put VirnetX in the position it was in prior to the termination of the deposition.").

On January 31, following a meet and confer, Apple claimed (wrongly) it had "produced all responsive technical documents that could be located after a reasonable search" and even threatened to seek relief in response to Maxell's requests for further production: "To the extent Apple has agreed to investigate and produce additional technical documents and/or source code, it does not concede that such additional documents or code are relevant or are necessary … and the production of any additional code is without prejudice to Apple seeking relief based on the date of its P.R. 3-4 production." Ex. K (1/31/20 Ltr. Pensabene to Beaber). Apple should thus be precluded from relying on any documents produced after January 31, 2020 to prosecute or defend its case. Maxell, however, may rely on such documents, and Apple may cross-examine Maxell's witnesses about any document or code introduced by Maxell. The Court has previously found such sanctions to be appropriate in the face of untimely productions for which there was no substantial justification. *See e.g.*, *United States v. Ocwen Loan Servicing, LLC*, No. 4:12-cv-543, 2016 WL 3189589, at *5 (E.D. Tex. Jun. 8, 2016). Even Apple itself has requested, and received, such a sanction for materials produced during fact discovery. *Apple Inc. v. Samsung Elecs. Co., Ltd.*, No. C 11-1846, 2012 WL 1595784, at *3-4 (N.D. Cal. May 4, 2012).

There are certain accused functionalities for which Apple's productions remain incomplete, thereby hindering Maxell's ability to establish certain claim elements. There are also

certain categories of documents/code for which Apple has not made a complete production

across all accused products, obviously prejudicing Maxell's ability to cite to evidence in support

of its infringement assertions for each product. Maxell has attempted to resolve this issue

through an agreement regarding representative products, but Apple has not yet agreed. Because

Apple has not produced relevant documents for certain functionalities, has failed to produce

complete technical information for all accused products, and will not yet agree to representative

products, Maxell further seeks the following sanctions:

| Requested Sanction | Example   Tying   Discovery   Abuse   to   Sanction |
|---|---|
| Apple be prohibited from opposing claim that iPad 7th generation (A2200, A2198) has the same components as iPad 6th generation for the claims where the iPad 7th generation is accused. | Apple has not identified the components included in  iPad 7th generation in response to Maxell Interrogatory No. 6. |
| Apple be prohibited from opposing claim that MacBook Pro (15,2) has the same WiFi/ Bluetooth components as MacBook Pro (15,1) for the claims where MacBook Pro (15,2) is accused. | Apple has not identified the WiFi/Bluetooth components included in MacBook Pro (15,2). |
| Apple be prohibited from opposing claim that one accused product is representative of other products having the same category of components (*e.g.*, CMOS sensor, camera, gyroscope, image signal processor) for the "mixing and culling" and image stabilization limitations of the '493 Patent. | Apple has not produced ▮▮▮▮▮▮ ▮▮▮▮▮▮▮      for all accused products; camera module hardware specifications; complete gyroscope specifications; native, legible sensor spreadsheets (originally produced on source code computer), or ▮▮▮▮▮▮▮▮▮▮      code for iOS 7.

Apple did not produce ▮▮▮▮▮▮      for iPhone 6S and iPhone 6s Plus until February 2020, after Maxell filed its Motion to Compel. |
| Apple be prohibited from opposing claim that one accused products is representative of other products having the same category of components (*e.g.*, modem, power amplifier, variable amplitude amplifier) for the "controller controls a gain of said variable amplitude amplifier and a bias condition of said power amplifier using a set of bias and gain data stored in memory" limitations of the '193 Patent. | Apple has not produced schematics demonstrating connections between implicated components for all accused products; complete transceiver and modem specifications containing block diagrams and describing the functionality of power control; complete power amplifier datasheets that disclose bias control data; testing documents related to power measurement; spreadsheets containing data regarding the settings of power amplifiers and their control by modems |

| | |
|---|---|
| | (only made available on the source code computer).<br><br>Intel states it withheld production of Intel specifications pending Apple permission. |
| Apple be prohibited from opposing claim that three accused products (one iOS, one watchOS, one macOS) are representative of other products having the same category of components (*e.g.*, Bluetooth and WiFi) for the "Bluetooth carrying authentication" and "WiFi carrying data exchange" limitations of the '438 Patent. | Apple has not produced complete specifications/datasheets for Bluetooth and WiFi components (*e.g.*, █████████ █████ ), which contain information regarding structure and functionality. |
| Apple be prohibited from opposing claim that one accused product is representative of other products having the same category of components (*e.g.*, Bluetooth) for the "transceiver which performs short-range wireless communications" limitation of the '586 Patent. | Apple has not produced complete specifications/datasheets for Bluetooth and WiFi components (e.g., █████████ █████ ), which contain information regarding structure and functionality. |
| Apple be prohibited from opposing claim that one accused product is representative of other products having the same category of components (*e.g.*, camera, microphone, application processor, FaceTime application) for the "renders the camera operative" and/or "renders the camera and microphone operative" limitations of the '991 Patent. | Apple has not produced schematics demonstrating connections between implicated components for all accused products; camera module hardware specifications; or source code for camera/microphone interface for macOS products. |
| Apple be prohibited from opposing claim that FaceTime in macOS products operates the same as FaceTime in iOS products in connection with the '991 Patent. | Apple did not produce FaceTime source code for any macOS product until February 2020, after Maxell filed its Motion to Compel. |
| Apple be prohibited from opposing claim that WiFi and cellular components work the same way in connection with the making/receiving of a FaceTime call in connection with the '991 Patent. | Apple has not produced complete technical specifications for WiFi and cellular functionalities (*e.g.*, ███████ ████████████████ ), which contain information regarding structure and functionality. |
| Apple be prohibited from opposing claim that Maps and Find My Friends operate the same way across different versions of iOS in connection with the '317/'999/'498 Patents. | Apple has not produced complete transceiver and modem specifications that show t██████ ████████████████████████████ █████████████████████; complete Bluetooth and Wifi datasheets for every accused product (*e.g.* ██████████ ████████ ) that show how Bluetooth/Wifi can be used for location services; or complete gyroscope datasheets (*e.g.*, ██████ ) that show how the gyroscope can be used for |

| | orientation. |
|---|---|
| Apple be prohibited from opposing claim that Maps in watchOS products operates the same as Maps in iOS products in connection with the '317/'999/'498 Patents. | Apple did not produce Maps source code for any watchOS products until February 2020, after Maxell filed its Motion to Compel. |
| Apple be prohibited from opposing claim that one accused product is representative of other products having the same category of components (*e.g.*, ███████ ), where Maxell has provided a basis for such representation, with respect to the Express Transit functionality in connection with the '794 Patent. | Apple has not produced source code for Express Transit or complete ███████ for components used to provided Express Transit. |
| Apple be prohibited from opposing claim that Express Transit (NFC chip) continues to work after a first battery threshold and stops working after a second battery threshold when the device is shut down completely. | Apple has not produced source code for Express Transit or complete ███████ ███████ specifications for all accused products ( ███████ ███████ ). |
| Apple be prohibited from opposing claim that one ███████ chip is representative of other ███████ chips, with respect to the accused functions of the '794 Patent. | Apple has not produced complete ███████ ███████ specifications for a majority of the accused products ( ███████ ███████ ). |
| Apple be prohibited from opposing claim that one accused product is representative of other products having the same category of components (*e.g.*, speaker, application processor, Announce Caller software) with respect to AnnounceCaller in connection with the '306 Patent. | Apple has not produced documents related to the operation of AnnounceCaller. |
| Apple be prohibited from opposing claim that produced source code for iOS 13 for "███████" and "███████" applies also to iOS 7 functionality. | Apple has not produced source code for iOS7 for ███████ . |

These narrow measures will allow this case to be decided on the merits while preventing Apple from benefitting from its discovery misconduct.

## IV.    Conclusion

Apple has severely prejudiced Maxell in this case through its discovery abuses. Sanctions are the only way to penalize Apple for such abuses and to deter future litigants from engaging in similar conduct. Maxell therefore requests the sanctions set forth above.

Dated: March 5, 2020                    By:   */s/ Jamie B. Beaber*
                                              Geoff Culbertson
                                              Kelly Tidwell
                                              Patton, Tidwell & Culbertson, LLP
                                              2800 Texas Boulevard (75503)
                                              Post Office Box 5398
                                              Texarkana, TX 75505-5398
                                              Telephone: (903) 792-7080
                                              Facsimile: (903) 792-8233
                                              gpc@texarkanalaw.com
                                              kbt@texarkanalaw.com

                                              Jamie B. Beaber
                                              Alan M. Grimaldi
                                              Kfir B. Levy
                                              James A. Fussell, III
                                              Baldine B. Paul
                                              Tiffany A. Miller
                                              Saqib J. Siddiqui
                                              Bryan C. Nese
                                              William J. Barrow
                                              Alison T. Gelsleichter
                                              Clark S. Bakewell
                                              MAYER BROWN LLP
                                              1999 K Street, NW
                                              Washington, DC 20006
                                              Telephone: (202) 263-3000
                                              Facsimile: (202) 263-3300
                                              jbeaber@mayerbrown.com
                                              agrimaldi@mayerbrown.com
                                              klevy@mayerbrown.com
                                              jfussell@mayerbrown.com
                                              bpaul@mayerbrown.com
                                              tmiller@mayerbrown.com
                                              ssiddiqui@mayerbrown.com
                                              bnese@mayerbrown.com
                                              wbarrow@mayerbrown.com
                                              agelsleichter@mayerbrown.com
                                              cbakewell@mayerbrown.com

                                              Robert G. Pluta
                                              Amanda Streff Bonner
                                              Mayer Brown LLP
                                              71 S. Wacker Drive
                                              Chicago, IL 60606
                                              (312) 782-0600

16

**F** PUBLIC VERSION

rpluta@mayerbrown.com
asbonner@mayerbrown.com

*Counsel for Plaintiff Maxell, Ltd.*

## CERTIFICATE OF CONFERENCE

I certify that Plaintiff Maxell, Ltd. has complied with the requirements of Local Rule CV-7(h). Specifically, on February 27, 2020 counsel for Maxell reached out to counsel for Apple to request a meet and confer regarding this motion. On March 3, 2020, Maxell sent Apple a list of the specific sanctions that Maxell intended to include in this motion. Shortly thereafter, the parties held a telephonic meet and confer, which was attended by lead and local counsel. After a short discussion, it was clear that counsel for Apple believed it could benefit from having additional time to consider Maxell's sanctions. Maxell agreed to Apple taking such time and followed up near the close of business on March 4. Apple responded on the evening of March 4 stating that it could not meaningfully consider Maxell's proposals at this time, given the state of Maxell's current infringement contentions. Thus, the parties were not able to reach agreement regarding the issues raised in this Motion.

*/s/ Jamie B. Beaber*
Jamie B. Beaber

*/s/ Geoff Culbertson*
Geoff Culbertson

17

PUBLIC VERSION

## CERTIFICATE OF SERVICE

The undersigned certifies that all counsel of record who are deemed to have consented to electronic service are being served this 5th day of March 2020, with a copy of this document via electronic mail.

*/s/ Jamie B. Beaber*
Jamie B. Beaber