# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TEXARKANA DIVISION

| | |
|---|---|
| MAXELL, LTD., <br><br> Plaintiff <br><br> v. <br><br> APPLE INC., <br><br> Defendant. | Civil Action NO. 5:19-cv-00036-RWS <br><br> **JURY TRIAL DEMANDED** |

# APPLE INC.'S MOTION TO STAY PENDING DETERMINATION OF
# *INTER PARTES* REVIEW OF THE PATENTS-IN-SUIT

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................................ 1

II. FACTUAL BACKGROUND .............................................................................................. 2

III. ARGUMENT ....................................................................................................................... 3

    A. Maxell Will Suffer No Undue Prejudice Or Tactical Disadvantage ...................... 3

    B. The Proceedings Are Not Advanced And Discovery Is Not Yet Complete .......... 4

    C. The Stay Will Likely Simplify This Case .............................................................. 5

    D. The Court Should Grant The Requested Stay Now ............................................... 9

IV. CONCLUSION .................................................................................................................. 10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*454 Life Scis. Corp. v. Ion Torrent Sys., Inc.*,
  No. 15-cv-595-LPS, 2016 WL 6594083 (D. Del. Nov. 7, 2016) ............................................... 8

*Acoustic Tech., Inc. v. Silver Springs Networks, Inc.*,
  No. 17-CV-02176-SK, 2017 WL 6001615 (N.D. Cal. July 25, 2017) ..................................... 10

*Aylus Networks, Inc. v. Apple Inc.*,
  856 F.3d 1353 (Fed. Cir. 2017) ................................................................................................ 7

*Capriola Corp. v. LaRose Indus., LLC*,
  No. 8:12-cv-2346-T-23TBM, 2013 WL 1868344 (M.D. Fla. Mar. 11, 2013) .......................... 6

*Cellular Commc'ns Equip., LLC v. Samsung Elecs. Co.*,
  No. 6:14-CV-759, 2015 WL 11143485 (E.D. Tex. Dec. 16, 2015) ........................................ 10

*Destination Maternity Corp. v. Target Corp.*,
  12 F. Supp. 3d 762 (E.D. Penn. 2014) ...................................................................................... 6

*Elm 3DS Innovations LLC v. Micron Technology Inc. et al.*,
  No. 14-01431 (D. Del. July 11, 2016) .................................................................................... 10

*Ever Win Int'l Corp. v. Radioshack Corp.*,
  902 F. Supp. 2d 503 (D. Del. 2012) .......................................................................................... 7

*E-Watch, Inc. v. Lorex Canada, Inc.*,
  No. CIV.A. H-12-3314, 2013 WL 5425298 (S.D. Tex. Sept. 26, 2013) ................................. 10

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
  721 F.3d 1330 (Fed. Cir. 2013) ................................................................................................ 7

*Goodman v. Samsung Elecs. Am., Inc.*,
  No. 17-CV-5539 (JGK), 2017 WL 5636286 (S.D.N.Y. Nov. 22, 2017) ................................... 9

*Interface, Inc. v. Tandus Flooring, Inc.*,
  No. 4:13-cv-46-WSD, 2013 WL 5945177 (N.D. Ga. Nov. 5, 2013) ......................................... 5

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936) .................................................................................................................. 3

*NFC Techs. LLC v. HTC Am., Inc.*,
  No. 2:13-CV-1058, 2015 WL 1069111 (E.D. Tex. Mar. 11, 2015) ................................. 3, 4, 8

*SAS Inst. Inc. v. Iancu*,
  138 S. Ct. 1348 (2018) .............................................................................................................. 8

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*SCA Hygiene Prod. Aktiebolag v. Cascades Canada, ULC*,
    No. 17-CV-282-WMC, 2017 WL 4484495 (W.D. Wis. Oct. 6, 2017) ...................................... 9

*SCA Hygiene Prod. Aktiebolag v. Tarzana Enterprises, LLC*,
    No. CV17-04395-AB(JPRx), 2017 WL 5952166 (C.D. Cal. Sept. 27, 2017) .......................... 10

*Select Comfort Corp. v. Tempur Sealy Int'l*,
    No. 14-245 (JNE/JSM), 2014 U.S. Dist. LEXIS 183450 (D. Minn. Oct. 10, 2014) ................. 7

*Semiconductor Energy Lab. Co. v. Chimei Innolux Corp.*,
    No. SACV 12-21, 2012 WL 7170593 (C.D. Cal. Dec. 19, 2012) ............................................. 4

*Software Rights Archive, LLC v. Facebook, Inc.*,
    No. 12–3970, 2013 WL 5225522 (N.D. Cal. Sept. 17, 2013) .................................................... 5

*St. Martin Investments, Inc. v. Bandit Indus., Inc.*,
    No. 1:17-CV-472, 2017 WL 6816506 (W.D. Mich. Aug. 30, 2017) ....................................... 10

*Target Therapeutics, Inc. v. SciMed Life Sys., Inc.*,
    No. 94-20775, 1995 WL 20470 (N.D. Cal. Jan. 13, 1995) ........................................................ 8

*The Procter & Gamble Co. v. Kraft Foods Global, Inc.*,
    549 F.3d 842 (Fed. Cir. 2008) ................................................................................................... 3

*TierraVision, Inc. v. Google, Inc.*,
    No. 11-cv-2170, 2012 WL 559993 (S.D. Cal. Feb. 21, 2012) ................................................... 4

*Vanair Mfg., Inc. v. VMAC Glob. Tech. Inc.*,
    No. 2:17-CV-236-JVB-JEM, 2018 WL 1566815 (N.D. Ind. Mar. 30, 2018) ........................... 9

*VirtualAgility Inc. v. Salesforce.com, Inc.*,
    759 F.3d 1307 (Fed. Cir. 2014) ................................................................................................. 4

*Wonderland Nurserygoods Co. v. Baby Trend, Inc.*,
    No. EDCV 14-1153-VAP(SPx), 2015 U.S. Dist. LEXIS 53053 (C.D. Cal. Apr. 20, 2015) ...... 6

**Statutes**

35 U.S.C. § 318 .................................................................................................................................. 7

**I.      INTRODUCTION**

Apple has petitioned for *inter partes* review ("IPR") of all asserted claims of the ten Patents-in-Suit.[1] Apple now respectfully requests, in the interest of judicial efficiency, that this Court stay further proceedings pending the Patent Trial and Appeal Board's ("PTAB's") resolution of Apple's IPR petitions. Apple filed its petitions before the statutory deadline to do so, and each factor considered for a stay—potential undue prejudice to the non-moving party, stage of the proceedings, and simplification of issues—strongly favors granting a stay.

***Plaintiff is not prejudiced by a stay***: The Plaintiff, Maxell, is essentially a patent assertion entity that does not compete with Apple in the market and has admitted that it does not practice any of the Patents-in-Suit. Money damages will adequately compensate it for any alleged harm and it will suffer no prejudice at all or tactical disadvantage from a stay.

***The proceedings are not at an advanced stage and discovery is not yet complete***: Fact discovery is ongoing. Maxell continues to request that Apple produce new documents it has never before requested, most of the fact depositions are not yet completed, expert discovery has yet to begin, and dispositive motions are months away. And trial is not until late October.

***A stay will simplify the issues***: This case involves ten Patents-in-Suit, hundreds of accused products, and a plethora of accused and unrelated features, such as navigation, digital photography, cellular communication, mobile device notification, video conferencing, and wireless communications. To address the huge scope of this case, the parties have collectively identified more than a dozen experts. A stay pending resolution of Apple's IPRs has a high

---

[1] The ten Patents-in-Suit are U.S. Patent Nos. 6,748,317; 6,580,999; 8,339,493; 7,116,438; 6,408,193; 10,084,991; 6,928,306; 6,329,794; 10,212,586; and 6,430,498 (collectively, the "Patents-in-Suit").

probability of greatly simplifying—if not completely eliminating—the myriad issues that a jury will need to consider.

Because all three factors weigh strongly in favor of a stay, Apple respectfully requests that the Court stay this action.

## II.     FACTUAL BACKGROUND

Maxell filed its initial Complaint on March 15, 2019, and its First Amended Complaint on October 23, 2019.  D.I. 1, D.I. 111.  Maxell accuses hundreds of Apple's products of infringing the ten Patents-in-Suit.  *See* D. I. 111, ¶¶ 26, 40, 55, 68, 85, 98, 111, 128, 141, 156.  In its June 12, 2019 Infringement Contentions, Maxell asserted a total of 90 claims.  Declaration of Luann Simmons ("Simmons Decl."), ¶ 15.  Maxell served supplemental infringement contentions on March 13, 2020, that include over 3,700 pages of claim charts.  *Id.*, ¶ 16.

Maxell reduced the number of asserted claims from 90 to 40 in its November 6, 2019 Preliminary Election of Asserted Claims.  *Id.*, ¶¶ 15, 17.  Within four and a half months of Maxell narrowing its claims to 40, Apple filed ten IPR petitions challenging all 40 of those claims.  Apple filed petitions for the '438, '991, '794, and '586 patents on December 19, 2019, for the '193 and '306 patents on December 20, 2019, for the '317, '999, and '498 patents on January 13, 2020, and for the '493 Patent on March 17, 2020.  *Id.*, ¶¶ 5-14.

Institution Decisions for all but the last-filed petition are due in June, July, and August 2020.  *See id.*, ¶¶ 5-13; 35 U.S.C. § 314(b)(1); 37 C.F.R. § 42.107(b).  The PTAB has not yet accorded the '493 Petition a filing date but, assuming a filing date is accorded in March, the Institution Decision is expected before the end of September 2020.  *See* Simmons Decl., ¶ 14; 35 U.S.C. § 314(b)(1); 37 C.F.R. § 42.107(b).  Thus, Institution Decisions for all ten IPR petitions are expected before the currently-scheduled October 26 trial date in this case.

This case is still in the fact discovery stage, and expert discovery has not yet started. Simmons Decl., ¶ 18. Most of fact discovery closes on March 31, 2020. *See* D.I. 46. But due to the COVID-19 pandemic, the Court extended the deadline for fact depositions to April 21, 2020. *See* D.I. 232. The current Docket Control Order sets the close of expert discovery for June 16, 2020, dispositive motions for June 30, 2020, and jury trial starting on October 26, 2020. *Id*.

### III.    ARGUMENT

District courts have broad discretion to manage their dockets, including the power to stay proceedings. *The Procter & Gamble Co. v. Kraft Foods Global, Inc.*, 549 F.3d 842, 848-49 (Fed. Cir. 2008) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.")). In this district, "courts typically consider three factors when determining whether to grant a stay pending *inter partes* review of a patent in suit: (1) whether the stay will unduly prejudice the nonmoving party, (2) whether the proceedings before the court have reached an advanced stage, including whether discovery is complete and a trial date has been set, and (3) whether the stay will likely result in simplifying the case before the court." *NFC Tech. LLC v. HTC Am., Inc.*, No. 2:13-CV-1058, 2015 WL 1069111, at *2 (E.D. Tex. Mar. 11, 2015) (Bryson, J.).

Apple filed IPR Petitions challenging all currently-asserted claims within four and a half months of Maxell's preliminary claim election, and all three factors strongly favor a stay.

### A.    Maxell Will Suffer No Undue Prejudice Or Tactical Disadvantage

Maxell does not compete with Apple. *See, e.g.*, D.I. 111, ¶¶ 1-3. Indeed, Maxell has conceded that it does not use any of the Patents-in-Suit. *See, e.g.*, D.I. 66 at 22. Maxell will, therefore, not be prejudiced at all by a stay because it can be fully compensated for any alleged harm by monetary damages. *See NFC*, 2015 WL 1069111 at *2 (finding no prejudice because

3

"[Plaintiff] does not dispute [Defendant's] contention that it does not compete with [Defendant] and that monetary relief will be sufficient to compensate it for any injury to its patent rights.").

Maxell's own delay in filing this case confirms that it would not be prejudiced by a stay. Seven of the ten Patents-in-Suit issued over 10 years before Maxell filed this case, with another having issued over 6 years before this case. *See* D.I. 1 at ¶¶ 15, 34, 63, 76, 106, 119, 149. And Maxell accuses products that Apple began selling in 2012. That Maxell (and its predecessor-in-interest) waited years after these patents issued before suing belies any claim that a stay will be prejudicial. As this Court and others have explained, a delay in vindicating patent rights "alone" is "not sufficient" to defeat a stay motion. *See, e.g.*, *NFC Tech.*, 2015 WL 1069111 at *2 (citing *E-Watch, Inc.*, 2013 WL 5425298, at *2); *see also Semiconductor Energy Lab. Co. v. Chimei Innolux Corp.,* No. SACV 12-21, 2012 WL 7170593, at *3 (C.D. Cal. Dec. 19, 2012).

Rather than cause prejudice, let alone ***undue*** prejudice, a stay will benefit both parties by allowing them to take advantage of the PTAB's expertise and the IPR process, which constitutes "a more efficient and streamlined patent system that will improve patent quality and limit unnecessary and counterproductive litigation costs." 77 Fed. Reg. at 48,680-01.

### B. The Proceedings Are Not Advanced And Discovery Is Not Yet Complete

As of the filing of this motion, the parties are still engaged in fact discovery, have at least 17 remaining fact depositions to complete and a number of other pending discovery requests and disputes, and have not begun expert discovery. *See, e.g., VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1316 (Fed. Cir. 2014) (the time of the motion is the relevant time from which to measure the stage of litigation under this factor). Most importantly, trial is still more than seven months away. Because "the bulk of the expenses that the parties would incur . . . are still in the future," the stage-of-the-litigation factor favors a stay. *NFC*, 2015 WL 1069111 at *3; *see also Smartflash LLC v. Apple Inc.*, 621 Fed. Appx. 995, 1005 (Fed. Cir. 2015) ("Despite the

4

substantial time and effort already spent in this case, the most burdensome task is yet to come.  A determination from the PTAB that all the asserted claims are patent ineligible will spare the parties and the district court the expense of any further litigation, including a trial.").

Apple's diligence in filing the IPRs also supports granting the stay.  *See Software Rights Archive, LLC v. Facebook, Inc.*, No. 12–3970, 2013 WL 5225522, at *6 (N.D. Cal. Sept. 17, 2013) (granting a stay where IPRs were filed four months after plaintiff's identification of asserted claims).  Maxell asserted a large number of claims—90 claims—at the beginning of this case that it never could have possibly tried, and only narrowed that number to 40 on November 6, 2019.  *See* Simmons Decl., ¶¶ 15, 17.  After Maxell narrowed its asserted claims further, Apple promptly evaluated the prior art, identified and analyzed invalidating prior art for each asserted claim, coordinated with technical experts, drafted ten IPR Petitions, and filed its petitions by March 17, 2020, within four and a half months after Maxell's narrowing.  *See id.*, ¶¶ 5-14.  In view of the complexity of the case and the number of patents and claims asserted, Apple has irrefutably been diligent in preparing and filing its IPR petitions.

        C.        **The Stay Will Likely Simplify This Case**

Courts have identified several ways courts and parties may benefit from a stay pending IPR, including: (1) allowing the PTAB, with its particular expertise, to consider prior art and invalidity issues before they are presented to the Court; (2) alleviating discovery problems relating to invalidity issues; (3) encouraging settlement without further use of the Court; (4) limiting the issues, defenses, and evidence at pretrial conferences and at trial; (5) reducing the costs and burdens for both the parties and the Court; and (6) avoiding the possibility of inconsistent results on the invalidity issues considered by the PTAB.  *See Interface, Inc. v. Tandus Flooring, Inc.*, No. 4:13-cv-46-WSD, 2013 WL 5945177, at *4 (N.D. Ga. Nov. 5, 2013); *Capriola Corp. v. LaRose Indus., LLC*, No. 8:12-cv-2346-T-23TBM, 2013 WL 1868344, at *1

(M.D. Fla. Mar. 11, 2013); *Destination Maternity Corp. v. Target Corp.*, 12 F. Supp. 3d 762, 766 (E.D. Penn. 2014). Apple's requested stay would provide all of these benefits.

A stay would be particularly beneficial in this case because of the complex nature of the case, including ten Patents-in-Suit, from eight different patent families, relating to different technologies, asserted against hundreds of accused products. *See* D.I. 111. As noted above, Maxell's claim charts in its Infringement Contentions total over 3,700 pages, further illustrating the broad scope and complexity of the issues presented in this case. Simmons Decl., ¶ 16.

Statistically, there is a high probability that the IPRs will simplify the case by resulting in a determination that some or all of the claims are invalid. *See Wonderland Nurserygoods Co. v. Baby Trend, Inc.*, No. EDCV 14-1153-VAP(SPx), 2015 U.S. Dist. LEXIS 53053, at *7, *12 (C.D. Cal. Apr. 20, 2015) (granting pre-institution stay and explaining that "because Defendants have petitioned for review of all claims asserted in this action, the outcome of the IPR has the potential to be case-dispositive"). The USPTO's published statistics show that the PTAB has instituted review on approximately 66% of all IPR petitions challenging "Electrical/Computer" patents filed to date that have reached an institution decision. Simmons Decl., Ex. A at 7. Among the petitions instituted for review, 80% of Final Written Decisions published by the PTAB upon completion of trial resulted in the cancellation of some or all of the reviewed claims, and 62% resulted in the cancellation of *all* claims instituted for review. *Id.*, Ex. A at 11. And, based on statistics from Lex Machina, among all IPR petitions filed by Apple that reached the institution stage, 72% (311 out of 434 petitions) were granted for review. *Id.*, Ex. B at 1. Among the Apple proceedings that resulted in a Final Written Decision, 90% (174 out of 194 decisions) resulted in the cancellation or amendment of at least some claims, and 74% (143 out of 194 decisions) resulted in the cancellation of all challenged claims. *Id*. Similarly, among all

petitions filed by Apple's IPR counsel that reached the institution stage, 79% (88 out of 112 petitions) were granted for review. *Id.*, Ex. C at 1. These statistics support a "fair inference that the issues in this case are apt to be simplified and streamlined to some degree as a result of the [IPR] proceedings." *Ever Win Int'l Corp. v. Radioshack Corp.*, 902 F. Supp. 2d 503, 506 (D. Del. 2012); *see also Select Comfort Corp. v. Tempur Sealy Int'l*, No. 14-245 (JNE/JSM), 2014 U.S. Dist. LEXIS 183450, at *11 (D. Minn. Oct. 10, 2014) (granting stay where the USPTO's then current statistics indicated a "3-out-of-4 chance that the USPTO will grant the petition for an IPR").

Under any outcome of the IPRs, a stay pending completion of the IPRs will simplify the issues remaining for trial. Any claim cancelled by the PTAB during an IPR is rendered void *ab initio*. *See Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1346 (Fed. Cir. 2013). Thus, cancellation of all the asserted claims would completely resolve this case, and cancellation of some asserted claims would reduce the number of claims remaining for trial. And if Maxell amends its claims during the IPR proceedings, then there will be no liability for any infringement of the original, pre-amendment claims. 35 U.S.C. § 318(c). Even in the unlikely scenario that every single one of the asserted claims survive IPR without amendment, a stay is still likely to simplify the case. For example, Maxell's submissions to the PTAB can narrow the scope of any claims that survive review. *See, e.g.*, *Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1362 (Fed. Cir. 2017) ("[S]tatements made by a patent owner during an IPR proceeding, whether before or after an institution decision, can be considered for claim construction and relied upon to support a finding of prosecution disclaimer."). Thus, the file histories of all of the Patents-in-Suit—and the scope of their claims—will remain in flux until the IPRs are complete.

Accordingly, it makes sense to stay this case pending the IPR proceedings to prevent duplicative and potentially conflicting results.

In addition, if the PTAB issues a Final Written Decision confirming the patentability of certain claims, and that decision is upheld on appeal, Apple will be estopped from arguing here that such claims (if any) are invalid on any ground that Apple "raised or reasonably could have raised" during the IPRs. *See* 35 U.S.C. § 315(e)(2). And the Supreme Court's holding in *SAS* guarantees that the invalidity issues in this case will be narrowed if the PTAB institutes review on any petition. *SAS Inst. Inc. v. Iancu*, 138 S. Ct. 1348, 1360 (2018); *see also 454 Life Scis. Corp. v. Ion Torrent Sys., Inc.*, No. 15-cv-595-LPS, 2016 WL 6594083, at *3 (D. Del. Nov. 7, 2016) ("Even if the IPR proceedings result in all of the Asserted Claims remaining valid, the fact that Defendants will be estopped—from asserting in this litigation any ground for invalidity that they 'raised or reasonably could have raised' during the IPR proceedings[]—and the creation of additional prosecution history … will simplify the issues left to be litigated in this case."). The statutory estoppel, combined with the PTAB's guidance on claim scope, will narrow and streamline this litigation even in the unlikely event that all asserted claims survive review.

Discovery in this case has already been and is expected to continue to be complex and expensive. Due to the different technologies at issue, the parties have disclosed more than a dozen experts expected to submit expert reports. Staying this case until all the IPRs are complete would promote judicial economy and avoid potentially wasteful discovery efforts. *See, e.g.*, *NFC*, 2015 WL 1069111, *4 ("Many discovery problems relating to prior art can be alleviated by the PTO examination."); *Target Therapeutics, Inc. v. SciMed Life Sys., Inc.*, No. 94-20775, 1995 WL 20470, at *2 (N.D. Cal. Jan. 13, 1995) (reasoning that it "makes sense to ascertain the ultimate scope of the claims before trying to figure out whether defendants' products infringe the

patent-in-suit" in order to avoid conducting a "significantly wider scope of discovery than necessary" to examine "the validity of claims which are modified or eliminated altogether during reexamination").

In summary, a stay pending completion of the IPRs would resolve or significantly simplify issues under any outcome of the proceedings, whether the claims are affirmed or cancelled. Therefore, this factor weighs strongly in favor of a stay.

### D. The Court Should Grant The Requested Stay Now

Although courts in this District typically have not granted motions to stay before institution, this Court should do so here because of the particularly complex nature of this case, which is demonstrated in detail above. With ten Patents-in-Suit asserted against hundreds of accused products in this case, the IPR proceedings—regardless of outcome—will narrow or even eliminate the issues the jury must consider during trial. To conserve the resources of the Court and the parties, a pre-institution stay is particularly appropriate. And granting a pre-institution stay will not unduly prejudice Maxell because even if the PTAB denies the IPR petitions, "the stay will be relatively short and the action can continue with minimal delay." *Limestone v. Micron Tech.*, No. SA CV 15-0278-DOC(RNBx), 2016 WL 3598109, at *4 (C.D. Cal. Jan. 12, 2016) (internal citations omitted).

Applying factors similar to those used by this Court, courts in other districts routinely grant motions to stay before institution decisions. *See, e.g.*, *Vanair Mfg., Inc. v. VMAC Glob. Tech. Inc.*, No. 2:17-CV-236-JVB-JEM, 2018 WL 1566815, at *2-3 (N.D. Ind. Mar. 30, 2018); *Goodman v. Samsung Elecs. Am., Inc.*, No. 17-CV-5539 (JGK), 2017 WL 5636286, at *4 (S.D.N.Y. Nov. 22, 2017); *SCA Hygiene Prod. Aktiebolag v. Cascades Canada, ULC*, No. 17-CV-282-WMC, 2017 WL 4484495, at *3 (W.D. Wis. Oct. 6, 2017); *SCA Hygiene Prod. Aktiebolag ("AB") v. Tarzana Enterprises, LLC*, No. CV17-04395-AB(JPRx), 2017 WL

9

5952166, at *6 (C.D. Cal. Sept. 27, 2017); *St. Martin Investments, Inc. v. Bandit Indus., Inc.*, No. 1:17-CV-472, 2017 WL 6816506, at *3 (W.D. Mich. Aug. 30, 2017); *Acoustic Tech., Inc. v. Silver Springs Networks, Inc.*, No. 17-CV-02176-SK, 2017 WL 6001615, at *3 (N.D. Cal. July 25, 2017); *Elm 3DS Innovations LLC v. Micron Technology Inc. et al.*, No. 14-01431 (D. Del. July 11, 2016) (oral order granting stay prior to institution); *E-Watch, Inc. v. Lorex Canada, Inc.*, No. CIV.A. H-12-3314, 2013 WL 5425298, at *5 (S.D. Tex. Sept. 26, 2013).

Should the Court conclude this case does not warrant a pre-institution stay pending IPR, Apple requests the Court deny this Motion without prejudice and with leave to renew the Motion (with expedited briefing) upon the PTAB's issuance of institution decisions. When the PTAB has instituted review, "courts have been nearly uniform in granting motions to stay." *Cellular Commc'ns Equip., LLC v. Samsung Elecs. Co.*, No. 6:14-CV-759, 2015 WL 11143485, at *3 (E.D. Tex. Dec. 16, 2015). Given the anticipated timing of the PTAB's institution decisions, the last of which is expected by no later than September 2020, relative to the October 2020 trial date, expedited briefing on Apple's anticipated renewed motion to stay would be appropriate.[2]

## IV. CONCLUSION

For the foregoing reasons, Apple respectfully requests the Court stay this litigation pending the resolution of Apple's IPR petitions.

---

[2] Should the Court grant Apple's request for expedited briefing, Apple proposes that Maxell be given no more than five business days to respond to Apple's anticipated post-institution motion to stay pending IPR and that neither party be permitted to file a reply or sur-reply.

DATED: March 24, 2020        Respectfully submitted,

*/s/ Luann L. Simmons*
Luann L. Simmons (*Pro Hac Vice*)
lsimmons@omm.com
**O'MELVENY & MYERS LLP**
Two Embarcadero Center
28th Floor
San Francisco, CA 94111
Telephone: 415-984-8700
Facsimile: 415-984-8701

Xin-Yi Zhou (*Pro Hac Vice*)
vzhou@omm.com
Anthony G. Beasley (TX #24093882)
tbeasley@omm.com
**O'MELVENY & MYERS LLP**
400 S. Hope Street
Los Angeles, CA 90071
Telephone: 213-430-6000
Facsimile: 213-430-6407

Laura Bayne Gore (*Pro Hac Vice*)
lbayne@omm.com
**O'MELVENY & MYERS LLP**
Times Square Tower, 7 Times Square
New York, NY 10036
Telephone: 212-326-2000
Facsimile: 212-326-2061

Melissa R. Smith (TX #24001351)
melissa@gilliamsmithlaw.com
**GILLIAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

*Attorneys for Defendant Apple Inc.*

11

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on March 24, 2020.

*/s/ Melissa R. Smith*

## CERTIFICATE OF CONFERENCE

I hereby certify that counsel for Apple and Maxell complied with the meet and confer requirement specified in E.D. Tex. Local Rule CV-7(h) on March 23, 2020. No agreement was reached because Plaintiff refused to agree to a stay of this litigation. Discussions have conclusively ended in an impasse, leaving an open issue for the Court to resolve. This motion is opposed.

*/s/ Melissa R. Smith*