**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TEXARKANA DIVISION**

| | |
|---|---|
| MAXELL, LTD., *Plaintiff*, v. APPLE INC., *Defendant*. | Case No. 5:19-cv-00036-RWS **JURY TRIAL DEMANDED** |

**MAXELL, LTD.'S OPPOSITION TO APPLE INC.'S MOTION TO STAY PENDING DETERMINATION OF *INTER PARTES* REVIEW OF THE PATENTS-IN-SUIT**

# Table of Contents

**I. Legal Standard** .......... 2

**II. Analysis** .......... 2

**A. The Prejudice Factor Weighs Slightly Against Stay** .......... 2

**B. The Stage of the Proceedings Weighs Strongly Against Stay** .......... 5

**1. Discovery is Largely Complete and Trial Has Been Set** .......... 5

**2. Apple Unreasonably Delayed the Filing of its IPRs** .......... 8

**C. Speculative Simplification of the Case Weighs Strongly Against Stay** .......... 9

**D. Apple's Motion Should Be Denied With Prejudice** .......... 12

**III. Conclusion** .......... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Chrimar Sys., Inc. v. Adtran, Inc.*,
No. 6:15-cv-618-JRG-JDL, 2016 WL 4080802 (E.D. Tex. Aug. 1, 2016) ............................10

*Danco, Inc. v. Lavelle Indus., Inc.*,
No. 5:16-cv-48-CMC, 2017 WL 1732024 (E.D. Tex. Jan. 25, 2017) ................................3, 10

*Fall Line Patents, LLC v. Am. Airlines Grp.*,
No. 6:17-cv-00202-RWS, 2018 WL 4169251 (E.D. Tex. May 21, 2018) ...........................2, 9

*NFC Tech. LLC v. HTC Am., Inc.*,
No. 2:13-cv-1058, 2015 WL 1069111 (E.D. Tex. Mar. 11, 2015) ...................................3, 6, 7

*Peloton Interactive, Inc. v. Flywheel Sports, Inc.*,
No. 2:18-cv-00390-RWS-RSP, 2019 WL 3826051 (E.D. Tex. Aug. 14, 2019) ............4, 7, 11

*Realtime Data LLC v. Actian Corp.*,
No. 6:15-cv-463-RWS-JDL, 2016 WL 3277259 (E.D. Tex. June 14, 2016) ......................4, 10

*Saint Lawrence Commc'ns LLC v. ZTE Corp.*,
No. 2:15-cv-349-JRG, 2017 WL 3396399 (E.D. Tex. Jan. 17, 2017) ....................................11

*SAS Institute, Inc. v. Iancu*,
138 S. Ct. 1348 (2018) .........................................................................................................7

*Stragent, LLC v. BMW of N. Am., LLC*,
No. 6:16-cv-446-RWS-KNM, 2017 WL 2839260 (E.D. Tex. Apr. 20, 2017) ..........................5

*Tessera Advanced Techs., Inc. v. Samsung Elecs. Co.*,
No. 2:17-cv-00671-JRG, 2018 WL 3472700 (E.D. Tex. July 19, 2018) ..................................9

*TracBeam, L.L.C. v. T-Mobile US, Inc.*,
No. 6:14-cv-678, 2016 WL 9225574 (E.D. Tex. Mar. 29, 2016) .............................................4

*Trover Grp., v. Dedicated Micros USA*,
No. 2:13-cv-1047-WCB, 2015 WL 1069179 (E.D. Tex. Mar. 11, 2015) ...........................2, 10

*Uniloc 2017 LLC v. Samsung Elecs. Am.*, Inc., No. 2:19-cv-00259, 2020 WL
1433960 (E.D. Tex. Mar. 24, 2020) .......................................................................................5

**Statutes**

35 U.S.C. § 314(b)(1) ..........................................................................................................3

35 U.S.C. §315(b) ....................................................................................................................3

**Other Authorities**

37 C.F.R. § 42.107(b) ..............................................................................................................3

*Gen. Plastic Indus. Co., v. Canon Kabushiki Kaisha*,
IPR2016-01357, Paper 19 (PTAB Sept. 6, 2017)....................................................................11

*NHK Spring Co., v. Intri-Plex Techs., Inc.*,
IPR2018-00752, Paper 8 (PTAB Sept. 12, 2018)....................................................................11

*Sand Revolution II, LLC v. Continental Intermodal Group – Trucking LLC*,
IPR2019-01393, Paper 12 (PTAB Feb. 5, 2020)......................................................................11

Apple's goal throughout this litigation has been to avoid a fair trial by any means possible. Beyond Apple's attempts to subvert the case through abuse of the discovery process, this is at least the **fourth** time Apple has explicitly sought to avoid or delay trial, every time on undeserving grounds. Apple began with a superficial motion to dismiss. It continued with a motion to transfer based on a non-disclosure agreement that had nothing to do with this case (after an earlier-filed version of the motion that had even less). Apple's third attempt to avoid trial was to seek relief from the Federal Circuit by way of **two** petitions for mandamus.

Apple understands what a fair trial means for it—liability for willful infringement of valid patents, and severe damages for having knowingly, willfully infringed Maxell's patents since 2013. This latest attempt at avoiding trial is particularly egregious because Apple relies, in part, on the delays caused by its own discovery misconduct.

But a stay is not appropriate. Apple waited until the last minute to complete its IPR filings—waiting even until fact discovery was almost closed. And it will be another nearly six months before it is known whether all the IPRs will even be instituted. Whether the IPRs may have any impact on this case at all is completely speculative at this point. Still, in its never-ending search for a way to avoid a fair trial, Apple wants to bring everything to a screeching halt anyway. But Courts in this District do not typically grant stays based on speculation and Apple offers no basis for departing from the Court's established practice. Indeed, Apple essentially concedes a stay is inappropriate at this time, declaring its intent to file a renewed motion if the IPRs are instituted—an admission that this motion should be denied.

The parties, and the Court, have worked hard to get to the end of fact of discovery. Only a limited number of issues remain to be addressed. It is time now to move forward on the merits of the case, toward resolution—and towards a fair trial.

## I. Legal Standard

District courts typically consider three factors when determining whether to grant a stay pending *inter partes* review of patents-in-suit: (1) whether the stay will unduly prejudice the nonmoving party, (2) whether the proceedings before the court have reached an advanced stage, including whether discovery is complete and a trial date has been set, and (3) whether the stay will likely result in simplifying the case before the court." *Fall Line Patents, LLC v. Am. Airlines Grp.*, No. 6:17-cv-00202-RWS, 2018 WL 4169251, at *1 (E.D. Tex. May 21, 2018) (internal citations omitted).

## II. Analysis

As shown below, each factor weighs against Apple's requested stay.

### A. The Prejudice Factor Weighs Against Stay

Maxell is not a patent assertion entity and Apple's attempts to paint Maxell as such are improper. Maxell has also not admitted that it does not practice any of the Patents-in-Suit, but rather stated that it has not evaluated its own products to make such determination.[1] But most importantly, Maxell disagrees that it will "not be prejudiced at all by a stay." Mot. at 3. Monetary damages, particularly money damages delayed by years if Apple's request for stay is granted, are not sufficient to adequately compensate Maxell for the harm Apple has created for years now. Moreover, Maxell licenses its patent portfolio to competitors of Apple and has a financial interest in their sales, which are necessarily impacted by an unlicensed competitor. *See* D.I. 66 at 22.

Patentees like Maxell have an interest in timely vindication of their patent rights. Courts have recognized that this consideration is entitled weight. *See, e.g.*, *Trover Grp., v. Dedicated Micros USA*, No. 2:13-cv-1047-WCB, 2015 WL 1069179, at *2 (E.D. Tex. Mar. 11, 2015); *see*

[1] The cited argument from Maxell's Opposition to Apple's Motion to Transfer does not state otherwise. D.I. 66 at 22. Maxell was responding to an argument made by Apple, not admitting that Apple's argument was correct.

*also Danco, Inc. v. Lavelle Indus., Inc.*, No. 5:16-cv-48-CMC, 2017 WL 1732024, at *2 (E.D. Tex. Jan. 25, 2017). Indeed, this is the same position the Court took in the case Apple cited in its brief. Mot. at 3-4 (citing *NFC Tech. LLC v. HTC Am., Inc.*, No. 2:13-cv-1058, 2015 WL 1069111, at *2 (E.D. Tex. Mar. 11, 2015)). *NFC* did not find there was no prejudice because the parties were not competitors, as Apple represents. Mot. at 3-4. Rather, the Court held that a "delay in the vindication of patent rights … is present in every case in which a patentee resists a stay, and it is therefore not sufficient, standing alone, to defeat a stay motion." *NFC,* 2015 WL 1069111, at *2. Even in *NFC*, where the plaintiff did not dispute that monetary relief was sufficient compensation for its injury, the Court held that the factor "cuts slightly against a stay." *Id.* at *3.

Here the factor cuts strongly against a stay. Maxell **does** contest whether monetary damages alone are sufficient, as set forth above. Moreover, Maxell's prejudice is amplified because Apple waited until the second to last possible day to file the final of its IPR petitions.[2] Even the earliest of Apple's IPR petitions were filed in late December, with Apple waiting three additional months before moving for a stay in view of its pending IPRs.[3]

Despite its arguments to the contrary, Apple does not propose a short stay that will cause minimal delay, as a short stay would not be in line with Apple's attempts to avoid a fair trial. In actuality, any stay based on the filing of the IPRs would in turn create an extreme delay of the case due to a loss of the currently scheduled trial date. For example, a decision on institution for the last of the IPRs (for the asserted '493 Patent) is not expected until September 25, 2020, only a month before the scheduled trial date.[4] Mot. at 2; 35 U.S.C. § 314(b)(1); 37 C.F.R. § 42.107(b). Assuming

---

[2] Apple was served with the Complaint in this case on March 18, 2019. D.I. 19. Apple filed its IPR petition for the asserted '493 Patent on March 17, 2020—one day before the statutory year deadline. Mot. at 2; 35 U.S.C. §315(b).

[3] Apple clearly knew as of December 20, 2019 it would file IPRs on all of the patents-in-suit, yet trickled out its filings over the next three months. *See* Ex. A, IPR2020-00204, Paper 1, at 46 (PTAB December 20, 2019).

[4] Because Apple requests a stay pending resolution of all filed IPRs, it is appropriate to use Apple's last-filed IPR to provide an expected timeline to resolution.

institution, the PTAB would not provide its final written decision until late September 2021—almost a full year after the trial would have concluded. Indeed, even the earliest of final written decisions, if the earliest-filed IPR is instituted, would not issue until eight months after the currently scheduled trial. And that is in the absence of any appeal.[5] In 2019, the median time to disposition for Federal Circuit appeals from the USPTO was 15.0 months. Ex. B (Median Time to Disposition in Cases Terminated After Hearing or Submission).[6] If any appeal were taken for any IPR decision, and this case is stayed pending final resolution of the IPRs, this case would not likely resume until December 2022. Apple will have successfully avoided a fair trial for two years beyond the currently scheduled trial date.

Where a party waited until the final days to file IPRs and/or the stay would significantly delay resolution of the case, the Court has found the factor to weigh against a stay. *See, e.g.*, *TracBeam, L.L.C. v. T-Mobile US, Inc.*, No. 6:14-cv-678, 2016 WL 9225574, at *1 (E.D. Tex. Mar. 29, 2016); *Peloton Interactive, Inc. v. Flywheel Sports, Inc.*, No. 2:18-cv-00390-RWS-RSP, 2019 WL 3826051, at *4 (E.D. Tex. Aug. 14, 2019); *Realtime Data LLC v. Actian Corp.*, No. 6:15-cv-463-RWS-JDL, 2016 WL 3277259, at *2 (E.D. Tex. June 14, 2016).

The timing of when Maxell brought the instant lawsuit against Apple does not demonstrate that Maxell would not be prejudiced by a stay. Rather it shows the opposite, that Maxell would be prejudiced. Maxell began licensing negotiations with Apple regarding its patents (including several Asserted Patents) in 2013. Those discussions continued in some form or another until it was completely clear that Apple would continue to infringe unless ordered to pay. At that point,

---

[5] Apple has shown it cannot accept this Court's orders, having already sought mandamus relief from the Federal Circuit. There is no doubt Apple would seek relief from the Federal Circuit for any order it does not like from the PTAB as well.

[6] Available at http://www.cafc.uscourts.gov/sites/default/files/the-court/statistics/06_Med_Disp_Time_MERITS_table_Final.pdf.

Maxell filed this lawsuit. *See, e.g.*, D.I. 1 (Complaint) ¶ 5. During that time, Maxell was also taking substantive steps to enforce its patent rights against others, including through the filing of over 10 lawsuits regarding the same asserted patents, patents from the same families, and/or patents from Maxell's smartphone portfolio. Maxell even took one case to trial. It can hardly be inferred that Maxell has just sat idly on its patent rights.

**B. The Stage of the Proceedings Weighs Strongly Against Stay**

This factor includes two sub-factors: "(1) whether discovery is complete and whether a trial date has been set; and (2) whether the movant has unreasonably delayed filing its IPR petition and motion to stay." *Stragent, LLC v. BMW of N. Am., LLC,* No. 6:16-cv-446-RWS-KNM, 2017 WL 2839260, at *2 (E.D. Tex. Apr. 20, 2017) (*citing SSL Servs., LLC v. Cisco Sys., Inc*., No. 2:15-cv-433-JRG-RSP, 2016 WL 3523871, at *1 (E.D. Tex. June 28, 2016)).

**1. Discovery is Largely Complete and Trial Has Been Set**

The instant case is not in its infancy. Far from it, fact discovery closed one week after Apple filed its motion, with the exception of depositions delayed just three weeks due to COVID-19. The Court and the parties have invested significant time and effort into this case. The Court has issued a *Markman* order. Moreover, jury selection and trial are scheduled to begin on October 26, 2020. Courts have found this factor to weigh against stay even when the motion for stay is made much earlier in the case. *See, e.g., Uniloc 2017 LLC v. Samsung Elecs. Am.,* Inc., No. 2:19-cv-00259, 2020 WL 1433960, at *5 (E.D. Tex. Mar. 24, 2020) (holding that the factor leaned slightly against a stay even when months in fact discovery remained).

Nevertheless, Apple argues that, though the fact discovery deadline has passed, depositions (postposed only due to COVID-19 concerns) remain to be taken and that there are "a number of pending discovery requests and disputes." Mot. at 4. Such argument offers, perhaps, additional insight into why Apple has been delaying discovery throughout the pendency of this case. By

pushing off productions and responses to Maxell's requests until the end of the fact discovery period, and consequently drawing out the pendency of Maxell's motions to compel past the end of the period, Apple has been able to create for itself this argument in favor of a stay. Apple also delayed when its witnesses would be available for deposition, scheduling the vast majority of them for just the last three weeks of discovery despite having been served a 30(b)(6) notice for deposition last October. Apple should not be permitted to manipulate the schedule in this way.[7] The fact discovery period is over. That a relatively discrete set of discovery issues remain to be addressed does not negate that the case is at an advanced stage or somehow weigh in favor of a stay.

Apple's primary argument, however, appears to be that, because trial is seven months away, "the bulk of the expenses that the parties would incur . . . are still in the future," and thus that this factor favors a stay. Mot. at 4 (citing *NFC*, 2015 WL 1069111, at *3). There are substantial flaws in this argument, and particularly in Apple's characterization of the facts. The first problem is that Apple asserts this factor "strongly favors a stay" when the Court in *NFC* found that the state of the litigation (there, a month remaining in fact discovery and pre-*Markman* hearing) was "neutral, or, at most, cuts slightly <u>**against**</u> the issuance of a stay." *NFC*, 2015 WL 1069111, at *4 (emphasis added). How Apple relies on a decision finding this factor to be neutral/slightly cutting <u>**against**</u> stay and applies it to the instant case, which is further along, to say the factor "strongly favors granting a stay" is a mystery.

Moreover, the decision in *NFC* was rendered after the IPRs related to that case were

[7] Apple also recently flipped positions on the feasibility of remote depositions in this case. Although Apple proposed to the Court that the remaining depositions should be conducted remotely using video-conference technology, Apple now asserts that remote depositions are not an adequate option for the technical witnesses and that further extension of the date for depositions is necessary. This is no doubt in part to further support its argument that a stay of the case is appropriate—furthering Apple's goal of avoiding a fair trial.

**instituted**. There was thus a belief in that case that some simplification would result. Here, no such expectation exists. This is particularly true given the decision in *NFC* was rendered in 2015. In 2018, *SAS Institute, Inc. v. Iancu*, 138 S. Ct. 1348 (2018) (hereinafter "SAS") held that the PTAB was precluded from instituting IPRs for only a portion of the patent claims. Pre-*SAS* institution decisions were generally considered to be a fairly strong indicator that the IPRs would simplify issues. *See Peloton*, 2019 WL 3826051, at *2 ("[A]ny institution decision occurring after SAS provides a **weaker** inference that the PTAB will determine that all challenged claims are unpatentable." (emphasis added)).

Institution decisions have not been issued. They are not even expected on all the IPRs until September 2020. At that point, the parties will already have exchanged pretrial disclosures and attended the hearing on dispositive motions. In other words, by the time there will be any indication from the PTAB on whether some simplification may be expected, the parties will have already made significant expenditures on pre-trial preparation. Indeed, the Court in *NFC* directly acknowledged this dichotomy:

> While the PTAB's decision to institute inter partes review ordinarily means that there is a substantial likelihood of simplification of the district court litigation, that likelihood is **far more speculative before the PTAB decides whether to institute inter partes review**. For that reason, the grant of inter partes review has been treated as a highly significant factor in the courts' determination of whether to stay cases pending PTAB review. Thus, it is important to the Court's decision that in this case the PTAB has acted on two of the defendants' three petitions for inter partes review and in doing so has instituted inter partes review proceedings on most of the claim at issue in this case.

*NFC*, 2015 WL 1069111 at *4 (emphasis added).

Moreover, the parties have in fact expended substantial resources in the work done on the case thus far. The suggestion that the parties have yet to incur the bulk of their expenses ignores all the work to date. Maxell, at least, has incurred significant costs in (1) briefing and arguing the many motions Apple has filed; (2) preparing and providing witnesses for deposition, including

many who traveled from Japan for their depositions; (3) working through Apple's piece-meal production of documents and source code, including several rounds of review and re-review of code; (4) seeking the Court's help in enforcing the discovery rules when Apple ignored them, which included not only briefing and argument, but massive efforts related to identifying (over and over again) the general and specific discovery deficiencies in letters and during numerous meet and confer meetings and telephonic conferences; (5) briefing and arguing the claim construction positions, including also the costs associated with the expert declarations and depositions; and (6) working with experts on the expert reports, which includes the substantial costs related to the experts' fees and their travel to review source code and other materials. Perhaps Apple has not done as much as Maxell on this case, or perhaps Apple has found some way to do this without incurring such considerable expenses, but Maxell takes great issue with Apple's statement that the parties have yet to incur the bulk of their expenses.

Given the foregoing, the fact that pre-trial preparations still remain does not in any way counsel in favor of a stay.

**2. Apple Unreasonably Delayed the Filing of its IPRs**

While Apple filed its IPRs within the statutory time limits, filing a petition on the second to last possible day cannot constitute "diligent" behavior or negate a concern for unreasonable delay. Indeed, if merely filing an IPR within the statutory deadline were enough to avoid a claim of unreasonable delay, this sub-factor would be rendered completely superfluous.

Knowing that it is extremely weak on this factor, Apple attempts to gain ground by arguing that it moved quickly after Maxell made its preliminary election of asserted claims. Apple, however, could have filed its IPRs long before this preliminary election. In June 2019, Maxell identified 90 asserted claims, averaging just 9 per patent. Apple prepared its invalidity contentions in this case in August 2019 based on Maxell's then-asserted claims. Apple could just as easily

prepared IPRs directed to each claim as well. Instead, Apple waited. In fact, Apple waited up to nine months after receiving Maxell's infringement contentions to file its IPRs. And when it finally did file, Apple did not narrow its IPRs challenge to Maxell's preliminary elected claims, but rather filed on 86 of the 90 originally asserted claims. Miller Declaration ¶ 4. This alone shows the flaw in Apple's argument.

Apple's delay has been deemed more than long enough to weigh against a stay. *See, e.g.*, *Tessera Advanced Techs., Inc. v. Samsung Elecs. Co.*, No. 2:17-cv-00671-JRG, 2018 WL 3472700, at *3 (E.D. Tex. July 19, 2018) ("Samsung waited nine months from the initiation of these proceedings and five months after service of infringement contentions to move for a stay. Samsung's actions here, in conjunction with Samsung's Motion to Stay Proceedings Pending Arbitration … appear to be yet another attempt to draw out these proceedings. Accordingly… the Court finds that this factor weighs strongly against a stay."). Moreover, Apple offers no explanation for why it filed six of its ten IPRs in December 2019 but delayed the filing of its final IPR (on the '493 Patent) by an additional three months, during which time discovery progressed almost to completion. Again, Apple's actions reveal its true motivation—to avoid a fair trial.

### C. Speculative Simplification of the Case Weighs Strongly Against Stay

Apple filed its IPRs on the Asserted Patents between December 2019 and March 2020 (between ten and twelve months after Maxell filed its Complaint). The PTAB has yet to render any institution decisions. Institution decisions for even the first-filed IPRs are not expected until late June 2020 at the earliest. "[T]his Court traditionally denies motions to stay when the PTAB has yet to institute post-grant proceedings." *Fall Line Patents*, 2018 WL 4169251, at *1 (E.D. Tex. May 21, 2018) ("This Court's survey of cases from the Eastern District of Texas shows that when the PTAB has not yet acted on a petition for *inter partes* review, the courts have uniformly denied motions for a stay." (quoting *Trover Grp.*, 2015 WL 1069179, at *6)). Specifically, courts have

recognized that, before the PTAB has granted any petitions, any assertion that the PTAB will invalidate claims—and therefore simplify issues—is purely speculative. *See, e.g.*, *Realtime Data*, 2016 WL 3277259, at *2; *Danco*, 2017 WL 1732024, at *2; *Chrimar Sys., Inc. v. Adtran, Inc.*, No. 6:15-cv-618-JRG-JDL, 2016 WL 4080802, at *3 (E.D. Tex. Aug. 1, 2016).

Apple's attempt to minimize the speculative nature of its request by pointing to cases from different districts and general statistics is unavailing. That other districts, whose cases move slower, may be willing to grant stays pre-institution does not demand that the Eastern District of Texas depart from its established practice. Moreover, statistics that 2/3 of petitions in a particular field may be granted, or even that 72% of Apple's petitions may be granted, do little to combat the speculative nature here. *See, e.g., Trover Grp.*, 2015 WL 1069179, at *4 (stating it would be speculative for the Court to extrapolate from statistics and conclude institution is likely because "the overall statistics for the number of petitions that are reviewed and the number of claims that are invalidated are not especially enlightening as to the likely disposition of any particular patents or claims, since the likelihood of invalidation depends entirely on the particulars of the patents and claims in dispute."). Even applying Apple's numbers, it is statistically probable that three patents will not be subject to an IPR and will have no resultant simplification. Moreover, in practice, IPRs against Maxell's patents have been much less successful than the average. Looking to past IPRs filed against Maxell patents, of the 15 that made it to the institution stage (meaning received some institution decision from the PTAB), nine (60%) were denied institution—including four of the same patents on which Apple filed IPRs. Ex. C (Lex Machina Overview of PTAB Trials filed against Maxell patents). Utilizing that statistic, more than half of the Asserted Patents would be unlikely to have any simplification. Simply put, there is no "fair inference" here that issues will be simplified at all, much less enough to warrant a stay of this case.

Moreover, the advanced stage of this litigation as compared to Apple's IPRs actually makes it less likely that the IPRs will be instituted. Under similar facts—where there is a co-pending District Court action that (1) involves the same, or substantially the same prior art, and (2) will be complete well before a Final Written Decision is expected to issue in the IPR—the PTAB has denied institution. *See, e.g.*, *NHK Spring Co., v. Intri-Plex Techs., Inc.*, IPR2018-00752, Paper 8 (PTAB Sept. 12, 2018); *Sand Revolution II, LLC v. Cont'l Intermodal Group – Trucking LLC*, IPR2019-01393, Paper 12 (PTAB Feb. 5, 2020); *see also Gen. Plastic Indus. Co., v. Canon Kabushiki Kaisha*, IPR2016-01357, Paper 19 at 16-17 (PTAB Sept. 6, 2017) (noting that one of the purposes of IPRs is to be an "effective and efficient alternative" to litigation). Given the PTAB's demonstrated willingness to deny institutions in cases such as this one, there is no basis on which to assume the IPRs will be instituted. Without a basis for such assumption, there is also no basis for Apple's argument of likely simplification.

Furthermore, Apple's IPR petitions address neither the 35 U.S.C. § 112 issues,[8] nor the invalidity arguments under § 101 that Apple has raised in this case. Courts in this District have held that where a defendant's invalidity theories exceed the scope of a pending IPR (like here), such IPRs will have a "negligible impact on potentially streamlining the case." *Saint Lawrence Commc'ns LLC v. ZTE Corp.*, No. 2:15-cv-349-JRG, 2017 WL 3396399, at *2 (E.D. Tex. Jan. 17, 2017); *see also, e.g.*, *Peloton*, 2019 WL 3826051, at *3.

Apple also does not address the fact that a stay, particularly one that goes until December 2022, would actually introduce new issues into the case. Between now and December 2022, it is certain that Apple will release new products (*e.g.*, new iPhones, iPads, Apple Watches, and Macbooks), as well as new operating systems for existing accused products. Given the likelihood

[8] Given Apple's recent motion seeking to compel Maxell provide support for enablement and written description for all asserted claim elements, Apple clearly still intends to raise these issues in this case. D.I. 224.

that such new systems and products will continue to infringe the Asserted Patents in similar ways as the current accused systems and products, they will need to be added to the case once the stay is lifted.[9] The addition of new operating systems and products would require that fact discovery be reopened, that Apple collect and produce new documents and source code relating to the new systems, products and implicated components, and that Apple update all discovery responses to address such products. And this does not even address the possibility that Apple introduces new infringing features into its devices. Given that Apple was still providing this material and information in March 2020 for products and operating systems it introduced in September 2019, it is clear that this is no small task. Indeed, Apple itself admits that "[d]iscovery in this case has already been and is expected to continue to be complex and expensive." Mot. at 8. Thus, while there is a slim, speculative chance that a stay would streamline **some** invalidity issues, there is a greater likelihood—almost a certainty—that a stay will multiply the proceedings as they relate to discovery and infringement.

**D. Apple's Motion Should Be Denied With Prejudice**

Recognizing that Courts in this District do not typically grant a stay before institution of an IPR, Apple requests the Court deny the Motion without prejudice with leave to renew upon the PTAB's issuance of institution decisions. Maxell opposes this request. For all its discussion of increasing efficiency for the parties and the Court, Apple's insistence on re-litigating issues accomplishes just the opposite. The PTAB is not likely to issue institution decisions on all pending petitions until September 25, 2020. By then, the parties will have exchanged pretrial disclosures, exchanged rebuttal designations and objections to deposition testimony, exchanged objections to

[9] To the extent Apple contends that such new products should not be added to the case upon its reopening, such position would exacerbate the prejudice on Maxell. Maxell would have to proceed in its case on older products only and be forced to re-litigate the same issues in a newly filed litigation.

rebuttal deposition testimony, held the hearing on dispositive and *Daubert* motions, and be just days away from submission of the Joint Final Pretrial Order, Joint Proposed Jury Instructions, Form of the Verdict, Motions *in Limine*, and pretrial objections. D.I. 232. In other words, the parties and Court will be deep in the throes of pre-trial preparation. To then ask the Court and parties to set that work aside (potentially to throw it away) and reallocate their resources to again address this issue is the height of inefficiency. The Court should close the book on Apple's efforts to avoid a fair trial once and for all.

## III. Conclusion

As shown above, each of the three factors courts consider when deciding whether to stay litigation pending IPR proceedings weighs against staying this case. This is particularly so because no decisions on institution regarding the IPRs are expected before June 23, 2020, fact discovery in the case is already closed, and trial is set for October 2020.

Dated: April 7, 2020

By: */s/ Jamie B. Beaber*

Geoff Culbertson
Kelly Tidwell
Patton, Tidwell & Culbertson, LLP
2800 Texas Boulevard (75503)
Post Office Box 5398
Texarkana, TX 75505-5398
Telephone: (903) 792-7080
Facsimile: (903) 792-8233
gpc@texarkanalaw.com
kbt@texarkanalaw.com

Jamie B. Beaber
Alan M. Grimaldi
Kfir B. Levy
James A. Fussell, III
Baldine B. Paul
Tiffany A. Miller
Saqib J. Siddiqui
Bryan C. Nese
William J. Barrow

______________________________
Alison T. Gelsleichter
Clark S. Bakewell
MAYER BROWN LLP
1999 K Street, NW
Washington, DC 20006
Telephone: (202) 263-3000
Facsimile: (202) 263-3300
jbeaber@mayerbrown.com
agrimaldi@mayerbrown.com
klevy@mayerbrown.com
jfussell@mayerbrown.com
bpaul@mayerbrown.com
tmiller@mayerbrown.com
ssiddiqui@mayerbrown.com
bnese@mayerbrown.com
wbarrow@mayerbrown.com
agelsleichter@mayerbrown.com
cbakewell@mayerbrown.com

Robert G. Pluta
Amanda Streff Bonner
Mayer Brown LLP
71 S. Wacker Drive
Chicago, IL 60606
(312) 782-0600
rpluta@mayerbrown.com
asbonner@mayerbrown.com

*Counsel for Plaintiff Maxell, Ltd.*

**CERTIFICATE OF SERVICE**

The undersigned certifies that all counsel of record who are deemed to have consented to electronic service are being served this 7th day of April 2020, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

*/s/ Jamie B. Beaber*
Jamie B. Beaber