IN THE UNITED STATES DISTRICT COURT
OF THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| **MAXELL, LTD.** | § | |
| | § | |
| **V.** | § | **No.  5:19CV36-RWS** |
| | § | **SEALED** |
| **APPLE INC.** | § | |

## ORDER ON MOTION TO COMPEL

The following motion has been referred to the undersigned United States Magistrate Judge

for decision in accordance with 28 U.S.C. § 636:

**Maxell, Ltd.'s Opposed Motion to Compel (Docket Entry # 197).**

The Court, having carefully considered the relevant briefing, is of the opinion the motion should be

**GRANTED IN PART and DENIED IN PART**.  Apple's request for costs and fees is denied.

### I. BACKGROUND

Plaintiff Maxell, Ltd. ("Maxell") filed its complaint for patent infringement against Apple

Inc. ("Apple") on March 15, 2019. The First Amended Complaint for Patent Infringement ("FAC")

alleges Apple infringes ten patents related to mobile device technology under theories of direct

infringement, induced infringement, willful infringement, and contributory infringement. Docket

Entry # 111. Maxell alleges that various aspects of Apple's iPhone, iPad and Mac products infringe

the asserted patents, including: cameras; navigation capabilities; authentication systems;

telecommunications techniques; video streaming; "do not disturb" functionality; power management

technologies; and smartwatch integration. *See* Docket Entry # 171 at p. 1.

The FAC alleges that since at least June 2013, Apple has been aware of Maxell's patents and

has had "numerous meetings and interactions regarding its infringement of these patents."  Docket

Entry # 111, ¶ 5. According to the FAC, these meetings included Apple's representatives being provided with detailed information regarding Maxell's patents, the developed technology, and "Apple's ongoing use of the patented technology." *Id.* The FAC alleges Maxell believed the parties "could reach a mutually beneficial solution and to that end considered a potential business transaction and continued to answer multiple inquiries from Apple over the course of several years, including communicating with Apple as recently as late 2018." *Id.* Maxell alleges Apple elected not to enter into an agreement and did not license Maxell's patents; rather, Apples continued, and continues today, to make, use, sell, and offer for sale Maxell's patented technology without license. *Id*. For each patent, the FAC further states "Apple will thus have known and intended (since receiving such notice) that its continued actions would actively induce and contribute to actual infringement" of certain claims of each patent. *See, e.g., id.*, ¶¶ 30, 44, 59, 72, 89, 102, 115, 132, 145, 160.

On March 16, 2020, District Judge Schroeder entered an order extending the deadline to complete all fact depositions to April 21, 2020 and the deadline for initial expert reports to April 28, 2020. Docket Entry # 232. The dispositive motions deadline is currently June 30, 2020, and jury selection and trial are scheduled October 26, 2020. *Id.*

## II. MAXELL'S MOTION TO COMPEL

Maxell filed its opposed motion to compel on February 14, 2020, requesting the Court order Apple to 1) produce all relevant technical documents related to the accused features and functionalities of the accused products, 2) produce all non-source code documents made available on the source code computers, 3) provide a fulsome response to Maxell Interrogatory No. 9, 4) produce the eleven additional license agreements requested by Maxell, 5) produce all relevant buyer

surveys, owner surveys, and owner studies, and 6) produce the prior litigation documents requested by Maxell.

Pursuant to the parties' agreement, Apple filed an expedited "preliminary response" on February 20, 2020. Docket Entry # 199. District Judge Schroeder referred the motion to the undersigned on February 26, 2020.  Two days later, Apple filed its response to Maxell's motion to compel, combining its preliminary response and the "present supplement in a single document." Docket Entry # 205 at n. 1.

Maxell filed its opposed motion for sanctions on March 5, 2020, wherein it requests the Court preclude Apple from using the discovery it failed to timely produce, including discovery produced after January 31, 2020; deem certain accused products/components and source code to be representative of all versions of that product as detailed in the chart contained in the motion; and assess monetary sanctions. Docket Entry # 210 at p. 1. According to Maxell, in the final stages of discovery, it is "having to work through documents and source code that *continue* to be produced instead of preparing for depositions and expert reports."[1] *Id.* (emphasis in original).

Noting it is not clear from the motion for sanctions which documents addressed in Maxell's motion to compel are still at issue, in its March 19, 2020 Order Denying Hearing on Motion to Compel and Reserving Ruling on Motion for Sanctions to Later Date, the Court ordered Maxell to file a reply to Apple's response to Maxell's motion to compel, clearly setting forth the documents still at issue. Docket Entry # 236 at pp. 2, 5. On March 26, 2020, Maxell filed its reply as ordered.

---

[1] Both parties have informed the Court they believe a hearing would be helpful to the resolution of the motion for sanctions. Maxell requests the Court hold a telephonic hearing. Given the seriousness of the relief requested in the motion for sanctions, Apple requests that motion be heard by the Court in person. The Court has previously indicated its agreement with Apple that, to the extent warranted after a review of all of the relevant briefing, an in-person hearing could be scheduled later in the case without impacting the overall case schedule and without any prejudice to Maxell. *See* Docket Entry # 236 at p. 5. As this time, the Court intends to schedule an in-person hearing when safe to do so.

Docket Entry # 244. Apple filed a surreply on March 31, 2020.  Docket Entry # 258.

According to Maxell's April 6, 2020 "Report Regarding Maxell Ltd.'s Motion to Compel" ("supplemental report"), which the Court received as it was preparing to enter this order, Maxell and Apple held an additional meet and confer on April 2 to discuss the status of each issue raised in Maxell's motion and were able to resolve some of the issues raised therein.  Docket Entry # 266. Apple filed its "Responsive Report" on April 7, 2020, addressing the status of certain issues which Apple asserts Maxell "mischaracterized" in its report. Docket Entry # 268.  On April 8, Maxell filed a supplement to its supplemental report. Docket Entry # 270.

### III. APPLICABLE LEGAL STANDARDS GOVERNING DISCOVERY

"The goal of discovery is to maximize relevant, nonprivileged matter while avoiding excess, non-relevant or privileged information." *Drake v. Capital One, National Association*, No. 4:16-CV-00497, 2017 WL 1319560, at *1 (E.D. Tex. April 10, 2017). Federal Rule of Civil Procedure 26(b) provides that the permissible scope of discovery includes "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." *Matter of AET, Inc., Ltd.*, No. 1:10-CV-51, 2018 WL 4201264, at *2 (E.D. Tex. June 8, 2018) (quoting FED. R. CIV. P. 26(b)(1)).

The Court's Discovery Order for Patent Cases requires the parties, without waiting discovery requests, "produce or permit the inspection of all documents, electronically stored information, and

4

tangible things in the possession, custody, or control of the party that are relevant to the pleaded claims or defenses involved in this action, except to the extent these disclosures are affected by the time limits set forth in the Patent Rules for the Eastern District of Texas."[2] Docket Entry # 42 at pp. 2-3. Here, the Initial and Additional Disclosures deadline was July 10, 2019. Docket Entry # 46 at p. 8.

In the Eastern District of Texas, Local Rule CV-26 also provides guidance in considering whether information is relevant for discovery. The rule provides information is relevant if:

(1) it includes information that would not support the disclosing parties' contentions;

(2) it includes those persons who, if their potential testimony were known, might reasonably be expected to be deposed or called as a witness by any of the parties;

(3) it is information that is likely to have an influence on or affect the outcome of a claim or defense;

(4) it is information that deserves to be considered in the preparation, evaluation or trial of a claim or defense; and

(5) it is information that reasonable and competent counsel would consider reasonably necessary to prepare, evaluate, or try a claim or defense.

*Matter of AET*, 2018 WL 4201264, at *2 (quoting E.D. Tex. Civ. R. CV-26(d)). Relevance "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Matter of AET*, 2018 WL 4201264, at *2 (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947))). Nonetheless, "Rule 26 vests the trial judge

---

[2] After disclosure is made pursuant to the Discovery Order for Patent Cases, each party is under a duty to supplement or correct its disclosures immediately if the party obtains information on the basis of which it knows that the information disclosed was either incomplete or incorrect when made, or is no longer complete or true. Docket Entry # 42 at p. 6.

with broad discretion to tailor discovery narrowly." *Matter of AET*, 2018 WL 4201264, at *2 (quoting *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998)).

In addition to being relevant, discovery must be proportional. Federal Rule of Civil Procedure 26(b) has been amended, effective December 1, 2015. *Samsung Elecs. Am., Inc. v. Yang Kun Chung*, 321 F.R.D. 250, 284 (N.D. Tex. June 26, 2017) ("*Samsung II*"). "Under Rule 26(b)(1), [as amended,] discoverable matter must be both relevant and proportional to the needs of the case   which are related but distinct requirements."[3] *Id.* at 279. The burden is on the party resisting discovery to establish the discovery is not proportional. *KAIST IP US LLC v. Samsung Electronics Co. Ltd.*, No. 2:16-CV-01314-JRG-RSP, 2017 WL 9937760, at *1 (E.D. Tex. Dec. 21, 2017) (citing *Samsung Elecs. Am., Inc. v. Yang Kun Chung*, No. 3:15-CV-4108-D, 2017 WL 896897, at *11 (N.D. Tex. Mar. 7, 2017) ("*Samsung I*")); *see also Samsung II*, 321 F.R.D. at 284 (explaining the amendments to Rule 26 do not alter the burdens imposed on the party resisting discovery).

"[J]ust as was the case before the December 1, 2015 amendments, under Rules 26(b)(1) and 26(b)(2)(C)(iii), a court can   and must   limit proposed discovery that it determines is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit   and the court must do so even in the absence of a motion." *Samsung II*, 321 F.R.D. at 284 (citing *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d

---

[3] The 2015 amendments to Rule 26 deleted "from the definition of relevance information that appears 'reasonably calculated to lead to the discovery of admissible evidence' because '[t]he phrase has been used by some, incorrectly, to define the scope of discovery' and 'has continued to create problems' given its ability to 'swallow any other limitation on the scope of discovery.'" *Robroy Indus. Tex., LLC v. Thomas & Betts Corp.*, No. 2:15-CV-512-WCB, 2017 WL 319064, at *4 (E.D. Tex. Jan. 23, 2017) (quoting Fed. R. Civ. P. 26, 2015 comm. note).

258, 264 (5th Cir. 2011)). Thus, as amended, Rule 26(b)(2)(C) provides that, "[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." *Samsung II*, 321 F.R.D. at 284 (quoting FED. R. CIV. P. 26(b)(2)(C)).

Rule 26(c) further provides that the court "may, for good cause," protect a party from "undue burden or expense" by issuing an order forbidding the disclosure or discovery of certain matters, specifying terms for the disclosure or discovery, or limiting the scope of disclosure or discovery. *Matter of AET*, 2018 WL 4201264, at *2 (quoting FED. R. CIV. P. 26(c)(1)(D)).

Rule 37 of the Federal Rules of Civil Procedure allows a discovering party, on notice to other parties and all affected persons, to "move for an order compelling disclosure or discovery." *Star Creek Ctr., LLC v. Seneca Ins. Co., Inc.*, No. 4:17-CV-00607, 2018 WL 1934084, at *1 (E.D. Tex. Apr. 23, 2018) (quoting FED. R. CIV. P. 37(a)(1)). The moving party bears the burden of showing that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence. *Star Creek*, 2018 WL 1934084, at *1 (citing *Export Worldwide, Ltd. v. Knight*, 241 F.R.D. 259, 263 (W.D. Tex. 2006)). Once the moving party establishes the materials requested are within the scope of permissible discovery, the burden shifts to the party resisting discovery to show why the discovery is irrelevant, overly broad, unduly burdensome or oppressive, and thus should not be permitted. *Id.*

"The party seeking discovery, to prevail on a motion to compel, may well need to make its own showing of many or all of the proportionality factors, including the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, and the importance of the discovery in resolving the issues, in opposition to the resisting party's showing." *Samsung II*, 321 F.R.D. at 284. But Rule 26(b)(1) "'does not place on the party seeking discovery the burden of addressing all proportionality considerations.'" *Samsung I*, 325 F.R.D. at 595 (quoting *Carr v. State Farm Mutual Auto. Ins. Co.*, 312 F.R.D. 459, 467 (N.D. Tex. 2015) (quoting FED. R. CIV. P. 26, 2015 comm. note)).

## IV. DISCUSSION

### A.      Maxell's motion to compel

### 1.      Parties' assertions

In its prior motion to compel filed August 15, 2019, Maxell expressed concerns about Apple's delayed document production, noting Apple could wait until the "final days of discovery to provide relevant, responsive information." Docket Entry # 56 at p. 2. Maxell asked the Court to compel Apple to "substantially complete its document production." *Maxell Ltd. v. Apple Inc.*, No. 5:19-CV-00036-RWS, 2019 WL 7905454, at *1 (E.D. Tex. Nov. 13, 2019). Apple represented to the Court it was complying with the Court's Discovery Order for Patent Cases, having already produced documents in at least five batches. *Id.* at *2.

On November 13, 2019, the Court issued an order granting in part and denying in part Maxell's motion to compel document production and responses to Interrogatory Nos. 2-9. *See* Docket Entry # 126. The Court denied Maxell's motion to compel document production, stating the order did not reduce or eliminate Apple's obligation to "produce or permit the inspection of all

documents, electronically stored information, and tangible things in [its] possession, custody, or control that are relevant to the pleaded claims or defenses involved in this action." *Maxell Ltd.*, 2019 WL 7905454, at *2. Noting Maxell's broad allegations necessarily contemplate extensive discovery and document production, the Court noted Apple's inability to complete document production by the "Additional Disclosures" deadline was understandable. *Id.* Further noting the parties agreed document production was still ongoing, the Court stated it could not determine at that time whether Apple had met its discovery obligations to date. *Id.* The Court stated it expected Apple to substantially complete all discovery by November 27, 2019, as agreed by Apple. *Id.*

In its current motion to compel filed February 14, 2020, Maxell asserts its prior concerns regarding Apple's delayed document production "have sadly come true." Docket Entry # 197 at p. 1. Maxell asserts Apple initially produced "the bare minimum" regarding the operation of the accused functionalities, "relying primarily on a limited source code production." *Id.* According to Maxell, a review of Apple's productions, source code, and publicly available information indicates there are relevant technical documents that had not been produced. *Id*. at p. 2. Maxell further asserts Apple improperly produced over one thousand non-source code documents on source code computers, improperly restricting Maxell's ability to access, review, and use such materials. *Id*. at p. 4. Maxell also raises various issues with Apple's production of non-technical documents (forecast documents, licenses, marketing surveys, and prior litigation documents). *Id*. at pp. 6-7. According to Maxell, Apple treats the Court's meet and confer requirement "much as it has the rest of its discovery obligations, with a refusal to comply."[4] *Id*. at p. 2.

---

[4] For example, Maxell states it made a written request on January 27, 2020 for Apple to produce eleven additional relevant licenses; on January 31, 2020, Apple stated Maxell had not supported its assertion of relevance and requested additional information, which Maxell provided the following day "along with a request to meet and confer." Maxell claims Apple should have met and conferred and provided Maxell a final position by February 10, but on

In its response, Apple states Maxell did not properly meet and confer on each purported dispute raised.  According to Apple, Apple was investigating and has now produced the majority of the documents addressed in Maxell's motion.  For those issues the parties properly discussed, Apple represents it had already provided or was in the process of providing, or for those that Maxell never specifically requested before filing its motion, "Apple will nonetheless be producing." Docket Entry # 205 at p. 1. Apple requests costs and sanctions, asserting Maxell "rush[ed] to court without meeting-and-conferring" and its "motion paints a picture that Apple has intentionally withheld documents by mischaracterizing or misrepresenting certain documents." *Id*. at p. 7.

In its reply, Maxell contends the majority of the issues raised in the motion to compel have not been resolved. Docket Entry # 244 at p. 1. Maxell explains "Apple's representation of resolution more often than not results from an overly-narrow view of the deficiencies (an issue that Maxell has repeatedly highlighted to Apple)." *Id*. As one example, Maxell asserts, with respect to schematics, the "deficiency was two-fold: 1) Apple failed to produce **any** schematics for 29 accused products, and 2) Apple failed to produce **complete** schematics for many other products." *Id.* (emphasis in original). According to Maxell, "Apple's response only addressed the missing 29 schematics while ignoring Maxell's request for complete schematics for the other products." *Id.* For other alleged deficiencies raised, Maxell asserts Apple similarly limited its responsive production, and response to the motion, to the specific examples called out by Maxell and ignored the categories in full. *Id.* Maxell's reply sets forth in detail the alleged continuing deficiencies in Apple's production of technical documents and non-technical documents, as well as the continuing issues with Apple's production of non-source code documents on source code computers.

---

February 13, "Apple stated that it was looking into the issue, providing no detail about what it would provide (or not), and put off a meet and confer until its 'investigation' was complete."  Docket Entry # 197 at pp. 1-2.

Apple asserts Maxell "abuses the Court's invitation to identify on reply which issues from its original motion are still outstanding by manufacturing new 'disputes' it hasn't bothered to properly discuss with Apple before filing this motion." Docket Entry # 258 at p. 1. According to Apple, "[e]very time Maxell cannot find a document in Apple's production, Maxell declares it 'missing,'" and "every time Apples questions whether a document is within the scope of discovery, Maxell says Apple is 'withholding' it." *Id.* Apple contends most, if not all, of these "disputes" could have been resolved if Maxell "simply asked Apple to investigate them specifically." *Id.*

The Court addresses each specific "dispute" below, starting with the alleged deficiencies in Apple's production of technical documents. The Court notes it has also reviewed the briefing related to Maxell's motion for sanctions, including the Declaration of Saqib J. Siddiqui in Support of Maxell, Ltd.'s Reply in Support of Opposed Motion for Sanctions ("Siddiqui Decl."). *See* Docket Entry # 241-1. In that declaration, Maxell provides an index of productions made by Apple after November 27, 2019 through March 24, 2020 (totaling 7,370 documents and 360,539 pages).[5] Siddiqui Decl., ¶ 15.

## 2.    Alleged deficiencies in Apple's production of technical documents

### *Complete Schematics*

Apple represents in its response that it had already produced schematics covering most of the 120+ accused products (including schematics labeled with the model numbers that Maxell alleged to be missing), and has not intentionally withheld any. Docket Entry # 205 at p. 1. In its reply,

---

[5] Prior to the filing of Maxell's current motion to compel, Apple made two productions of marketing surveys and reports (totaling thirty-five documents) in December 2019, three productions of documents (totaling 618 documents) in January 2020, and two productions of documents (totaling 3,643 documents) in early February 2020. Siddiqui Decl., ¶ 15. The remaining 3,074 documents were produced by Apple following the filing of Maxell's current motion to compel.

Maxell asserts, based on the model numbers Apple has provided and without clarification from Apple as to whether certain of the alleged missing schematics have now been produced, schematics are still missing for ███████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████████ According to Apple's surreply, Maxell did not identify any missing schematics for Apple to clarify until Maxell's motion to compel. Docket Entry # 258 at p. 2. Nevertheless, Apple represents in its surreply it "has produced all requested schematics and, where needed, identified for Maxell bates numbers of requested schematics." *Id.*

In its reply, Maxell further asserts Apple has failed to produce complete schematics for each product (including, e.g., schematics that show the camera block and SOC). ███████████████████

███████████████████████████████████████████████████████████████

██████████████████████████████████████████████████ According to Apple's surreply, the █████████ schematics cited in Maxell's original motion were produced in August 2019. *See, e.g.*, Docket Entry # 258, Ex. M, APL-MAXELL_00596752 (labeled as ████ and showing camera and SOC). Again, Apple has represented it has produced all requested schematics and, where needed, identified for Maxell bates numbers of requested schematics. Docket Entry # 258 at p. 2.

In its supplemental report, Maxell asserts the request for schematics was "resolved by 3/31/20 letter linking produced schematics to accused products," but the request for block diagrams remains unresolved. Docket Entry # 266 at p. 1. In its responsive report, Apple again asserts it "performed a reasonable search for such diagrams consistent with the Discovery Order in this case and has produced the results." Docket Entry # 268 at p. 2.  To the extent Apple has not already produced all

requested and complete schematics as represented, it shall do so immediately. Otherwise, this part of Maxell's motion is denied.

### *Documents Describing Cellular Functionalities*

According to Maxell, throughout this case, Apple has represented the cellular functionalities of the accused products are implemented by Qualcomm and Intel components and the only relevant documents were datasheets that Apple already produced. Pointing out Apple recently produced proprietary Apple documents that describe cellular functionalities, Maxell contends Apple's production proves that relevant, responsive documents exist at Apple.[6] Docket Entry # 244 at p. 4 (citing Siddiqui Decl., ¶¶ 23-25). Maxell asserts Apple has not produced these materials for all relevant products/components. For example, Apple produced ██████████████████████████ but has not produced it for █████████████████████████

Maxell further asserts Apple produced in March 2020 design specifications for some Apple ████████████████████████████████ Siddiqui Decl., ¶ 25. According to Maxell, the design specifications themselves refer to additional documents and repositories for documents describing relevant cellular functionalities, ████████████████████████████████

████████████████████████████████████████████████

---

[6] In his declaration, Siddiqui states Maxell requested documents relating to "███████████████████████ in the accused products, and explained that, because the functionality implicates multiple components, documents relating to such functionality could not exist solely with Apple's component suppliers."  Siddiqui Decl., ¶ 23. According to Siddiqui, ███████████████████████████████████████ In December 2019, Maxell again raised the lack of documents relevant to ██████████████ Apple responded █████████████████████████████████████████

On March 6, 2020, following the filing of its response to Maxell's motion to compel, Apple produced ████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████ Docket Entry # 244

at p. 5 (citing Siddiqui Decl., ¶ 26).  Maxell states Apple began producing such materials on March

25, 2020, but further states it is unclear whether the production is complete.

Similarly, Maxell asserts documents Apple produced cite to similar design specifications for

████████████████████████████████████████████████████

full versions of which have also not been produced. According to Maxell, "it is apparent Apple has

not searched for and produced documents discussing ███████████████████████

█████████ either," all of which are "extremely relevant functionality for this case and at least the

asserted '193 patent." Docket Entry # 244 at p. 5.

In connection with this topic, Maxell also raised the fact that many specifications produced

by Apple are incomplete or short versions. Maxell states it subpoenaed Broadcom in an attempt to

obtain complete datasheets for Broadcom and Avago components, but Avago's outside counsel

conveyed to Maxell on February 25, 2020 that:

> Apple reached out to us four weeks ago [e.g., January 28, 2020] requesting
> permission to produce the data sheets/technical specifications for the Broadcom
> products identified in your subpoena, which we gave them. So we are assuming that
> Apple has (or will) produce the relevant documents. Please let us know if that is
> incorrect.

Docket Entry # 244 at p. 6 (citing Ex. H (2/25/20 E-mail from Bohmann to Culbertson)). Although

Apple produced complete ████████████████████████████████████ on

March 18, 2020, *see* Siddiqui Decl., ¶ 27, Maxell states it continues to await production of complete

versions of many such datasheets.

In its surreply, Apple states it accurately represented that the ███████████████ functionality in Maxell's asserted claims is found only in third-party documents, including from Intel and Qualcomm. Docket Entry # 258 at pp. 2-3. ████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████ Apple argues Maxell's request for Qualcomm documents "similar" to Intel documents is based on the unsubstantiated belief that documents for one vendor must exist for other vendors. *Id.*

Regarding Maxell's complaint about ████████████████████ for ████████████████ Apple asserts both projects have been discontinued for years and Apple merely questioned their relevance to this case, which Maxell mischaracterizes as Apple "withholding discovery . . . based on relevancy." *Id.* According to Apple's surreply, "Maxell ignores that Apple told Maxell that the ████████████████████████████████████████ and Apple has already produced the relevant source code for the chipsets used in both ████████████████ a fact that Maxell would have realized if it diligently reviewed Apple's production." *Id.*

In its supplemental report, Maxell claims the ████████████████████ and documents cited in the ██████ design specifications issues remain unresolved, whereas the design specifications for the ████████████████ issue is resolved by Apple's March 31, 2020 production. Docket Entry # 266 at p. 1. Regarding the requested design specifications for Qualcomm transceivers,

Maxell asserts the issue is resolved subject to Apple's agreement to perform an additional search for and/or provide clarification regarding these documents. *Id.* at pp. 1-2.

In Apple's responsive report, Apple notes all the items were raised for the first time in Maxell's reply and again represents it has produced the ███████████ it located after a reasonable search.  Docket Entry # 268 at p. 2. Regarding design specifications for ███████ ████████████████████████████████████████████ Apple represents it will perform an additional search for and/or provide clarification regarding these documents. *Id.*  To the extent any such documents are located after this additional search, Apple shall produce such documents (or provide clarification regarding the requested Qualcomm documents) within ten days from the date of entry of this order. Otherwise, this part of Maxell's motion is denied.

The Court considers below the remaining issue of whether Apple should be ordered to search for and produce different versions of every single specification/datasheet from ████████ ████████████████████████████, and camera suppliers such as ████████████████ and ████████████████.

### *Skyworks Code*

Maxell's motion noted a datasheet produced by third-party Skyworks for its ████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████

In its response, Apple represented it "has already produced or made available for inspection all Skyworks related material, including computer files, that is was able to locate." Docket Entry # 205 at p. 2. Maxell agrees in its reply (and supplemental report) the dispute regarding Skyworks source code is resolved. However, Maxell asserts other Skyworks documentation remains missing from Apple's production, including complete (not partial or redacted) Skyworks datasheets and Engineering Requirements Specifications.[7] Docket Entry # 244 at p. 7.

In its surreply, Apple states it has conducted a further investigation in response to Maxell's request and, to the extent additional documents were located, those too have been produced in the March 25, 2020 production.  Docket Entry # 258 at p. 4.  Maxell argues it is unclear whether the production is complete. Docket Entry # 244 at p. 7 n.4; see also Docket Entry # 266 at p. 2 ("At Apple's request, Maxell provided a listing of the incomplete documents for which complete versions are requested on 4/3/20, but Apple has not yet confirmed whether it will perform an additional search for the documents."). It was also unclear to the Court from the original briefing whether Apple's most recent production included complete (not partial or redacted) Skyworks datasheets and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ as further requested by Maxell.[8]

In its responsive report, Apple noted both remaining issues were raised by Maxell for the first time in its reply. Docket Entry # 268 at p.2 . Regarding complete datasheets, Apple asserts the issue was resolved by Skyworks' production of datasheets in response to Maxell's subpoena, "and

---

[7] According to Maxell's supplemental report, the issues regarding ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ spreadsheets was resolved by Apple's March 25, 2020 production. Docket Entry # 266 at p. 2.

[8] Even though Apple states it has researched to determine whether a more "complete" datasheet exists for certain specific datasheets alleged by Maxell to be incomplete, Apples further argues in its surreply that Maxell's "blanket request to check for different versions of every single specification and datasheet from ▮▮▮▮▮▮▮▮▮▮▮▮ is unreasonable, particularly where the relevance of different versions of documents already produced is questionable, at best." Docket Entry # 158 at pp. 3-4 (emphasis added).

Maxell's demand that Apple search for the same documents is not proportionate to Maxell's needs given Skyworks's production" *Id*. The Court agrees. Regarding ███████████████ ██████████, Apple represents it has "performed a reasonable search and produced what it found. Nothing suggests that such documents exist." *Id.* at p. 3.

This part of Maxell's motion is denied.

### *Requirements Specifications*

Maxell's motion next seeks specifications Apple ████████████████████████ ████████████████████, noting Apple had already produced specifications ██████████ ████████████████ Docket Entry # 197 at p. 3. In its response, ████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████

Docket Entry # 205 at p. 2.

According to Maxell's reply, despite saying they did not exist, Apple has now recently produced requirements specifications (including for ████ components), confirming that Apple does have such documents and raising questions again about Apple's "reasonable" search for documents. Docket Entry # 244 at p. 7.  In addition to producing ████████████████████ for both ████████████, Apple states in its surreply it conducted a "reasonable" search and produced ████████████████████████████ that it was able to find after such search. Docket Entry # 258 at p. 4.

In its reply, Maxell argues "Apple has yet to produce complete ████████████ corresponding to many of the ████ chips implicated by Maxell's infringement contentions,

including, but not limited to, the ███████████████████████████

█████████████████████████ Docket Entry # 244 at p. 7.  Maxell further argues as follows:

> ████████████████████████████████████████████████
> ████████████████████████████████████████████████
> ███████████████████████████████ The longer documents are plainly
> relevant to the infringement of the '794 patent, and should have been produced well
> in advance of Apple's corporate witness deposition on this topic. ███████████
> ████████████████████████████████████████████████
> ████████████████████████████████████████████████
> ████████████████████████████████ Complete versions of such
> specifications/datasheets should also be produced for at least ████████████
> ████████████████████████████████████████████████

*Id*. at pp. 7-8.

In its surreply, Apple asserts the documents it has recently produced, ████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████ Apple further

explains as follows:

> These documents span an eight year period and cover many product generations    it
> is natural that their content and level of detail vary. The fact that a longer, more
> detailed specification exists for one design does not mean the same must exist for
> every design. Thus, ████████████████ with fewer pages do not suggest anything is
> amiss, but is merely consistent with the unsurprising notion that a company did not
> necessarily prepare the same types of technical documents in 2011 as they do in
> 2019. Most critically, Maxell has not, and cannot, identify any information that it
> lacks to pursue its case. For example, Apple provided a detailed Interrogatory
> response that includes charts identifying the relevant ██████████████████ for
> every accused product, and Apple's 30(b)(6) witness testified to and confirmed those

████████████████████████████████████████████████
████████████████████████████████████████████████

values. See, e.g., Ex. R, 3/3/20 Response to Interrogatory No. 13 at 6-8. Thus, to the extent Maxell contends that it cannot find specifications for certain power controllers to determine their thresholds, the relevant information is already identified in Apple's Interrogatory response and deposition testimony.

Docket Entry # 258 at pp. 4-5.

As noted above in the Court's discussion regarding ███████ Apples argues elsewhere in its surreply that Maxell's "blanket request to check for different versions of every single specification and datasheet from ███████████████████████████████████████████ ████████████████████████████████ is unreasonable, particularly where the relevance of different versions of documents already produced is questionable, at best." Docket Entry # 158 at pp. 3-4.

In its supplemental report, Maxell informs the Court the issue regarding ████████████ █████████████████████████████████████ is resolved Docket Entry # 266 at p. 2. However, the other issues (███████████████████████████████████████ ████████████████████████████████████████ and complete versions of specifications/datasheets for ███████████████████████████████ █████████████████████████████████ remain unresolved. In its responsive report, Apple argues both remaining issues are resolved because it has performed a reasonable search and produced what was found, including a version of the datasheet for each component specifically identified in a list Maxell provided on April 3, 2020. Docket Entry # 268 at p. 3. Apple further asserts Maxell independently subpoenaed the same datasheets from most of the listed suppliers. *Id.*

To the extent Apple has in its possession any remaining ████████████ Specifications corresponding to the ███████████████████████████████████████████ ██████ chips that have not already been produced, they should be produced immediately. However,

considering proportionality concerns, the Court is of the opinion the remainder of this part of Maxell's motion should be denied.[10] The Court finds further searches for complete versions of specifications/datasheets for ███████████████████████████████████ ███████████████████████████████████████, would provide little additional benefit to Maxell and would not be proportional to the needs of the case. *See Traxcell Techs., LLC v. Nokia Sols. & Networks US LLC*, No. 217CV00042RWSRSP, 2019 WL 6002201, at *1 (E.D. Tex. Apr. 11, 2019).

### *Testing Documents*

Maxell's motion sought testing specifications or results for the accused functionalities. Docket Entry # 197 at p. 3. According to Maxell, testing documents must exist based on, for example, an Intel document referring to an Apple document entitled ███████████████████ ████████████ *Id*. Apple stated in its response it "produced testing documents relating to the accused functionalities, to the extent they exist and could be located in a reasonable search." Docket Entry # 205 at p. 2.  According to Apple, "the document Maxell cites makes clear that the 'testing' and 'qualifications' being discussed relate to physical and mechanical attributes, such as soldering of the chip, and not the operation of any accused functionality, and therefore do not indicate one way or the other whether additional relevant testing documents exist." Docket Entry # 205 at pp. 2-3.

---

[10] The federal rules follow a proportionality standard for discovery. *Performance Pulsation Control, Inc. v. Sigma Drilling Techs., L.L.C.*, No. 4:17-CV-00450, 2019 WL 277620, at *2 (E.D. Tex. Jan. 22, 2019) (citing FED. R. CIV. P. 26(b)(1)). Under this requirement, the burden falls on both parties and the Court to consider the proportionality of all discovery in resolving discovery disputes. *Performance Pulsation Control,* 2019 WL 277620, at *2 (citing FED. R. CIV. P. 26(b)(1), advisory committee note (2015)). This rule relies on the fact that each party has a unique understanding of the proportionality to bear on the particular issue. *Id.* For example, a party requesting discovery may have little information about the burden or expense of responding. *Id.* "The party claiming undue burden or expense ordinarily has far better information—perhaps the only information—with respect to that part of the determination." *Id.*

According to Maxell's reply, although Apple has recently produced what appear to be documents containing testing outputs ███████████, Apple has not produced documents that set forth testing protocols for the functionalities set forth in Maxell's motion. Docket Entry # 244 at p. 8. Specifically, Maxell points to SAR ("Specific Absorption Rate") Evaluation Reports that are prepared for purposes of FCC certification by UL Verification Services Inc., asserting those materials exist and should be produced.

In its surreply, Apple asserts that despite the fact it has produced relevant testing documents, Maxell now raises FCC certification tests. Docket Entry # 258 at p. 5. According to Apple, Maxell provides no explanation for why SAR Evaluation Reports prepared for FCC are relevant to its infringement claims. Based on Apple's understanding, this report tests for the radiation levels of cellular phones to ensure they are safe for consumers. In its responsive report, Apple further notes Maxell already produced publicly-available SAR reports and argues "there is no reason for Apple to produce the same documents Maxell has already produced." Docket Entry # 268 at p. 3.

The Court is not convinced these reports are relevant and proportional therefore denies Maxell's request regarding SAR Evaluation Reports.

### *Application Processor Chipset User Manual/ Micro-Architecture Specification*

Maxell's motion next seeks user manuals/micro-architecture specifications for the application processor chipsets ███████████████ in the iPhone 6S Plus, iPhone 6S, iPhone SE, iPad 5th generation (WiFi), iPad 5th Generation (WiFi + Cellular), and iPod Touch 5th generation. Docket Entry # 197 at p. 3. In response, Apple states it investigated and produced the documents raised in Maxell's motion. Docket Entry # 205 at p. 3. According to Maxell's reply, Apple produced the materials for the application processor chipsets given as examples only, and "has not produced

complete User's Manuals for many other implicated SoCs including, for example, ███████

█████████" Docket Entry # 244 at p. 8. Maxell asserts responsive materials that have been

produced cite to a "████████████████████" confirming they exist. Maxell argues

"[s]uch Specifications should be produced for each of the Accused '794 Products as well." *Id.*

According to Apple's surreply, whereas Maxell's motion sought ███████ user

manuals, Maxell now shifts its request for other user manuals that are not missing. Docket Entry #

258 at p. 6 ████████████████████████████████████████████████

████████████████████████████). Apple states it conducted

a reasonable search and produced user manuals and ███████ specifications where found.

This part of Maxell's motion is granted. To the extent any user manuals or ███████

specifications for █████████████ have not been produced to Maxell, Apple shall

produce such documents to Maxell immediately.

### *Technical Specifications/Software Design Guides/Firmware Device Specification/ Hardware Abstraction Layer Specifications*

According to Maxell's motion, technical specification-type documents are the largest

deficiency in Apple's production. In response to Maxell's motion, Apple states as follows:

> Apple conducted a reasonable search for and produced a substantial number of
> technical documents describing the design, development, or operation of accused
> functionalities, including specifically those identified in Maxell's motion. For
> example, for 'Bluetooth functionality' alone, Apple produced approximately 90 such
> documents. . . .While Maxell may not believe that other documents could not be
> located. . ., that is the case and Maxell will have the opportunity to explore that
> further in depositions. Apple has no obligation to turn over every rock and interview
> every engineer in the company looking for documents that Maxell believes may exist.

Docket Entry # 205 at p. 3.

23

In its reply, Maxell asserts the following items are still missing from Apple's belated production:



- Recent depositions confirm the existence of further relevant 'documents describing architecture or implementation details,' testing documents, technical specifications, and/or any additional relevant document describing any of the accused functionalities that ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮ Such documents must be produced for the accused functionalities.

- Apple has also produced some ▮▮▮ Specifications, after initially withholding based on an incorrect representation that they did not relate to accused products. Although Maxell recently requested confirmation on whether all such specifications have now been produced, Apple has not responded.

- Apple still has not produced a full version of the document produced at APLMAXELL_01206870 ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮

- ▮▮▮▮▮▮▮▮▮▮ Apple's deponents confirmed that this specification 'has some technical information about ▮▮▮▮▮▮▮▮

- ▮▮▮▮▮▮▮▮▮ as referred to in the document produced at APLMAXELL_01050732 should be produced.

- Documents ▮▮▮▮▮▮▮▮▮▮ describing image processing, image stabilization, and/or power management for the Accused '493 Products and the Accused '794 Products.

- Documentation (e.g., ▮▮▮▮▮▮▮▮▮) related to Apple ▮▮▮

Docket Entry # 244 at p. 9.

In its surreply, Apple states it conducted a "reasonable search for and produced a substantial number of technical documents describing the design, development, or operation of accused

functionalities, including specifically those identified in Maxell's motion." Docket Entry # 258 at

p. 6. Apple responds to what it characterizes as Maxell's "new" demands as follows:

- ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Apple has long produced documents from ▮▮▮▮▮▮ ▮▮▮▮ to the extent relevant to the issues in dispute  including by November 2019. *See* Ex. T, APL-MAXELL_01050722. While Apple's witnesses did not claim that such ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Apple nevertheless made available documents from ▮▮▮▮▮▮▮▮ *See, e.g.*, APL-MAXELL_01462721-APLMAXELL_01463359.



- ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Maxell's claim about ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ is a deliberate misrepresentation. In November 2019, Apple produced ▮▮▮▮▮▮▮▮▮▮ specifications that cover all main generations of Accused Products, before Maxell made any demands for such documents. *See, e.g.*, Ex. U, APL-MAXELL_01100239. In January 2020, Maxell requested additional ▮▮▮ specifications for non-accused products ▮▮▮▮▮▮▮▮▮▮▮ Ex. V, 1/31/20 Pensabene Ltr. at 2. Apple objected on relevance grounds and Maxell withdrew its request. *Id.*; Ex. W, 2/5/20 Beaber Ltr. at 2. Maxell later requested "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, and Apple promptly produced those documents.



- ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ This document was made available on the source code machine because Apple keeps it with its source code in the ordinary course of business. After Maxell requested that it be produced again, Apple did so on February 13. The document produced at APL-MAXELL_01206870 is the same document on the source code machine  there are no images missing.

- ▮▮▮▮▮▮▮▮▮▮▮▮▮ This document was produced in November 2019, as Apple already informed Maxell. Ex. X, 1/23/20 Meet and Confer Tr. at 21:16-23; Ex. Y, APL-MAXELL_01049773.

- ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ This issue was not raised in Maxell's February 14 Motion and Maxell has not met its obligation to meet and confer with Apple on this issue before seeking relief from the Court. Moreover, Maxell does explain why it believes this document is relevant to its claims and, indeed, the name suggests otherwise.

- **Documents saved** ▮▮▮▮▮▮▮▮▮▮ Apple already performed a reasonable search and produced documents, including the ▮▮ User Manuals Maxell alleged to be missing, from this source. . . .

25

- **Documentation related to Apple** ▮▮▮▮ Apple already performed a reasonable search and produced documents, including datasheets and specifications for ▮▮▮ *See* APLMAXELL_01463624.

Docket Entry # 258 at p. 7.

Having carefully considered the original briefing as well as the parties' supplemental reports, the Court denies Maxell's motion to compel regarding the two issues which Maxell contends are still unresolved.[11] Regarding the first issue, Apple represents in its responsive report it has performed a reasonable search and produced which it found, "including from the locations listed by Maxell when it identified by apple engineers as containing potentially responsive documents." Docket Entry # 268 at p. 4. Regarding the second issue, Apple represents it produced documents after a reasonable search, "including the ▮▮▮▮▮▮▮▮▮ Maxell alleged to be missing, from this source." *Id.* at p. 5.

### *Camera Module Specifications*

Apple represents it has produced datasheets for camera components like the CMOS image sensor but has not located specifications for camera modules. Docket Entry # 258 at p. 7. Apple represents it is not aware of any additional responsive documents. This part of Maxell's motion is denied.

### *Source Code*

Maxell's motion listed source code which Apple had not produced or had not identified as produced. Docket Entry # 197 at pp. 3-4. In their supplemental reports, the parties agree the issue

---

[11] The two issues are (1) "documents describing architecture or implementation details," testing documents, technical specifications, and/or any additional relevant document describing any of the accused functionalities that can be "searched for by topic" on pages such as the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ nd (2) documents saved at ▮▮▮▮▮▮▮▮▮▮▮▮ and describing image processing, image stabilization, and/or power management for the Accused '493 Products and the Accused '794 Products.

is resolved based on Apple's agreement to make ███████████████ available for inspection once COVID-19 restrictions permit. Docket Entry # 266 at p. 3; *see also* Docket Entry # 268 at p. 5.

### *Redacted Documents*

Although not raised in Maxell's motion to compel, Maxell asserts in its reply that many documents Apple produced in this case contain unexplained redactions. Docket Entry # 244 at p. 10. Maxell argues the redactions are not tied to any entries on Apple's privilege or redaction logs and are believed to be improper. *Id.* "For example, in a design document for the MacBook Pro 10,2 (██), Apple redacted pages directed to ████████████████████████ for the product." *Id*. Maxell requested an explanation for the improper and unexplained redactions, but has not received any response.

Pointing out this is a new issue raised for the first time after filing its February 14 motion, Apple states if Maxell had been willing to meet and confer with Apple, as this Court's Standing Order requires, Apple could have investigated the issue and addressed it without the need for motion practice. Docket Entry # 258 at p. 8. According to Apple, Maxell does not explain why this is properly addressed in the context of the present motion, nor does it explain why any redacted information, including a block diagram about a product's "enclosure" is relevant to any of its infringement claims. *Id.* In its responsive report, Apple asserts "Maxell does not explain their relevance or why this request is not just make-work disproportionate to Maxell's needs." Docket Entry # 268 at p. 5.

This part of Maxell's motion is denied.

**3.    Continuing issues with Apple's production of non-source code documents on source code computer**

Maxell and Apple have been unable to reach agreement regarding non-source code documents produced on the source code computers.  The Agreed Protective Order Regarding the Disclosure and Use of Discovery Materials governing this case provides as follows regarding the disclosure and review of source code:

> Source Code that is designated "CONFIDENTIAL    OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE" shall be produced for inspection and review subject to the following provisions, unless otherwise agreed by the Producing Party:
>
> > (i) All Source Code shall be made available by the Producing Party to the Receiving Party's outside counsel and/or experts in a secure room on two secured computers without Internet access or network access to other computers and on which all access ports have been disabled (except for one printer port), as necessary and appropriate to prevent and protect against any unauthorized copying, transmission, removal or other transfer of any Source Code outside or away from the computer on which the Source Code is provided for inspection (the 'Source Code Computers' in the 'Source Code Review Room'). The Producing Party shall explain to the Receiving Party how to start and log on to the Source Code Computers in order to access the produced Source Code. The Source Code Computers shall be loaded with a reasonably current version of the MAC operating system, i.e., at least Mac OS version 10.12,. The Producing Party shall install tools that are sufficient for viewing and searching the code produced, on the platform produced, if such tools exist and are presently used in the ordinary course of the Producing Party's business. The Receiving Party's outside counsel and/or experts may request that commercially available software tools for viewing and searching Source Code be installed on the secured computer, provided, however, that (a) the Receiving Party possesses or obtains for the Producing Party an appropriate license to such software tools; (b) the Producing Party approves such software tools, which approval shall not be unreasonably withheld; and (c) such other software tools are reasonably necessary for the Receiving Party to perform its review of the Source Code consistent with all of the protections herein. The Receiving Party must provide the Producing Party with instructions or means for installation of such licensed software tool(s) at least ten (10) business days in advance of the date upon which the Receiving

28

> Party wishes to have the additional software tools available for use on the Source Code Computer. The provided Source Code Computers shall be MacBook Pros (15 inch) that are no more than 3 years old. The Source Code Computers shall be located in a secure room in Outside Counsel's office.

Docket Entry # 45, ¶ 11(c).

In its motion, Maxell states the agreement protects Source Code only, but Apple produced over one thousand "non-source code documents on the Source code computers, improperly restricting Maxell's ability to access, review, and use such materials." Docket Entry # 197 at p. 4. In its response, Apple states it has now produced  twice  the so-called "non-source code" documents described in Maxell's motion. Docket Entry # 205 at pp. 3-4.  Apple first made them available on Apple's source code computers, along with the source code, because they are kept with the source code in the ordinary course of Apple's business. According to Apple, even though producing them in that manner was entirely proper, when Maxell demanded that they be produced outside of the source code computers, Apple agreed. *Id*. at p. 4. "Apple then undertook the extraordinarily burdensome effort to search more than ▮▮▮▮ files made available in this case for documents that may not contain source code and then review those documents to confirm they contained no code. Apple then produced these so-called non-source code documents for a second time, in the exact manner Maxell requested and before Maxell filed its motion to compel." *Id.*

In its reply, Maxell acknowledges Apple produced at least some material in the ordinary course, but Maxell states Apple has not confirmed that such production is complete. Docket Entry # 244 at p. 10. Maxell further asserts Apple also continues to refuse to produce native versions of spreadsheets initially produced on the source code computer, and then produced in illegible, unusable format in the ordinary course. *Id.* Maxell takes issue with Apple's assertion that the

29

electronic PDF documents are just as legible as they would be in native format. Maxell argues as follows:

> In native spreadsheets a user is able to track a particular column or row, and view the inputs or calculations of the data entered in the spreadsheet, none of which is available in the PDF format. The only explanation for Apple's refusal to provide the native versions is that Apple is attempting to block Maxell from having ready access to such information. Apple has produced many other spreadsheets in native format and thus has no blanket concern that such materials are not adequately protected under the Protective Order. It simply does not want to produce these spreadsheets in native format.

*Id.* at pp. 10-11.

In its surreply, Apple argues Maxell's demand that Apple reproduce these documents for a third time, in a third format, is without merit. According to Apple, "Maxell's reply cites how Apple's engineers (who are not lawyers and have no understanding of the Protective Order) may classify technical documents containing source code, . . . but ignores that the Protective Order that Maxell agreed to in this case protects not just the source code itself, but documents containing "listings [or] descriptions of source code" as source code. Docket Entry # 258 at p. 9 (citing Docket Entry # 45 at p. 3).[12] Even so, Apple states it "undertook the extraordinarily effort to search more than █████ ████ then-available source code files for documents that may not contain source code and then review those documents to confirm they contained no code, and produced █████ documents it found for a second time before Maxell's motion to compel." Docket Entry # 258 at p. 9.

Although Maxell originally argued Apple continued to refuse to produce non-source code documents that it asserts contain some source code, in their supplemental reports, the parties agree

---

[12] The Agreed Protective Order Regarding the Disclosure and Use of Discovery Materials defines "Source Code" as "computer code, scripts, assembly, binaries, object code, source code listings and descriptions of source code, object code listings and descriptions of object code, Hardware Description Language (HDL) or Register Transfer Level (RTL) files that describe the hardware design of any ASIC or other chip, and Computer Aided Design (CAD) files that describe the hardware design of any component." Docket Entry # 45 at p. 3.

the issue is now resolved based on Apple's representation that it has produced all such documents in the ordinary course of discovery (i.e., not just on the source code computer). Docket Entry # 266 at p. 3; *see also* Docket Entry # 268 at p. 5.  However, the issue regarding production of non-source code documents in native format remains unresolved.  According to Apple's responsive report, at Maxell's request, "Apple already produced these documents in two different formats: (i) in the manner they were kept in the ordinary course of business and (ii) in PDF form in accordance with the Discovery Order." Docket Entry # 268 at p. 5. According to Apple, Maxell now demands that Apple produce these documents in a third format, despite the fact that the PDFs already produced are just as readable as the native versions Maxell now demands. *Id.*

The Court is of the opinion Maxell's request should be denied. Maxell's request for production of spreadsheets in native format is inappropriate and contrary to the terms of the governing protective order. *Huawei Techs. Co. v. Huang*, No. 4:17-CV-00893, 2018 WL 6329082, at *8 (E.D. Tex. Dec. 4, 2018).

## 4.    Continuing issues with Apple's production of non-technical documents

### *Forecast Documents*

Maxell's motion noted Apple had produced two internal documents containing forecasts through Q1 2020 and "several IDC reports containing industry (not-Apple) forecasts." Docket Entry # 197 at p. 6. According to Maxell, "[i]t strains belief Apple has only two internal forecasts, and none beyond Q1 2020." *Id.* Apple asserts in its February response that it could not locate any internal forecasts extending beyond Q1 2020 after a reasonable search. Docket Entry # 205 at p. 4. Maxell asserts in its reply "there are many public reports about forecasts released for 2020 (Q2 and beyond)." Docket Entry # 244 at p. 12. Thus, according to Maxell, it "is clear Apple has not

produced all relevant forecast documents within its possession, custody, or control." *Id*. The Court disagrees.

In its surreply, Apple points out Maxell does not cite any such public report in its reply, nor does it clarify whether these are Apple or third-party reports. Docket Entry # 258 at p. 10. Regardless, Apple represents it has produced internal forecasts for the most recent quarters and will continue to produce updated forecasts up to trial. *Id.* Considering this representation and the further representations made in Apple's responsive report, the Court is of the opinion this part of Maxell's motion should be denied.

### *Licenses*

In Maxell's motion, Maxell points out the Court previously ordered Apple to respond in part to Maxell's Interrogatory No. 3 by identifying and providing certain information related to patent licenses or agreements related to the accused products. In response, "Apple identified roughly █████ agreements it contends 'relate to functionality accused by Maxell in its Infringement Contentions.'" Docket Entry # 197 at p. 6. Maxell subsequently requested eleven additional agreements (████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████), explaining they are relevant because they relate to accused functionalities or establish Apple's licensing policies for the accused products. ███████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████



In response, Apple noted it has already produced nearly ███ agreements. Docket Entry # 205 at p. 4. ████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████). Apple contends none of the other agreements relate to the accused functionalities or the "so-called hypothetical negotiation in this case." *Id.*

In its reply, Maxell argues the  license agreements with █████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███ [13] are relevant because they relate to accused functionalities or establish Apple's licensing policies for the accused products.  Docket Entry # 244 at p. 13. Apple argues Maxell's "ambiguous argument that these additional agreements are somehow relevant to Apple's 'licensing policies' does not explain how these are not cumulative to the ███ agreements Apple already produced and to

---

[13] Maxell acknowledges the ███ agreement has been produced and withdraws its request as to ████████
████████████████████ Docket Entry # 244 at p. 13 n. 8.

testimony from Apple's forthcoming corporate deponent on such policies." Docket Entry # 205 at

p. 5. In its surreply, Apple asserts it "is not Apple's duty to prove a lack of relevance, and Maxell's

does not carry *its burden* of showing of any of these additional licenses (on top of the nearly █████

agreements Apple already produced) are relevant or proportional to Maxell's needs in this case."

Docket Entry # 258 at p. 11 (emphasis in original).

As an initial matter, Apple improperly shifts to Maxell the burden of showing proportionality.

*KAIST IP US LLC v. Samsung Elecs. Co.*, No. 216CV01314JRGRSP, 2017 WL 9937760, at *2

(E.D. Tex. Dec. 21, 2017). As noted by the Court in its November 13, 2019 order, in general,

licenses and other agreements are discoverable. *Maxell Ltd. v. Apple Inc.*, No. 5:19-CV-00036-RWS,

2019 WL 7905454, at *3 (E.D. Tex. Nov. 13, 2019) (citing *Charles E. Hill & Assocs., Inc. v. ABT*

*Elecs., Inc.*, 854 F. Supp. 2d 427, 428 (E.D. Tex. 2012) (noting, in analyzing whether settlement

negotiations are privileged, that license agreements are generally discoverable)). As set forth in

Maxell's motion, the additional license agreements are relevant because they relate to accused

functionalities or establish Apple's licensing policies for the accused products.

Similar to District Judge Schroeder's earlier finding, the Court finds Apple has not

established why it should not be required to produce the additional license agreements Maxell asks

for. Therefore, the Court grants this part of Maxell's motion. Within ten days from the date of entry

of this order, Apple shall produce to Maxell the license agreements ████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████

34

*Marketing Surveys*

Maxell's motion also sought production of marketing surveys, owner surveys, or owner studies for the relevant timeframe. In response, Apple states it had advised Maxell    earlier in the day that Maxell filed its motion    Apple was investigating Maxell's request for surveys and intended to respond in a couple of days. Docket Entry # 205 at p. 6. Apple states it later confirmed it had already produced the requested marketing surveys. Id.

In its reply, Maxell acknowledges "[i]t appears that Apple produced all relevant customer survey and marketing materials requested by Maxell. It should not have taken a motion for Apple to provide these materials. Subject to Apple's confirmation, Maxell agrees this issue has been resolved." Docket Entry # 244 at pp. 13-14.

In its surreply, Apple argues as follows:

> As Apple advised Maxell earlier in the same day that Maxell filed its motion, Apple was investigating Maxell's request for surveys and planned to get back to Maxell with a response in a couple of days. . . . Apple fully agrees that Maxell's request 'should not have taken a motion.' . . . Maxell's tactic of resolving discovery disputes through frivolous and abusive motion practice should not be encouraged.

Docket Entry # 258 at p. 11.

The parties' supplemental reports advise this issue has been resolved.

*Prior Litigation Documents*

As the final item contained in Maxell's motion, Maxell states it requested certain materials related to damages and infringement of accused products in litigations relevant to issues present in this case. Docket Entry # 197 at p. 7. Specifically, Maxell requested materials from the cases against Apple brought by VirnetX, ZiiLabs, HTC, Wisconsin Alumni Research Foundation, Imperium IP

Holdings, Kodak, and CalTech. *Id.* at p. 7 n. 8. Maxell argues such documents will have information

regarding the design, operation, and value of accused functionalities and components. *Id.* at p. 7.

In response, even though it argued they are outside the scope of discovery in this case, Apple

produced three reports from the *HTC* and *Wisconsin Alumni Research Foundation* cases, stating they

were the only documents located. Docket Entry # 205 at p. 7. Apple argued at length regarding

Maxell's request for documents relating *to The California Institute of Technology v. Broadcom Ltd.*,

*et al.*, No:2:16-cv-3714 (C.D. Cal.). According to Apple, in August 2019, Apple inquired why Mayer

Brown should be allowed to represent Maxell in this case when it had previously represented Apple

in *CalTech*. Docket Entry # 205 at p. 6 (citing Ex. H, 8/20/19 Simmons Ltr. at p. 1). Apple states

Mayer Brown responded in a letter that "Maxell's current litigation and prior *Caltech* litigation are

**<u>not</u>** substantially related matters" and that "[n]one of the patents asserted by Maxell against Apple

are even remotely related to [the technology at issue in *Caltech*]." Docket Entry # 205 at p. 6 (citing

Ex. I, 8/23/19 Beaber Ltr. at p. 1 (emphasis in original)). Mayer Brown later stated via letter that

"[a]s we stated previously, the actual technology accused in each of the matters is very different" and

the technology accused in *Caltech* "has not been cited or relied on by Maxell for any allegations in

this case." Docket Entry # 205 at p. 6 (citing Ex. J, 9/11/19 Beaber Ltr. at pp. 1-2). To the extent the

Court entertains Maxell's new claim that *CalTech* is relevant to any issue in this case and its reversal

of statements regarding its prior representation of Apple in *CalTech*, Apple argues "court

intervention may be required as to Mayer Brown's continued representation adverse to Apple in this

case." Docket Entry # 205 at pp. 6-7.

In its reply, Maxell acknowledges this case and *CalTech* involve different technologies and

asserts they are not substantially related matters. Docket Entry # 244 at p. 14. However, Maxell

36

argues "it is likely that Apple took positions in that case relating to damages that are relevant to damages issues present in the instant case. That is why Maxell had limited its request for *CalTech* litigation materials to damages, not technical documents    Apple intentionally ignores this point." *Id*. (citing Ex. K).

According to Apple's surreply, "Maxell in its reply now states that it 'limited its request for *CalTech* litigation materials to damages,' but it did not inform the Court of this limitation in its motion to compel." Docket Entry # 258 at pp. 11-12. Apple urges "even such a limit does not save Maxell from its hypocrisy, where Maxell told Apple that 'the actual technology accused in each of the matters is very different' and the technologies in *Caltech* 'has not been cited or relied on by Maxell for any allegations in this case.'" *Id.* at p. 12 (citing Docket Entry # 205 at pp. 6-7). As pointed out by Apple, Maxell offers no suggestion how damages in the *CalTech* case can have bearing on any allegations in this case.

Regardless, Apple represents it has only located three reports from the *HTC* and *Wisconsin Alumni Research Foundation* cases. The Court agrees with Apple that requiring Apple to contact "its myriad prior outside counsel to look for additional documents or reports" would not be proportional to the needs of the case, especially weighed against the minimal relevance of the requested documents. This part of Maxell's motion is denied.

**B.      Apple's request for costs and sanctions**

Apple requests costs and fees, arguing Maxell failed to properly meet and confer. According to Apple, "much of Maxell's motion (and the court's intervention) could have (and should have) been avoided had Maxell engaged in good faith meet and confer efforts, reviewed Apple's discovery before making its motion, and identified with specificity the issues that it believed Apple needed to

resolve. Instead, Maxell believed it more advantageous to hide from Apple the actual disputes at issue, unilaterally declare an impasse and only reveal them in its motion." Docket Entry # 205 at p. 7.

Maxell asserts it has repeatedly requested many of the documents sought in its motion to compel since September of 2019 and sought the Court's assistance as a last resort. Docket Entry # 244 at p. 14. According to Maxell, "Apple's arguments to the contrary are a direct result of Apple's unwavering insistence on addressing only specific examples of missing materials raised by Maxell rather than Maxell's complaints of categorical deficiencies." *Id.* In its reply, Maxell asserts "Apple has produced a significant number of highly relevant documents and source code in response to Maxell's motion, including documents that Apple has repeatedly insisted do not exist, **even in its Opposition**. But even so, a significant number of deficiencies remain." *Id.* at p. 15 (emphasis in original). According to Maxell, if the filing of the motion could not resolve the parties' issues, it is clear that no amount of meet and confer efforts could have avoided them. *Id.*

Local CV-7(h) provides as follows and is worth repeating here:

The "meet and confer" motions practice requirement imposed by this rule has two components, a substantive and a procedural component.

For opposed motions, the substantive component requires, at a minimum, a personal conference, by telephone or in person, between an attorney for the movant and an attorney for the non-movant. In any discovery-related motion, the substantive component requires, at a minimum, a personal conference, by telephone or in person, between the lead attorney and any local counsel for the movant and the lead attorney and any local counsel for the non-movant.

In the personal conference, the participants must give each other the opportunity to express his or her views concerning the disputes. The participants must also compare views and have a discussion in an attempt to resolve their differing views before coming to court. Such discussion requires a sincere effort in which the participants

present the merits of their respective positions and meaningfully assess the relative strengths of each position.

In discovery-related matters, the discussion shall consider, among other things: (1) whether and to what extent the requested material would be admissible in a trial or is reasonably calculated to lead to the discovery of admissible evidence; (2) the burden and costs imposed on the responding party; (3) the possibility of cost-shifting or sharing; and (4) the expectations of the court in ensuring that parties fully cooperate in discovery of relevant information.

Except as otherwise provided by this rule, a request for court intervention is not appropriate until the participants have met and conferred, in good faith, and concluded, in good faith, that the discussions have conclusively ended in an impasse, leaving an open issue for the court to resolve. Good faith requires honesty in one's purpose to discuss meaningfully the dispute, freedom from intention to defraud or abuse the discovery process and faithfulness to one's obligation to secure information without court intervention. For opposed motions, correspondence, e-mails, and facsimile transmissions do not constitute compliance with the substantive component and are not evidence of good faith. Such materials, however, may be used to show bad faith of the author.

An unreasonable failure to meet and confer violates Local Rule AT-3 and is grounds for disciplinary action. A party may file an opposed motion without the required conference only when the non-movant has acted in bad faith by failing to meet and confer. The procedural requirement of the "meet and confer" rule is one of certification. It appears in Section (i) of this rule, entitled "Certificates of Conference."[14]

Under Federal Rule of Civil Procedure 37, a court must award reasonable expenses incurred in making a motion to compel that is granted unless: "(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing

---

[14] (i) **Certificates of Conference**. Except as specified below, all motions must be accompanied by a "certificate of conference" at the end of the motion following the certificate of service. The certificate must state: (1) that counsel has complied with the meet and confer requirement in Local Rule CV-7(h); and (2) whether the motion is opposed or unopposed. Opposed motions shall include a statement in the certificate of conference, signed by the movant's attorney, that the personal conference or conferences required by this rule have been conducted or were attempted, the date and manner of such conference(s) or attempts, the names of the participants in the conference(s), an explanation of why no agreement could be reached, and a statement that discussions have conclusively ended in an impasse, leaving an open issue for the court to resolve. In discovery-related motions, the certificate of conference shall be signed by the lead attorney and any local counsel. In situations involving an unreasonable failure to meet and confer, the movant shall set forth in the certificate of conference the facts believed to constitute bad faith.

party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." *Cypress Lake Software, Inc. v. ZTE (USA) Inc.*, No. 6:17-CV-00300-RWS, 2018 WL 4100766, at *4 (E.D. Tex. Apr. 24, 2018)[15] (quoting FED. R. CIV. P. 37(a)(5)(A); also citing *Merritt v. Int'l Bhd. of Boilermakers*, 649 F.2d 1013, 1019 (5th Cir. 1981) (internal citations and quotations omitted) ("[T]he award of expenses is mandatory against a party whose conduct necessitated a motion to compel discovery . . . unless the court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust.")).

Here, the Court does not find an award of expenses warranted. While careful attention to and thorough compliance with local rules is critical to successful practice in the court, the Court finds the purposes of Local Rule CV  7 were achieved here. *See U.S. ex rel. Gonzalez v. Fresenius Med. Care N. Am.*, 761 F. Supp. 2d 442, 452 (W.D. Tex. 2010), *aff'd sub nom. Gonzalez v. Fresenius Med. Care N. Am.*, 689 F.3d 470 (5th Cir. 2012). Exhibits submitted in connection with the relevant briefing reveal the parties complied with the substantive and procedural conference requirements of Local Rule CV-7 and District Judge Schroeder's Standing Order Regarding "Meet and Confer" Obligations Relating to Discovery Disputes. Therefore, Apple's request for costs and fees is denied.

Based on the foregoing, it is

---

[15] In *Cypress Lake Software*, the court concluded the defendants should be awarded reasonable expenses and fees incurred in bringing a motion to compel. *Cypress Lake Software*, 2018 WL 4100766, at *4. Cypress Lake had not shown its opposition to de-designation was substantially justified. The court found it particularly concerning that Cypress Lake failed to have a meaningful meet and confer with the defendants to identify the portions of its infringement contentions it believed were confidential or proprietary—in direct contravention to the court's order at the hearing—and that Cypress Lake failed to provide the court with any explanation until five days after the deadline to submit a joint status report.

ORDERED that Maxell, Ltd.'s Opposed Motion to Compel (Docket Entry # 197) is **GRANTED IN PART and DENIED IN PART** as specified herein.  It is further

ORDERED that Apple's request for costs and fees is **DENIED.**

**SIGNED this 24th day of April, 2020.**

CAROLINE M. CRAVEN
UNITED STATES MAGISTRATE JUDGE