**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TEXARKANA DIVISION**

| | |
|---|---|
| MAXELL, LTD., | |
| *Plaintiff*, | Case No. 5:19-cv-00036-RWS |
| v. | **JURY TRIAL DEMANDED** |
| APPLE INC., | |
| *Defendant*. | |

## MAXELL, LTD.'S MOTION TO DISQUALIFY DLA PIPER LLP (US)

# Table of Contents

**PAGE**

I.   FACTS .................................................................................................................. 2

II.  LEGAL STANDARDS ....................................................................................... 8

III. ARGUMENT ....................................................................................................... 9

    A.   **DLA Piper Did Not Implement a Timely and Effective Ethical Screen as Required by ABA Model Rule 1.10(a)(2)(i)** ............................................... 9

    B.   **DLA Piper Did Not Provide Maxell with the Prompt Written Notice as Required by ABA Model Rule 1.10(a)(2)(ii)** ............................................ 13

    C.   **DLA Piper Should be Disqualified In View of All the Facts and the Substantial Prejudice to Maxell** ...................................................................... 13

IV.  CONCLUSION ................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Canatella v. Krieg, Keller, Sloan, Reilley & Roman LLP,*
No. C 11–05535, 2012 WL 847493 (N.D. Cal. Mar. 13, 2012) ...............................................14

*Maxell, Ltd. v. Huawei Technologies Co. Ltd. et al.,*
Case No. 5:16-cv-178-RWS, D.I. 130 (E.D. Tex. Dec. 11, 2017) ...........................................2

*Maxell, Ltd. v. ZTE Corporation et al.,*
Case No. 5:16-cv-00179-RWS, D.I. 36 (E.D. Tex. Apr. 4, 2017)............................................2

*National Oilwell Varco, L.P. v. Omron Oilfield & Marine, Inc.,*
60 F.Supp.3d 751 (W.D. Tex. 2014)....................................................................................9, 14

*Parallel Networks, LLC v. Abercrombie & Fitch Co.,*
No. 6:10-cv-111, 2016 WL 3883392 (E.D. Tex. Apr. 1, 2016) ...............................................8

*In re ProEducation Int'l, Inc.,*
587 F.3d 296 (5th Cir. 2009) ....................................................................................................8

**Other Authorities**

Local Rule AT-2 .........................................................................................................................8

Texas Disciplinary Rule of Professional Conduct 1.09 .............................................................8

ABA Model Rule 1.10(a)(2) .............................................................................................. *passim*

Apple Inc. ("Apple") has employed a delay strategy since the outset of this case, including multiple attempts to stay this case. Then, with fewer than three months to trial, Apple – the wealthiest company in the world that employs hundreds of law firms in the United States alone – hired DLA Piper LLP (US) ("DLA Piper") to try this case. This is not unheard of, but rather than hire any one of the many law firms Apple regularly hires, Apple hired a firm that itself had just hired a former Mayer Brown LLP ("Mayer Brown") partner that worked on this exact case. That former Mayer Brown partner not only has critical knowledge regarding Maxell, Ltd. ("Maxell"), its trial strategy, and the underlying issues in this case, but also has Maxell confidential attorney-client privileged documents that were (unknowingly to Mayer Brown or Maxell) taken with him to DLA Piper, including confidential presentations to the client regarding Maxell's licensing strategy. DLA Piper initially failed to disclose to Mayer Brown or Maxell that it had those documents in its possession. Once it did, DLA Piper failed to properly protect, and still refuses to fully return or destroy, them.[1] These facts alone should have prevented DLA Piper and Apple from engaging, but, as Maxell has only recently learned, DLA Piper did not bother to comply with the straightforward provisions of Texas Disciplinary Rule of Professional Conduct 1.09 and ABA Model Rule of Professional Conduct 1.10(a)(2). Before Mayer Brown raised the conflict with DLA Piper, DLA Piper did not screen the former Mayer Brown attorney from the case (in fact, the former Mayer Brown attorney had discussions with DLA Piper's attorneys on this case regarding at least the Mayer Brown/Maxell team). It did not notify Maxell of the potential conflict or that it had Maxell highly confidential and privileged information. Nor did it confirm that steps had been taken to protect Maxell's highly confidential information.

---

[1] As of the meet and confer with Apple's counsel for this motion, Apple's counsel indicated that it wished to maintain these materials in order to respond to this motion. Apple's position is inconsistent with the Protective Order in this case, which requires that inadvertently produced documents be "immediately returned" or destroyed. D.I. 45, ¶ 16(b).

These facts warrant DLA Piper's disqualification. The ethical rules are in place to protect clients from the very activities that have transpired here, and Maxell would be substantially prejudiced by having to litigate against opposing counsel that has strategic confidential and attorney-client privileged information about the very case being tried. Maxell would also be substantially prejudiced by any delay associated with DLA Piper's disqualification. In fact, no such delay is warranted here as O'Melveny & Myers LLP, who has been involved since the inception of this case, continues to represent Apple and is fully capable of trying this case on the current schedule. Apple should not be allowed to take advantage of its own conduct to further delay the trial. Further or at a minimum, the Court should issue an order reprimanding DLA Piper for its improper conduct (to prevent similar conduct in the future) and require the return or destruction of Maxell's highly confidential and attorney-client privileged documents.

## I.     FACTS

While Counsel and eventually a Partner at Mayer Brown from April 2016 to January 2020, Mr. Justin Park worked on all of Mayer Brown's smartphone matters for Maxell and was an integral part of the Maxell litigation team, including on this case against Apple. Ex. A, Declaration of Jamie B. Beaber ("Beaber Decl.") at ¶ 2. Specifically, Mr. Park billed hundreds of hours on these matters, including many hours spent on the Apple matters, attending strategy meetings and drafting and reviewing documents and filings. *Id.*[2] As a result of his work on these Maxell matters, Mr. Park (1) accessed and had full access to all of Maxell's highly confidential

---

[2] Mr. Park was also counsel of record in Maxell's cases against Huawei and ZTE, which involved some of the same or related patents as those asserted against Apple in this case. *See Maxell, Ltd. v. Huawei Technologies Co. Ltd. et al.*, Case No. 5:16-cv-178-RWS, D.I. 130 (E.D. Tex. Dec. 11, 2017); *Maxell, Ltd. v. ZTE Corporation et al.*, Case No. 5:16-cv-00179-RWS, D.I. 36 (E.D. Tex. Apr. 4, 2017). There are clearly overlapping issues between this case and Maxell's prior cases against Huawei and ZTE. For example, U.S. Patent Nos. 6,748,317, 8,339,493, 6,408,193, and 6,329,794 asserted against Apple in this case were also asserted against ZTE in Case No. 5:16-cv-00179-RWS (E.D. Tex.). Additionally, U.S. Patent No. 7,116,438 asserted against Apple in this case was also asserted against Huawei in Case No. 5:16-cv-00178-RWS (E.D. Tex.).

business, technical, and attorney-client privileged information and documents, (2) was on the internal and external e-mail distribution lists for these cases where hundreds of confidential and attorney-client privileged e-mails both within Mayer Brown and with Maxell were exchanged, (3) attended meetings with Maxell related to this case, including at the client's headquarters in Japan, (4) attended numerous depositions relating to the Maxell smartphone matters, (5) has direct knowledge of Maxell's litigation strategy (which includes again privileged attorney mental impressions and work product), and (5) saw confidential and attorney-client information, technical and strategic, related to these cases (and the Apple matters specifically). Ex. A, Beaber Decl. at ¶ 3. Significantly, Mr. Park took some of Maxell's highly confidential and attorney-client case materials to DLA Piper without Maxell or Mayer Brown's knowledge or consent.[3]

Mr. Park joined DLA Piper in approximately January 2020. *Id*. at ¶ 4. To Mayer Brown's knowledge, DLA Piper was not engaged by Apple on this matter or the International Trade Commission matter[4] adverse to Maxell at that time. *Id*. On July 30, 2020, DLA Piper filed a Public Interest Statement on behalf of Apple in the pending International Trade Commission investigation between Maxell and Apple, *Certain Mobile Electronic Devices and Laptop Computers*, Inv. No. 337-TA-1215. *Id*. This was the first time Maxell and Mayer Brown learned that DLA Piper had been retained to represent Apple in matters adverse to Maxell. *Id*. On July 30, 2020, Mayer Brown reached out to Mr. Park at DLA Piper requesting a formal response concerning whether any protections were put in place to safeguard Maxell's confidential information at that time. *Id*. at ¶ 5. During Mayer Brown's July 30, 2020 call with Mr. Park, he

---

[3] Two days before leaving Mayer Brown and without Maxell's or Mayer Brown's knowledge or consent, Mr. Park directed his assistant to move certain e-mail file folders into a database for one of his transferring clients (not Maxell). Within those folders were certain highly confidential and attorney-client privileged Maxell materials which are now at DLA Piper. Ex. A at ¶ 19.

[4] At the appropriate time, Maxell will file a motion to disqualify in the International Trade Commission matter as well.

noted that he had discussions with at least one DLA Piper team member working on the Apple matters adverse to Maxell regarding the attorneys at Mayer Brown working for Maxell on the smartphone matters. *Id.* On August 10, 2020, Mr. Park responded to Mayer Brown's request informally by noting that he had contacted Mr. Mark Fowler (lead counsel to Apple in this case) and in-house counsel at DLA Piper regarding implementing an ethical screen, with no further details, for example, on how and when it was implemented and its scope. *Id.* at ¶ 6.

Over two weeks later, on August 28, 2020, while Mayer Brown was waiting for DLA Piper's formal response to its request for information related to the protection of Maxell's highly confidential information, a large number of DLA Piper attorneys (in the same practice group that Mr. Park recently joined) noticed appearances adverse to Maxell on behalf of Apple in this case. *See* D.I. 512-522, 524, 529. Surprised at DLA Piper's appearance in this case despite having received no formal response to its request from July 30, Mayer Brown sent a follow-up letter on September 11, 2020 to Apple's litigation counsel on this case and the General Counsel at DLA Piper stating that DLA Piper's representation of Apple in this case raises a conflict of interest that may require disqualification and renewing its request for information regarding the protection of Maxell's highly confidential information. Ex. A, Beaber Decl. at ¶ 7; Ex. B, Letter from J. Beaber to S. Cunningham and E. King (Sept. 11, 2020). In the September 11, 2020 letter, Mayer Brown requested that DLA Piper describe in detail (1) Mr. Park's role in this case, (including proposals to Apple, etc.), if any, (2) any actions that DLA Piper took to notify Maxell of this potential conflict of interest as required by the canons and to protect Maxell's confidential information received by Mr. Park, and (3) the scope and parameters of any ethical screen implemented with respect to Mr. Park. *Id.*

DLA Piper responded on September 16, 2020, stating that it did not believe that it had a disqualifying conflict of interest in this case. Ex. A, Beaber Decl. at ¶ 8; Ex. C, Letter from P. Lindau to J. Beaber (Sept. 16, 2020). DLA Piper further stated that Mr. Park had not disclosed any Maxell confidential information to anyone at DLA Piper representing Apple in this case and that DLA Piper erected an ethical wall with respect to Mr. Park. *Id*. Mayer Brown responded on September 18, 2020, noting that DLA Piper did not promptly and timely notify Maxell of this conflict of interest and that DLA Piper's letter did not provide sufficient detail about the timing and parameters of the ethical wall to allow Maxell to fully evaluate its adequacy in protecting Maxell's confidential information. Ex. A, Beaber Decl. at ¶ 9; Ex. D, Letter from J. Beaber to P. Lindau (Sept. 18, 2020). Mayer Brown also noted that on July 30, 2020 Mr. Park divulged that he had a conversation with at least one member working on the Apple matters adverse to Maxell regarding the Mayer Brown team's work for Maxell. *Id*.

DLA Piper responded substantively on September 28, 2020. Ex. A, Beaber Decl. at ¶ 10; Ex. E, Letter from P. Lindau to J. Beaber (Sept. 28, 2020). DLA Piper confirmed that "Mayer Brown, and thus Maxell, were aware of the Firm's representation of Apple in the ITC matter upon or shortly after the filing of the Public Interest Statement with the ITC on July 30, 2020," contending that this constitutes sufficient notice under the canons, and "[t]he initial ethical screen relating to the ITC matter was initiated immediately after your July 30, 2020 call with Mr. Park, and was fully implemented on or before August 18, 2020." *Id*. DLA Piper's September 28, 2020 letter also stated emphatically that "Mr. Park brought no confidential files or materials with him from Mayer Brown pertaining to Maxell." *Id*. A declaration from Mr. Park accompanying this letter similarly stated that "[w]hen I left Mayer Brown, I did not take with me any information or documents relating to my work for Maxell, nor do I have possession of any such confidential or

privileged documents or information pertaining to Maxell." *Id*. DLA Piper also incorrectly stated that Mr. Park's conversation with at least one member working on the Apple matters adverse to Maxell mentioned by Mr. Park on the July 30, 2020 call was "Mr. Park's notice to Mark Fowler that the Firm should erect a screen." *Id*.

On September 29, 2020, Mayer Brown responded and noted that DLA Piper (1) had not provided Maxell with the prompt and timely written notice of the conflict of interest and screening procedures employed as required by ABA Model Rule 1.10(a)(2)(ii) and (2) did not "timely screen" Mr. Park pursuant to ABA Model Rule 1.10(a)(2)(i) and only then implemented the ethical wall <u>after</u> Mayer Brown inquired about its existence. Ex. A, Beaber Decl. at ¶ 11; Ex. F, Letter from J. Beaber to P. Lindau (Sept. 29, 2020). Mayer Brown further explained that the conversation with at least one DLA Piper Apple team member mentioned by Mr. Park on the July 30, 2020 call could not have been with Mr. Fowler because "the discussion at issue predated Mr. Park's communication with Mr. Fowler." *Id*. DLA Piper responded on September 30, 2020, but it did not provide any justification or explanation for its failure to comply with the requirements of ABA Model Rule 1.10(a)(2). Ex. A, Beaber Decl. at ¶ 12; Ex. G, Letter from P. Lindau to J. Beaber (Sept. 30, 2020).

On October 5, 2020, Mayer Brown was required to follow up yet again, requesting further details on DLA Piper's improper view that its ethical wall was "timely initiated" and the contents of Mr. Park's discussions with a DLA Piper Apple team member. Ex. A, Beaber Decl. at ¶ 13; Ex. H, Letter from J. Beaber to P. Lindau (Oct. 5, 2020). DLA Piper did not respond at all, and Mayer Brown again reached out on October 12, 2020 requesting a substantive response. Ex. A, Beaber Decl. at ¶ 14; Ex. I, Letter from J. Beaber to P. Lindau (Oct. 12, 2020).

Then, on October 14, 2020, despite having previously represented that "Mr. Park brought no confidential files or materials with him from Mayer Brown pertaining to Maxell," DLA Piper revealed that "[l]ate last week" Mr. Park had located several e-mails, some of which included attachments, concerning Maxell. Ex. A, Beaber Decl. at ¶ 15; Ex. J, Letter from P. Lindau to J. Beaber (Oct. 14, 2020). These e-mail attachments located by Mr. Park at DLA Piper on the firm's servers include multiple versions of a Microsoft Powerpoint presentation given by Mayer Brown to Maxell stamped on their face "Privileged & Confidential – Attorney Client Communication" which contain highly confidential case settlement strategies for two Maxell cases involving its smartphone patent portfolio as well as royalty rates for the Maxell smartphone patent portfolio. *Id*. DLA Piper also stated that the e-mails located by Mr. Park "**are now** and will remain inaccessible to DLA Piper staff and lawyers, including Mr. Park, outside the Office of General Counsel." (emphasis added). *Id*. DLA Piper further explained that Mr. Park's conversation with a DLA Piper Apple team member adverse to Maxell "did not involve any of Maxell's confidential or privileged information" and was "a casual interaction in which Mr. Park acknowledged that he knows you and, in fact, complimented you and your team." *Id*.

Mayer Brown responded on October 16, 2020, expressing serious concerns about the efficacy of DLA Piper's ethical wall given that Mr. Park was able to easily locate e-mails containing Maxell's highly confidential and privileged information "[l]ate last week" and DLA Piper's statement that "[t]he enclosed e-mails **are now** and will remain inaccessible to DLA Piper staff and lawyers, including Mr. Park, outside the Office of General Counsel." (emphasis added). Ex. A, Beaber Decl. at ¶ 16; Ex. K, Letter from J. Beaber to P. Lindau (Oct. 16, 2020). Mayer Brown expressed further concerns about the substance of Mr. Park's conversation with a member of the DLA Piper Apple litigation team, including whether Mr. Park discussed any

qualities, skills, strengths, etc. of any member of the Mayer Brown Maxell litigation team based on his personal experience working on the Maxell smartphone matters. *Id*. To date, DLA Piper has still not provided any justification for its departure from the ABA Model Rules, and DLA Piper's Office of General Counsel continues to retain copies of Maxell's highly confidential and attorney-client privileged documents, despite Mayer Brown's request that such documents be returned or destroyed. Ex. A, Beaber Decl. at ¶ 17. This has been an exercise in deflection, delay, and gross negligence warranting the requested relief.

## II.   LEGAL STANDARDS

"Motions for attorney disqualification in federal courts are governed by federal standards under the law of the regional circuit." *Parallel Networks, LLC v. Abercrombie & Fitch Co*., No. 6:10-cv-111, 2016 WL 3883392, at *1 (E.D. Tex. Apr. 1, 2016). When considering disqualification issues, the Fifth Circuit has directed courts to carefully consider all the facts particular to the case in the context of the relevant ethical criteria. *In re ProEducation Int'l, Inc*., 587 F.3d 296, 299-300 (5th Cir. 2009). The Eastern District of Texas Local Rules expressly adopt the Texas Disciplinary Rules "as a guide governing the obligations and responsibilities of all attorneys appearing in this court." Eastern District of Texas, Local Rule AT-2. At the same time, "[t]he Fifth Circuit has recognized the ABA Model Rules of Professional Conduct (Model Rules) as the national standards to consider in reviewing motions to disqualify." *In re ProEducation Int'l,* 587 F.3d at 299-300. Accordingly, "[t]his Court must thus look to the American Bar Association's Model Rules of Professional Conduct and the Texas Disciplinary Rules of Professional Conduct, which govern the conduct of attorneys practicing in Texas." *Parallel Networks*, 2016 WL 3883392, at *2.

Texas Disciplinary Rule of Professional Conduct 1.09 (b) reads in relevant part:

[W]hen lawyers are or have become members of or associated with a firm, none of them shall knowingly represent a client if any one of them practicing alone would be prohibited from doing so by paragraph (a).

ABA Model Rule 1.10(a)(2) states:

(a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9, unless

(2) the prohibition is based upon Rule 1.9(a) or (b) and arises out of the disqualified lawyer's association with a prior firm, and

(i) the disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom;

(ii) written notice is promptly given to any affected former client to enable the former client to ascertain compliance with the provisions of this Rule, which shall include a description of the screening procedures employed; a statement of the firm's and of the screened lawyer's compliance with these Rules; a statement that review may be available before a tribunal; and an agreement by the firm to respond promptly to any written inquiries or objections by the former client about the screening procedures.

## III.    ARGUMENT

Mr. Park is undeniably a disqualified attorney under the relevant ethical rules. DLA Piper failed to comply with the relevant ethical rules in accepting this representation of Apple and did not properly handle Maxell's highly confidential and attorney-client privileged documents, and thus Mr. Park's conflict of interest must be imputed to DLA Piper.

### A.    DLA Piper Did Not Implement a Timely and Effective Ethical Screen as Required by ABA Model Rule 1.10(a)(2)(i)

ABA Model Rule 1.10(a)(2)(i) requires that a disqualified lawyer be "timely screened."[5] Yet DLA Piper did not take any affirmative steps to implement an ethical wall when it first sought out this representation of Apple or when it was first retained to represent Apple in this case, despite having an affirmative duty to do so.

---

[5] "Under Texas law, efforts to screen conflicted attorneys through mechanisms like 'Chinese walls' cannot rebut the presumption of shared confidences among lawyers." *National Oilwell Varco, L.P. v. Omron Oilfield & Marine, Inc.*, 60 F.Supp.3d 751, n. 11 (W.D. Tex. 2014).

When law firms attempt to get retained for a new client or case, they always run a conflict check. Most law firms also require lateral partner questionnaires in order to determine whether there are any potential conflicts with respect to a new hire. Not only would it be unsurprising, but it is likely that DLA Piper knew of this potential conflict months earlier when it interviewed Mr. Park and when Mr. Park submitted his Lateral Partner Questionnaire to DLA Piper. DLA Piper has admitted that it did not even begin to implement any ethical wall with respect to Mr. Park until <u>after</u> it had already started representing Apple in matters adverse to Maxell, and even then only after Mayer Brown first inquired as to the existence of any ethical wall on July 30, 2020. DLA Piper's failure to timely implement an ethical screen allowed Mr. Park to have a conversation with a member of the DLA Piper Apple litigation team adverse to Maxell regarding Mayer Brown's work for Maxell on the smartphone matters. The substance of this conversation is still unclear, including whether Mr. Park discussed any qualities, skills, strengths, etc. of any member of the Mayer Brown Maxell litigation team based on his personal experience working on the Maxell smartphone matters (*i.e.*, information that but for Mr. Park would not have been available to the DLA Piper Apple litigation team). Further, Mr. Park's supervisor, Mr. Fowler, is the lead counsel for Apple in this litigation and the individual that Mr. Park first approached regarding the conflict of interest issue in this case.

Additionally, DLA Piper has not explained why it took between July 30, 2020 and August 18, 2020 (nearly three weeks) to erect the ethical wall surrounding Mr. Park or whether DLA Piper had any precautions in place to protect Maxell's confidential and privileged information during that time period. It is further unclear what DLA Piper meant when it said that the ethical wall with respect to Mr. Park was "fully implemented **on or before** August 18, 2020." Ex. E, Letter from P. Lindau to J. Beaber (Sept. 28, 2020) (emphasis added). DLA Piper's

inability to provide a definitive date raises serious concerns with respect to its adequacy to protect Maxell's highly confidential information.

Indeed, the efficacy of DLA Piper's ethical wall has already been seriously called into question. On September 28, 2020, DLA Piper stated emphatically that "Mr. Park brought no confidential files or materials with him from Mayer Brown pertaining to Maxell." Ex. E, Letter from P. Lindau to J. Beaber (Sept. 28, 2020). Mr. Park himself also similarly stated that "[w]hen I left Mayer Brown, I did not take with me any information or documents relating to my work for Maxell, nor do I have possession of any such confidential or privileged documents or information pertaining to Maxell." *Id.* But as explained in DLA Piper's October 14 letter, Mr. Park had located several e-mails, some of which included attachments, concerning Maxell "[l]ate last week."[6] Ex. J, Letter from P. Lindau to J. Beaber (Oct. 14, 2020). These e-mail attachments located by Mr. Park at DLA Piper include Microsoft Powerpoint presentations given by Mayer Brown to Maxell stamped on their face "Privileged & Confidential – Attorney Client Communication" which contain highly confidential case settlement strategies for two related Maxell cases involving its smartphone patent portfolio as well as royalty rates for the Maxell smartphone patent portfolio. Ex. A, Beaber Decl. at ¶ 15. The fact that Mr. Park's declaration falsely stated that he did not take any Maxell confidential or privileged information with to him to DLA Piper raises a reasonable suspicion as to whether other statements in his declaration are true and accurate. It is at least evident that DLA Piper did not promptly conduct a full blown investigation and thoroughly search Mr. Park's files when it first sought to be retained for this

---

[6] DLA Piper claims that "Mayer Brown assembled materials" for Mr. Park to take to DLA Piper. Ex. J, Letter from P. Lindau to J. Beaber (Oct. 14, 2020). But as discussed above, Mr. Park directed his assistant to move certain e-mail file folders into a database for one of his transferring clients (not Maxell). Within those folders were certain highly confidential and attorney-client privileged Maxell materials which are now at DLA Piper. Ex. A, Beaber Decl. at ¶ 19.

case or, at a bare minimum, when Mayer Brown first raised this conflict of interest with Mr. Park on July 30, 2020. Ex. A, Beaber Decl. at ¶ 17. But there was no plan or direction from DLA Piper to thoroughly search Mr. Park's files, and indeed DLA Piper had no idea they had Maxell's highly confidential and attorney-client privileged documents, until "[l]ate last week." *See* Ex. J.

At a minimum, DLA Piper's statement that the e-mails and attachments located by Mr. Park in mid-October "**are now** and will remain inaccessible to DLA Piper staff and lawyers, including Mr. Park, outside the Office of General Counsel" (Ex. J, emphasis added) conclusively demonstrates that DLA Piper did not even comply with its own ethical wall and that the ethical wall is ineffective and insufficient to protect Maxell's highly confidential information and privileged documents. It is unclear why these e-mails and attachments were previously accessible to DLA Piper staff and lawyers, even though the ethical wall was in place according to DLA Piper "on or before August 18, 2020." *See* Ex. E.

Finally, as stated in its October 14 letter and confirmed on the meet and confer, DLA Piper's Office of General Counsel is still maintaining copies of Maxell highly confidential and attorney-client privileged documents, despite Mayer Brown's request that such documents and all copies be returned or destroyed and DLA Piper's statement that "[w]e are returning copies of those e-mails to you." Ex. A, Beaber Decl. at ¶ 18; Ex. J, Letter from P. Lindau to J. Beaber (Oct. 14, 2020). DLA Piper alleges that it is appropriate for its Office of General Counsel to keep copies of these privileged documents in order to respond to this motion. Ex. A, Beaber Decl. at ¶ 18. But DLA Piper has no right to keep, and indeed has an obligation to return or destroy, all copies of these documents. If such documents were inadvertently produced by Maxell in this case, DLA Piper would be required to "immediately return" and/or destroy "all copies" pursuant to the Protective Order. D.I. 45, ¶ 16(b).

**B.      DLA Piper Did Not Provide Maxell with the Prompt Written Notice as Required by ABA Model Rule 1.10(a)(2)(ii)**

When Mayer Brown inquired as to when DLA Piper alleges that it complied with ABA Model Rule 1.10(a)(2)(ii), DLA Piper stated that "Mayer Brown, and thus Maxell, were aware of the Firm's representation of Apple in the ITC matter upon or shortly after the filing of the Public Interest Statement with the ITC on July 30, 2020." Ex. E, Letter from P. Lindau to J. Beaber (Sept. 28, 2020). DLA Piper cannot seriously contend that the mere notice of an appearance is sufficient notice and compliance with the canons of ethics. Initially, this alleged notice does not satisfy ABA Model Rule 1.10(a)(2)(ii)'s requirement that the prompt written notice "**shall** include a description of the screening procedures employed..." (emphasis added). DLA Piper's alleged notice merely established publicly that it would be representing Apple in matters adverse to Maxell but did not describe any screening procedures employed or otherwise explain its compliance with ABA Model Rule 1.10(a)(2).

Furthermore, it is undisputed that DLA Piper did not provide Maxell (or Mayer Brown as Maxell's representative) with the "prompt" written notice required by ABA Model Rule 1.10(a)(2)(ii) when it was first retained to represent Apple in this case or when it earlier sought out the representation of Apple in this case. In fact, DLA Piper did not provide Maxell and Mayer Brown with any written notice of the screening procedures employed by DLA Piper until Mayer Brown first inquired about the existence of an ethical screen. Ex. A, Beaber Decl. at ¶ 5. DLA Piper's conduct is contrary to the stated intent of ABA Model Rule 1.10(a)(2)(ii), which is "to enable the former client to ascertain compliance with the provisions of this Rule."

**C.      DLA Piper Should be Disqualified In View of All the Facts and the Substantial Prejudice to Maxell**

The facts of this case particularly weigh in favor of disqualification. District courts in the Fifth Circuit have denied motions to disqualify a law firm when the conflicted attorney has left

the firm, stating that "there is no ongoing risk of future disclosure." *National Oilwell*, 60 F.Supp.3d at 767. Here, Mr. Park is still employed by DLA Piper and works in the same office location and practice group as a number of attorneys on DLA Piper's Apple litigation team adverse to Maxell in this case. This all but ensures that Mr. Park will have daily interactions DLA Piper's Apple litigation team, and thus there is an ongoing risk of future disclosure of Maxell's highly confidential information.

In other cases where motions to disqualify a law firm were denied, the conflicted attorney's relationship with the original client was brief and inconsequential. *See, e.g., Canatella v. Krieg, Keller, Sloan, Reilley & Roman LLP*, No. C 11-05535, 2012 WL 847493, at *2 (N.D. Cal. Mar. 13, 2012) (denying motion to disqualify when the conflicted attorney worked only 7.6 hours for the former client). In this case, Mr. Park billed hundreds of hours on the Maxell smartphone matters, including many hours spent working on and attending meetings with Maxell related to this case, including at the client's headquarters in Japan, as described above. Ex. A, Beaber Decl. at ¶ 3. Accordingly, the depth and nature of Mr. Park's representation of Maxell in the smartphone matters, and specifically this case, weigh strongly in favor of disqualification.

Finally, there is no prejudice to Apple in granting this Motion. DLA Piper only recently appeared in this case on behalf of Apple beginning on August 28, 2020. *See* D.I. 512-522, 524, 529. O'Melveny & Myers LLP is still Apple's co-counsel of record and has been representing Apple in this case since its inception. *See, e.g*., D.I. 25, Notice of Appearance of L. Simmons (May 9, 2019). Apple has significant financial resources and an ample number of preferred law firms should Apple feel it needs to retain an additional law firm in this case. Apple must not be able to contend this trial should be delayed based on DLA Piper's violations of the canons. Thus,

Maxell's interest in protecting its confidential information and enforcing the relevant ethical rules in this case far outweigh Apple's choice of additional litigation counsel.

DLA Piper simply did not properly handle the highly confidential and privileged documents exchanged between Maxell and its attorneys, and DLA Piper should have treated this issue more seriously from the outset. DLA Piper's conduct clearly warrants sanctioning. Thus, at a minimum, the Court should issue an order reprimanding DLA Piper for its ethical rule violations and improper handling of Maxell's highly confidential and attorney-client privileged documents. The order should also require that all such documents in DLA Piper's possession, electronic or otherwise, be immediately returned or destroyed. Such action is necessary to protect other clients in the future from similar misconduct by DLA Piper.

## IV.    CONCLUSION

In conclusion, it is clear that: (1) DLA Piper violated the relevant ethical rules by not timely screening Mr. Park and providing prompt written notice of such a screen to Maxell; (2) Mr. Park had at least two conversations about Mayer Brown/Maxell with attorneys representing Apple in this case, including with lead counsel Mr. Fowler; (3) Mr. Park's sworn declaration and DLA Piper's correspondence to Mayer Brown contain untrue statements; and (4) at least until October 14, 2020, DLA Piper was in possession of highly confidential and attorney-client privileged Maxell presentations that remained accessible to DLA Piper attorneys for several months despite the "ethical screen" and that to date have not been deleted by DLA Piper's Office of General Counsel. In view of all the facts particular to this case in the context of the relevant ethical criteria, Maxell respectfully requests that the Court disqualify DLA Piper from representing Apple in this case and/or issue an order reprimanding DLA Piper for its improper conduct and handling of Maxell's highly confidential and attorney-client privileged documents and requiring the immediate return or certified destruction of all such documents.

Dated: October 28, 2020

By: _/s/ Jamie B. Beaber_

Geoff Culbertson
Kelly Tidwell
Patton, Tidwell & Culbertson, LLP
2800 Texas Boulevard (75503)
Post Office Box 5398
Texarkana, TX 75505-5398
Telephone: (903) 792-7080
Facsimile: (903) 792-8233
gpc@texarkanalaw.com
kbt@texarkanalaw.com

Jamie B. Beaber
Alan M. Grimaldi
Kfir B. Levy
James A. Fussell, III
William J. Barrow
Baldine B. Paul
Tiffany A. Miller
Michael L. Lindinger
Saqib J. Siddiqui
Bryan C. Nese
Alison T. Gelsleichter
Clark S. Bakewell
MAYER BROWN LLP
1999 K Street, NW
Washington, DC 20006
Telephone: (202) 263-3000
Facsimile: (202) 263-3300
jbeaber@mayerbrown.com
agrimaldi@mayerbrown.com
klevy@mayerbrown.com
jfussell@mayerbrown.com
wbarrow@mayerbrown.com
bpaul@mayerbrown.com
tmiller@mayerbrown.com
mlindinger@mayerbrown.com
ssiddiqui@mayerbrown.com
bnese@mayerbrown.com
agelsleichter@mayerbrown.com
cbakewell@mayerbrown.com

Robert G. Pluta
Amanda Streff Bonner
MAYER BROWN LLP
71 S. Wacker Drive

16

Chicago, IL 60606
(312) 782-0600
rpluta@mayerbrown.com
asbonner@mayerbrown.com

*Counsel for Plaintiff Maxell, Ltd.*

## CERTIFICATE OF SERVICE

The undersigned certifies that all counsel of record who are deemed to have consented to electronic service are being served this 28th day of October, 2020, with a copy of this document via electronic mail pursuant to Local Rule CV-5(d).

*/s/ Jamie B. Beaber*
Jamie B. Beaber


## CERTIFICATE OF CONFERENCE

I hereby certify that Plaintiff Maxell, Ltd. has complied with the requirements of Local Rule CV-7(h) governing this case. Specifically, the parties exchanged correspondence from September 11, 2020 through October 16, 2020 regarding the relief requested in this Motion. The parties also held a telephonic meet and confer on October 23, 2020. Jamie Beaber, Geoff Culbertson, and Alan Grimaldi attended on behalf of Maxell and Fields Alexander and Thomas Ganucheau of Beck Redden LLP, DLA Piper's outside counsel retained for purposes of this motion, and Gil Gillam attended on behalf of Apple. The parties were not able to resolve the issues raised by this Motion, and counsel for Apple indicated that Apple opposes this Motion.

*/s/ Jamie B. Beaber*
Jamie B. Beaber

*/s/ Geoff Culbertson*
Geoff Culbertson