# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TEXARKANA DIVISION

| | |
|---|---|
| MAXELL, LTD., *Plaintiff*, v. APPLE INC., *Defendant*. | Case No. 5:19-cv-00036-RWS **JURY TRIAL DEMANDED** |

**MAXELL, LTD.'S REPLY IN SUPPORT OF ITS**
**MOTION TO DISQUALIFY DLA PIPER LLP (US)**

DLA Piper's Opposition is devoid of any adequate response to Maxell's allegations that DLA Piper failed to implement a timely, effective ethical screen for Mr. Park or promptly provide notice to Maxell or Mayer Brown of the screening procedures employed as required by the ABA Model Rules. Maxell quickly moved to disqualify DLA Piper shortly after learning the full factual landscape, including that DLA Piper had and has in its possession Maxell highly confidential and attorney-client privileged documents which it previously denied having (and which DLA Piper's Office of General Counsel still refuses to return and presumably has now also passed along to its outside counsel). In light of these facts, the relief Maxell requested is warranted.

**I.     DLA Piper Did Not Implement a Timely and Effective Ethical Screen**

The ethical screen erected by DLA Piper on August 18, 2020 was clearly insufficient as it did not protect the Maxell's highly confidential and attorney-client privileged information and documents in DLA Piper's possession. Indeed, DLA Piper's ethics team was admittedly unaware that DLA Piper even possessed these documents at that time (Opp. at Ex. 3, ¶ 4) and until October 8, 2020, when Mr. Park forwarded those materials to Mr. Lindau and Mr. Deem, nearly two months later. Opp. at Ex. 2, ¶ 12. These documents were previously accessible to DLA Piper staff and lawyers despite the existence of the August 18, 2020 ethical wall. Mot. at Ex. J (Oct. 14, 2020) ("The enclosed e-mails are now and will remain inaccessible to DLA Piper staff and lawyers").

DLA Piper makes a distinction without a difference in arguing that its ethical screen was fully implemented on August 18, 2020 "*before* DLA was retained by Apple for this case" on August 28, 2020. Opp. at 3 (emphasis in original); *id*. at 10-11. But this distinction lacks any substantive practical effect because DLA Piper was retained by Apple adverse to Maxell in the ITC investigation on July 28, 2020, three weeks[1] before its ethical screen was fully implemented

---

[1] This time period could be potentially even longer than three weeks if DLA Piper prepared a proposal to Apple to attempt to be retained in either case – which is very likely.

on August 18, 2020 (Opp. at 10). The ITC investigation between Apple and Maxell is substantially related to this case[2] as it concerns patents in the same smartphone portfolio and many of the same accused products. Maxell's highly confidential and attorney-client privileged information <u>and</u> documents in Mr. Park's possession at DLA Piper are equally as relevant to the imputation of Mr. Park's conflict of interest to DLA Piper in both the ITC investigation and this case. DLA Piper's continued attempts to deflect its failures through such arguments should be taken into account in the relief requested by Maxell.

**II.    DLA Piper's Violations of the Model Rules Put Maxell's Information at Risk**

Compounding its attempted deflection above, DLA Piper deliberately mischaracterizes Maxell's statements to this Court, asserting that Maxell is accusing Mr. Park of stealing Maxell's documents. Opp. at 1 and 9. Maxell did not make any statements that would insinuate or otherwise create the impression that Mr. Park <u>deliberately</u> stole Maxell's documents to assist Apple as Maxell would not speculate as to Mr. Park's state of mind at that time. Rather, Maxell asserted that Mr. Park had a hand in both compiling the e-mail files (including the structure of his Outlook account) throughout his time at Mayer Brown and then later, after departing Mayer Brown, demanding that certain of those folders (containing thousands of e-mails and some Maxell highly confidential and attorney-client privileged documents) be transferred to DLA Piper. D.I. 554 at 3 and 11.

Moreover, while it is unclear how the Maxell documents originally ended up in Mr. Park's e-mail folders transferred to DLA Piper,[3] it is DLA Piper's violations of the model rules that have

---

[2] As specifically noted in Maxell's Motion to Disqualify, Maxell will file a motion to disqualify in the ITC matter as well. D.I. 554 at 3. Thus, DLA Piper's argument that Maxell has not notified the ITC of this issue (Opp. at 11) is inconsequential.

[3] The obvious explanation is that Mr. Park at some point filed Maxell e-mails into e-mail folders for other clients, including clients that subsequently transferred to DLA Piper with Mr. Park. While these actions may have indeed been inadvertent, they nevertheless resulted in Maxell highly confidential and attorney-client privileged information in DLA Piper's possession.

put Maxell's highly confidential and attorney-client privileged information at risk. ABA Model Rule 1.10 exists because there will inevitably be a knowledge transfer when a partner goes from one law firm to another. To avoid imputing the transferring partner's knowledge to the entire firm, the Model Rules require an ethical wall and prompt notice to the client who the partner previously represented to ensure that the transferred knowledge stays and ends with the transferring partner and does not permeate throughout the new firm. DLA Piper violated the Model Rules by not promptly implementing an ethical wall around Mr. Park when DLA Piper first attempted to be retained by Apple in matters adverse to Maxell and by not promptly notifying Maxell about the screening procedures employed with respect to Mr. Park. It is DLA Piper's violations of the model rules that put Maxell's highly confidential and attorney-client privileged information at risk of permeating throughout DLA Piper and allowed Maxell's documents to exist in the firm's system for anyone to access up until October 2020. Imputation should now be presumed.

**III.     DLA Piper's Alleged Notice is Insufficient Under ABA Model Rule 1.10(a)(2)(ii)**

DLA Piper then continues to assert that it "provided Maxell with adequate notice *of its representation of Apple*." Opp. at 12 (emphasis added). DLA Piper appears to fundamentally misunderstand the "notice" required by ABA Model Rule 1.10(a)(2)(ii). It is not simply notice of DLA Piper's *representation* of Apple in matters adverse to Maxell; ABA Model Rule 1.10(a)(2)(ii) requires that the prompt notice to Maxell include a description of the screening procedures employed and a statement of the firm's and of the screened lawyer's compliance with these rules. The alleged notice DLA Piper claims to have given Maxell (*i.e.*, DLA Piper's Public Interest Statement filed in the ITC investigation on July 30 and/or notice of appearance filed in this case on August 28) is plainly hindsight grasping, is insufficient to satisfy ABA Model Rule 1.10(a)(2)(ii), and does not comport with the rule's stated intent "to enable the former client to ascertain compliance with the provisions of this Rule."

The first time that Maxell arguably received notice of the screening procedures employed by DLA Piper for Mr. Park was on September 28 when DLA Piper identified the date that the ethical screen was implemented and explained the scope/parameters of the screen.[4] Mot. at Ex. E. This September 28 notice was not "promptly given" to Maxell as required by ABA Model Rule 1.10(a)(2)(ii) because it was first given <u>two months after</u> DLA Piper was retained by Apple in the ITC investigation adverse to Maxell, and even then only after multiple requests by Mayer Brown.

## IV. Maxell Did Not Delay in Bringing its Motion to Disqualify DLA Piper

DLA Piper chastises Maxell for not raising this conflict of interest issue at the dispositive motions hearing on October 8, 2020. Opp. at 2, 5, and 13. But at that time, DLA Piper affirmatively stated that it had no Maxell confidential or privileged documents in its possession (Mot. at Ex. E (Sept. 28, 2020)), and Maxell was still waiting to receive a response from DLA Piper with information about the ethical wall. Mot. at Ex. H (Oct. 5, 2020). Any delay in bringing this motion was caused initially by DLA Piper's failure to promptly provide Maxell the notice required by ABA Model Rule 1.10(a)(2)(ii), and then subsequently by its failure to fully respond to Mayer Brown's numerous inquiries. These failures include failing to formally respond to Mr. Beaber's July 30, 2020 request[5] for information about the protection of Maxell's confidential information,

---

[4] Although DLA Piper's September 16th letter stated that it had "erected an ethical wall" (Mot. at Ex. C), this letter did not provide any details about when the ethical wall was implemented or otherwise describe in detail the scope and parameters of the ethical wall. Thus, DLA Piper's September 16th letter is also not sufficient notice under ABA Model Rule 1.10(a)(2)(ii).

[5] While Mr. Park and DLA Piper assert that Mr. Park's text message to Mr. Beaber on August 10, 2020 addressed the issue, by their own admissions the text does not even indicate that an ethical wall was actually erected. Further, Mr. Beaber initiated the text chain based on concerns regarding the delay in any response to the July 30, 2020 call and believing that Mr. Park had potentially departed to Korea (as discussed in their prior call). Based on the July 30 call and the August 10, 2020 text, Mayer Brown believed that a formal response would soon be forthcoming – confirming an ethical wall was erected and providing details regarding the wall. Indeed, Mr. Park's text, rather than resolving issues, created further concern by Maxell and Mayer Brown as a result of Mr. Park indicating he contacted Mr. Fowler on the issue, who is lead counsel for Apple.

4

necessitating a follow up letter on September 11 after DLA Piper noticed appearances in this case. DLA Piper further delayed in responding to all of Mayer Brown's letters requesting information about DLA Piper's compliance with the model rules, slowly trickling in bit and pieces of information responsive to Mayer Brown's inquires with each subsequent letter. But most notably, DLA Piper did not promptly order even the most cursory search of Mr. Park's files, and indeed his files were not searched for Maxell documents until October 8. Opp. at 5. Maxell first became aware of its highly confidential and privileged documents at DLA Piper on October 14. Mot. at Ex. J. DLA Piper's suggestion that Maxell should have prematurely filed this motion or raised this issue with the Court at the dispositive motions hearing (before Maxell knew that DLA Piper had actual Maxell highly confidential and attorney-client privileged documents in its possession and before DLA Piper had provided Maxell with sufficient evidence on which to base its motion) is absurd.

## V. Disqualifying DLA Piper Would Not Be Highly Prejudicial to Apple

DLA Piper asserts that disqualification would force Apple to "retain new lead counsel, who then would need to review nearly two years of filings, depositions, and written discovery." Opp. at 14. But O'Melveny & Myers LLP is still Apple's co-counsel of record and lead the entire matter for nearly two years without DLA Piper's involvement until recently. While DLA Piper states that "the O'Melveny firm has not been meaningfully involved in trial preparation" (Opp. at 14), O'Melveny was Apple's primary litigation counsel since the inception and throughout all substantive portions of this case, handling all discovery, expert reports, depositions, and summary judgment and *Daubert* motions. It would not, as DLA Piper suggests, be a substantial undertaking for O'Melveny to get up to speed on what has happened in such a short period of time.

## VI. CONCLUSION

In view of all the facts, Maxell requests that the Court grant the relief requested in its Motion.

|  |  |
|---|---|
| Dated: November 11, 2020 | By:  */s/ Jamie B. Beaber*<br>Geoff Culbertson<br>Kelly Tidwell<br>Patton, Tidwell & Culbertson, LLP<br>2800 Texas Boulevard (75503)<br>Post Office Box 5398<br>Texarkana, TX 75505-5398<br>Telephone: (903) 792-7080<br>Facsimile: (903) 792-8233<br>gpc@texarkanalaw.com<br>kbt@texarkanalaw.com<br><br>Jamie B. Beaber<br>Alan M. Grimaldi<br>Kfir B. Levy<br>James A. Fussell, III<br>William J. Barrow<br>Baldine B. Paul<br>Tiffany A. Miller<br>Michael L. Lindinger<br>Saqib J. Siddiqui<br>Bryan C. Nese<br>Alison T. Gelsleichter<br>Clark S. Bakewell<br>MAYER BROWN LLP<br>1999 K Street, NW<br>Washington, DC 20006<br>Telephone: (202) 263-3000<br>Facsimile: (202) 263-3300<br>jbeaber@mayerbrown.com<br>agrimaldi@mayerbrown.com<br>klevy@mayerbrown.com<br>jfussell@mayerbrown.com<br>wbarrow@mayerbrown.com<br>bpaul@mayerbrown.com<br>tmiller@mayerbrown.com<br>mlindinger@mayerbrown.com<br>ssiddiqui@mayerbrown.com<br>bnese@mayerbrown.com<br>agelsleichter@mayerbrown.com<br>cbakewell@mayerbrown.com<br><br>Robert G. Pluta<br>Amanda Streff Bonner<br>MAYER BROWN LLP<br>71 S. Wacker Drive |

Chicago, IL 60606  
(312) 782-0600  
rpluta@mayerbrown.com  
asbonner@mayerbrown.com  

*Counsel for Plaintiff Maxell, Ltd.*

## **CERTIFICATE OF SERVICE**

The undersigned certifies that all counsel of record who are deemed to have consented to electronic service are being served this 11th day of November, 2020, with a copy of this document via electronic mail pursuant to Local Rule CV-5(d).

*/s/ Jamie B. Beaber*
Jamie B. Beaber