# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TEXARKANA DIVISION

| | |
|---|---|
| MAXELL LTD.,<br><br>   *Plaintiff*,<br><br>v.<br><br>APPLE INC.,<br><br>   *Defendant*. | CASE NO. 5:19-cv-00036-RWS<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANT APPLE INC.'S MOTION TO STAY PENDING PROCEEDINGS
AT THE PATENT OFFICE OR, IN THE ALTERNATIVE TO CONTINUE TRIAL
<u>DUE TO THE COVID-19 PANDEMIC</u>**

I.      INTRODUCTION

Apple respectfully requests that the Court stay this case pending review of the six currently asserted patents by the United States Patent and Trademark Office ("PTO"), or, at the very least, continue the March 22 trial to later this year when all trial participants will have had the opportunity to receive a COVID-19 vaccine.  Because 7 of 10 currently asserted claims are now subject to some form of review by the PTO, and the remaining 3 soon will be, it is not necessary to risk the health of trial participants before the PTO finishes its review of the 10 asserted claims.  All claims are likely to be cancelled by the PTO, and if any remain after the PTO proceedings conclude, then the resulting trial will be streamlined and, more important, safer.

As it currently stands, four out of six patents and seven out of ten claims that Maxell asserts are presently subject to review—either in *ex parte* reexamination ("EPR") or *inter partes* review ("IPR") proceedings—by the PTO.  U.S. Patent Numbers 6,748,317, 6,580,999, and 8,339,493, and all asserted claims of each, are under review by the PTO in EPRs.  U.S. Patent Number 6,329,794, and all asserted claims of that patent are subject to instituted IPR.  And decisions whether to grant EPR requests regarding U.S. Patent Numbers 6,430,498 and 7,116,438 are expected any day.  Apple respectfully submits that the resources of the Court and the parties—and the health of those who would participate in an in-person trial in March—are best conserved by staying this case while the PTO completes its work.

The fact that all 10 currently asserted claims are now or soon will be subject to some form of review at the PTO constitutes a material change in circumstance similar to the change that recently led Chief Judge Gilstrap to stay two different cases pending EPR notwithstanding imminent trials.  *See Ramot at Tel Aviv Univ. Ltd. v. Cisco Sys., Inc.*, No. 2:19-CV-00225-JRG, 2021 WL 121154, at *2 (E.D. Tex. Jan. 13, 2021); *AGIS Software Dev. LLC v. Google LLC*, No.

1

2:19-CV-00361-JRG, at *5 (E.D. Tex. Feb. 9, 2021). As Judge Gilstrap recognized, "asserted claims that have been rejected in the reexamination proceedings are almost surely to be modified in some material way in response to their rejection, and they may be dropped completely," such that if the case were to proceed to trial, "there is a serious risk of wasted resources as to the parties and the Court." *Ramot*, 2021 WL 121154, at *2. The same is now true here, so the parties and the Court would benefit from a stay until the PTO outcomes are final.

But, even if the Court were not inclined to await those outcomes, the Court should minimally continue the trial to later this year, when the trial participants will have had the opportunity to be vaccinated for COVID. In November 2020, the Court continued the trial in this case to March as a result of the pandemic, but since then the pandemic has only gotten worse, particularly in Texas and Bowie County. And scientists have recently discovered a more contagious variant of COVID-19 that is beginning to spread in the United States. The CDC has warned that this new variant could lead to another increase in new cases, making it uncertain what the state of the pandemic in the U.S., Texas, and Bowie County will be as the March 22 trial nears. At the same time, the vaccine rollout is accelerating, and experts predict that by this July, a substantial majority of people who want a vaccine will be able to get one.

As demonstrated below, Dr. Benjamin Neuman, a virologist and head of the Biology Department at Texas A&M University-Texarkana, attests that proceeding with trial in March would present a substantial risk to the health and safety of the jurors and jury venire, the witnesses, the Court and its staff, the lawyers, and those in the surrounding communities who will interact with the trial participants. Declaration of Benjamin Neuman, Ph.D. ("Neuman Decl."), attached hereto as Exhibit 1, ¶¶ 19-25. Because of this, Apple requests that at a minimum the trial be continued to later in 2021, when the trial participants will have had an

opportunity to be vaccinated. Neither side will be prejudiced by a continuance, whereas proceeding with trial now will limit the parties' opportunity to present a full and fair case because several witnesses outside of Texas will be unable to safely appear at trial. Especially where many (if not all) of the asserted claims are likely to be cancelled by the Patent Office, such a continuance is warranted.

## II.  THIS CASE SHOULD BE STAYED PENDING THE OUTCOME OF POST-GRANT REVIEW PROCEEDINGS AT THE PATENT OFFICE.

Now that review proceedings have been granted or filed on all ten currently asserted claims, the Court should exercise its inherent power to control its own docket by staying these proceedings. *See Soverain Software LLC v. Amazon.com, Inc.*, 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005) (*citing Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). District courts typically consider three factors when determining whether to grant a stay pending review proceedings by the PTO: "(1) whether the stay will unduly prejudice the nonmoving party, (2) whether the proceedings before the court have reached an advanced stage, including whether discovery is complete and a trial date has been set, and (3) whether the stay will likely result in simplifying the case before the court." Dkt. No. 587 (citing *Fall Line Patents, LLC v. Am. Airlines Grp.*, No. 6:17-cv-00202-RWS, 2018 WL 4169251, at *1 (E.D. Tex. May 21, 2018); *NFC Techs. LLC v. HTC Am., Inc.*, Case No. 2:13-cv-1058-WCB, 2015 WL 1069111, at *2 (E.D. Tex. Mar. 11, 2015). "A stay is particularly justified when 'the outcome of a PTO proceeding is likely to assist the court in determining patent validity or eliminate the need to try infringement issues.'" *Ericsson Inc. v. TCL Commc'n Tech. Holdings, Ltd.*, No. 2:15-cv-00011, 2016 WL 1162162, at *1 (E.D. Tex. Mar. 23, 2016) (quoting *NFC Tech.* 2015 WL 1069111, at *1).

### A. All Ten Currently-Asserted Claims Either Are or Will Soon be Subject to Review.

In late 2019 and early 2020, Apple filed IPR petitions challenging all asserted claims in the ten originally asserted patents. Apple then moved to stay the case pending the outcome of its IPR petitions. *See* Dkt. No. 239. The Court denied Apple's motion, but did so without prejudice because the PTAB had not issued its institution decisions. *See* Dkt. No. 298. A few months later, the PTAB instituted IPR proceedings on four of the ten originally asserted patents. The PTAB, however, denied institution on the remaining six originally asserted patents. Given that eight of the 20 originally asserted claims were subject to IPR proceedings, Apple renewed its motion to stay last August. Dkt. No. 481. The Court denied Apple's motion, finding that invalidation of the eight instituted claims would not meaningfully simplify the case where the majority of the then-asserted claims (12) remained to be resolved in this case. Dkt. No. 587 at 6.

Following the Court's ruling, Apple prepared and filed requests for EPR on all remaining asserted claims of the currently-asserted patents that are not subject to IPR proceedings.[1] Apple filed the first of those requests on December 10, 2020 and the last of them on February 12, 2021. The Patent Office has now found substantial new questions of patentability as to the currently-asserted claims of the '317 (in two separate reexaminations), '999, and '493 patents and therefore granted Apple's requests for EPR on those patents. This means that seven of the ten currently-asserted claims are now subject to EPR or IPR proceedings, and the remaining three claims are subject to pending requests for EPR, which Apple expects to be granted in the next several weeks. *See* Ex. 2 at 2 (average time from filing to decision on EPR ranges from less than

---

[1] On February 2, 2021, Maxell served its Identification of Narrowed Patents and Asserted Claims for Trial, narrowing the asserted claims to (1) '317 patent, claims 1 and 17; (2) '999 patent, claim 3; (3) '498 patent, claim 3; (4) '438 patent, claims 1 and 4; (5) '794 patent, claims 1 and 14; and (6) '493 patent, claims 5 and 6. *See* Ex. 3.

4

one month to 1.37 months); 37 CFR § 1.515(a) (requiring institution within three months of filing for *EPR*).

> **B. Chief Judge Gilstrap Has Recently Stayed Multiple Cases Under Similar Circumstances.**

In circumstances similar to this case, Chief Judge Gilstrap recently stayed a case pending EPR less than two months before trial was set to begin. *See Ramot*, 2021 WL 121154. In that case, defendant Cisco filed a motion to stay pending IPR before IPRs were instituted. *Id*. at *1. Judge Gilstrap denied the motion without prejudice, instructing Cisco that it could subsequently seek a stay "if and when IPR proceedings are instituted by the PTAB." *Id*. The PTAB later denied institution of the IPRs on discretionary grounds, and Cisco thereafter filed EPR requests on all three asserted patents. *Id.* Cisco eventually renewed its stay motion pending post-grant review. *Id*.

On January 13—approximately six weeks before trial was set to begin—Judge Gilstrap stayed the case in light of the "high probability that the asserted claims will change in scope as part of the reexamination proceedings." *Id*. at *2 (noting that "[w]hen claims are rejected in an *ex parte* reexamination proceeding, the patent owner can narrow, cancel, or submit new claims."). As Judge Gilstrap reasoned, "asserted claims that have been rejected in the reexamination proceedings are almost surely to be modified in some material way in response to their rejection, and they may be dropped completely," such that if the case were to proceed to trial on the current claims, "there is a serious risk of wasted resources as to the parties and the Court." *Id*. He concluded:

> Although this stay comes late in the progression of this case—with discovery complete, pretrial briefing submitted, and jury selection impending—there remain significant resources yet to be expended by the parties, including at the pretrial conference and preparations leading up to an actual trial of this case. In light of the high probability that the asserted claims will change in scope as part of the reexamination proceedings noted above, the Court finds that

5

> considering the totality of the circumstances in this case at this time, a stay is warranted.

*Id*. Based on the same reasoning, Judge Gilstrap also recently stayed a two-patent case pending *ex parte* reexamination three months before trial was set to begin. *See AGIS*, No. 2:19-CV-00361-JRG, at *5 (E.D. Tex. Feb. 9, 2021). The situation in *Ramot* and *AGIS* are similar to the instant case.

### C. As in *Ramot* and *AGIS*, the Stay Factors Favor a Stay Pending Review Proceedings in the PTO.

#### 1. Factor One: The Review Proceedings Will Simplify This Case by Eliminating Issues for Trial.

The most important factor in the stay analysis is whether the stay is likely to simplify the issues for trial. *See* Dkt. No. 587 at 5 (citing *Uniloc 2017 LLC v. Samsung Elec. Am., Inc.*, NO. 2:19-CV-00259-JRG-RSP, 2020 WL 143360, at *5 (E.D. Tex. Mar. 24, 2020)). As in *Ramot* and *AGIS*, the pending review proceedings here will meaningfully simplify this case as the PTO continues to issue rejections of the asserted claims. As it stands now, seven of the ten currently asserted claims are subject to EPR or IPR review, and there is a high likelihood that those claims will be cancelled, rejected, or materially amended. For the '794 patent subject to IPR, the odds the PTAB will invalidate the asserted claims are higher than 80 percent. *See* Ex. 4 at 11. And for the other patents, 79 percent of *ex parte* reexaminations result in the cancellation or modification of the reexamined claims. *See* Ex. 5. Indeed, as Chief Judge Gilstrap recognized, claims in reexamination are "almost surely to be modified in some material way in response to their rejection, and they may be dropped completely." *Ramot*, 2021 WL 121154, at *2. And "when a claim is cancelled, the patentee loses any cause of action based on that claim, and any pending litigation in which the claims are asserted becomes moot." *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1340 (Fed. Cir. 2013).

6

With seven out of ten asserted claims in post-grant review (and the other three soon to be), it is "past the point of speculation" that the issues in this case will be simplified or eliminated through the actions of the PTO. *Ramot*, 2021 WL 121154, at *2. Even if the post-grant review proceedings lead to cancellation of only some of the asserted claims, the issues still will be simplified, because the post-grant reviews will add prosecution history that will inform infringement and invalidity issues. *See NFC Tech.* 2015 WL 1069111, at *7 ("[A]ny disposition by the PTAB is likely to simplify the proceedings before this Court."). And for the '794 patent in IPR, estoppel will prevent Apple from arguing in this case that any surviving claims are invalid on any ground Apple "raised or reasonably could have raised" in the IPR. *See* 35 U.S.C. § 315(e)(2). Thus, whether the claims survive or not, simplification will occur "to an appreciable extent." *See Ramot*, 2021 WL 121154, at *2.

### 2. Factor Two: A Stay Will Not Unduly Prejudice Maxell.

A stay pending PTO review of all currently-asserted patents is not prejudicial, let alone unduly so. In its prior order on Apple's motion to stay, the Court concluded the prejudice factor "cuts slightly against a stay" because "Maxell has an interest in the timely enforcement of its patent rights." Dkt. No. 298 at 3. In the Court's second order, it explained that because "[t]he parties present no new information that would disturb that finding," the Court concluded "as before," that "the prejudice factor cuts slightly against a stay." Dkt. No. 587 at 2-3.

But those findings came at a time when a minority of the asserted claims were subject to post-grant review at the PTO. Now, seven out of the ten currently asserted claims are under review at the PTO, and the remaining three claims should soon be subject to review. Because the PTO has already decided to review a majority of the asserted claims, a stay would not prejudice Maxell's enforcement of its patent rights, given the high likelihood those patent rights will be cancelled or modified in a material way. As Judge Gilstrap recognized, proceeding to

7

trial on claims that are "almost surely to be modified" will not vindicate any <u>new</u> patent rights Maxell might obtain as a result of the reexaminations. *See Ramot*, 2021 WL 121154, at *2. A stay will therefore avoid the prejudice associated with the "serious risk of wasted resources as to the parties and the Court." *Id*. And even if Maxell were to suffer some negligible prejudice as a result of a stay, that prejudice is far outweighed by the simplification of issues through the post-grant review proceedings. *See Ramot*, 2021 WL 121154, at *2-3; *Realtime Data, LLC v. Rackspace US, Inc.*, No. 6:16-CV-00961, 2017 WL 772654, at *4 (E.D. Tex. Feb. 28, 2017) ("[A]s the Court has also recognized in previous cases, concerns such as timely enforcement of patent rights are generally too generic, standing alone, to defeat a stay motion.").

Moreover, Maxell's purported prejudice argument is undermined by the fact that Maxell delayed filing this lawsuit for at least six years after Apple released the first of the accused products. *See Visual Interactive Phone Concepts, Inc. v. Samsung Telecomm. Am., LLC*, No. 11-12945, 2012 WL 1049197, at *3 (E.D. Mich. Mar. 28, 2012) (finding lack of prejudice where plaintiff delayed filing lawsuit for 13 months after release of accused product); *IOENGINE, LLC v. PayPal Holdings, Inc.*, No. CV 18-452-WCB, 2019 WL 3943058, at *7 (D. Del. Aug. 21, 2019) (Bryson, Circuit J.) ("As the Federal Circuit has stated, delays caused by the plaintiff render arguments of timely enforcement unpersuasive.") (collecting cases). Indeed, the Court relied on "the fact that Maxell did not seek a preliminary injunction" to reject Maxell's "assertion that it needs injunctive relief as soon as possible." Dkt. No. 298 at 3 n.3. In so ruling, the Court cited recent precedent from Judge Payne "finding that failure to seek a preliminary injunction weighs against any potential prejudice a patentee may suffer." *Id.* (citing *Uniloc 2017 LLC v. Samsung Elec. Am., Inc.*, No. 2:19-cv-00259-JRG-RSP, 2020 WL 1433960, at *4 (E.D. Tex. Mar. 24, 2020)). Here, Maxell's delay in bringing the suit combined with its failure to seek

8

a preliminary injunction "weighs against any potential prejudice" it can claim. *Id.*

Further, since Maxell does not compete with Apple and does not make any products that practice the asserted patents, money damages in the form of a reasonable royalty will fully compensate Maxell for any alleged harm. *See NFC Tech.*, 2015 WL 1069111, at *2-3 (finding no prejudice because "monetary relief will be sufficient" for a non-competitor); *see also ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.,* 694 F.3d 1312, 1338 (Fed. Cir. 2012) (lack of direct competition is a substantial basis for denying a permanent injunction). Furthermore, any delay in recovering money damages until after the Patent Office completes its post-grant review does not constitute undue prejudice. *See Parallel Networks Licensing, LLC v. Ramquest Software, Inc.,* No. 4:19-cv-487, 2020 WL 1236266, at *2-3 (E.D. Tex. Mar. 13, 2020) ("mere delay in collecting damages does not constitute undue prejudice."). Indeed, "the Federal Circuit has held, '[a] stay will not diminish the monetary damages to which [the plaintiff] will be entitled if it succeeds in its infringement suit—it only delays realization of those damages and delays any potential injunctive remedy." *CyWee Grp. Ltd. v. Samsung Elecs. Co.*, No. 217CV00140WCBRSP, 2019 WL 11023976, at *4 (E.D. Tex. Feb. 14, 2019) (Bryson, Circuit J.) (quoting *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1318 (Fed. Cir. 2014)).

Finally, Maxell has not submitted declarations or other evidence to substantiate a specific claim of prejudice. *Alacritech, Inc. v. CenturyLink, Inc.*, No. 216CV00693-RWS-RSP, 2017 WL 4231459, at *2 (E.D. Tex. Sept. 22, 2017); *Sec. People, Inc. v. Ojmar US, LLC*, No. 14-CV-04968-HSG, 2015 WL 3453780, at *5 (N.D. Cal. May 29, 2015) (collecting cases requiring "evidence to substantiate an argument that" a stay "will result in prejudice to the non-moving party"). As the party alleging prejudice, Maxell had the burden "to provide this Court sufficient evidence to evaluate the degree of prejudice that [Maxell] may suffer as the result of a stay."

*Sec. People*, 2015 WL 3453780, at *5. Maxell has never done so, despite two opportunities in opposition to Apple's two prior motions to stay. Accordingly, "this factor weighs in favor of a stay," since Maxell "has not presented evidence it would be prejudiced beyond the procedural effect of the delay." *Alacritech*, 2017 WL 4231459, at *2.

### 3. Factor Three: The Stage of the Case Favors a Stay.

As in *Ramot*, the stage of the case also favors a stay here. Although the proceedings are advanced, there "remain significant resources yet to be expended by the parties, including at the pretrial conference and preparations leading up to an actual trial of this case." *Ramot*, 2021 WL 121154, at *2. In *Ramot*, the court granted a stay less than two months before trial. *Id*. And because the instant case involves twice as many asserted patents as *Ramot* (six versus three), the "resources yet to be expended by the parties" are even more significant here, including preparing and presenting more than 25 witnesses across the six asserted patents, who will come from all over the country to attend trial. This is why the Federal Circuit has urged stays even when substantial time and effort have already been expended, because the actual trial is "the most burdensome task" in a patent case. *Smartflash LLC v. Apple Inc.*, 621 F. App'x 995, 1005 (Fed. Cir. 2015). Thus, even though this case is in its late stages, this factor favors a stay.

### III. PROCEEDING WITH TRIAL NOW WOULD JEOPARDIZE THE HEALTH AND SAFETY OF THE TRIAL PARTICIPANTS AND THE SURROUNDING COMMUNITY.

If the Court is not inclined to stay this case pending EPR and IPR review, at a minimum the March 22 trial should be continued until later this year so that all participants who want one can get a COVID-19 vaccine.

### A. The Number of COVID-19 Cases and Deaths Are Substantially Higher Now Than in November 2020, When the Court Continued the December Trial.

To date, more than 27 million Americans have contracted COVID-19, and more than

10

485,000 have died. Ex. 1 (Neuman Decl.) ¶ 4. Texas has been particularly hard hit by the virus, with more than 2.5 million cases and 41,000 deaths. *Id.* ¶ 5. These numbers have significantly worsened in the three months since the Court continued the trial to March 22. When the Court continued trial in early November, the number of COVID-19 cases in Texas was approximately one million, and the number of deaths was just above 20,000. *Id.* ¶ 7. In just three months, those numbers have more than doubled. *Id.* The same trends can be seen in Bowie County and the surrounding counties. In early November, the number of cases in Bowie County was around 2,500 and the total number of deaths was 97. *Id.* ¶ 8. Today, the total number of cases in Bowie County is over 6,300, and the number of COVID-19 deaths is over 170. *Id.* ¶ 5. Considering the 75-mile radius around Bowie County—an area encompassing the jury pool and those with whom jurors and Court staff are likely to interact—those numbers increase to more than 84,000 cases and nearly 2,000 deaths. *Id.* ¶ 5.

In recent weeks, Texas has seen COVID-19 hospitalizations and cases trend downward after a holiday season marked by a record-breaking surge. Nevertheless, new cases and hospitalizations are still high. *Id.* ¶ 9. And scientists have recently discovered in the U.S. new COVID-19 variants, including a more contagious variant first identified in Britain. The CDC has warned that this variant could become a significant source of infections in the United States, potentially leading to another acceleration in cases as trial approaches. *Id.* ¶ 10.

> **B.    A March Trial Poses a Health and Safety Risk for All Participants and the Surrounding Communities.**

Proceeding with the March 22 trial creates an undue risk of COVID-19 spread and infection for trial participants, courthouse staff, and the local communities in and around the Texarkana Division. *Id.* ¶¶ 20-25. While Apple appreciates that the Court intends to take steps to socially distance those in the courtroom and require masks except for the witness and

examining attorney, the trial would still require all participants to increase their risk of exposure and spread of COVID-19. Indeed, even with these same precautions—masks and social distancing required for all trial participants and court staff—13 trial participants at a November trial in the Sherman Division of this District tested positive for COVID-19 during trial, resulting in Judge Mazzant granting a mistrial. *Id.* ¶ 21.

As with the November trial in the Sherman Division, the trial in this case would draw a large group of people together—some in the courtroom and many others in workspaces in Texarkana preparing for the trial—most of whom will have recently traveled from outside the local area. On the first day of trial, it is likely that around 50 potential jurors will come to the courthouse, and approximately 25 of them will be in the courtroom with at least ten to 15 others (attorneys, client representatives, and courtroom staff). In a group of this size, given the present existing COVID-19 cases in Bowie County and the surrounding areas, there is a high likelihood that several will be carrying the virus and will be capable of transmitting it to others, most likely while they are asymptomatic. *Id.* ¶ 20.

Even after the jury is selected, the trial would continue to require a significant group of people to remain together in the courtroom. And absent proper ventilation and filtration, the courtroom is an environment that would present a high risk of COVID-19 transmission. *Id.* ¶ 18. By its very nature, a trial involves a great deal of speaking without wearing a mask. Speaking is one of the main ways that COVID-19 is transmitted from person to person, because COVID-19 spreads by aerosols or airborne droplets. *Id.* The risk of transmission by such particles is significantly higher in an enclosed space without proper ventilation. *Id.* And, in addition to the courtroom, the litigation teams will need to have significant groups of witnesses, lawyers, paralegals, and assistants—likely 15 or more—in other local workspaces, preparing for trial.

The risk of transmission is compounded because most of the lawyers, client representatives, and witnesses who will be participating in the trial will travel from outside the local area.  Many of the locations from which these participants will be coming—mostly large cities, such as Los Angeles, San Francisco, and Washington, D.C.—have very high COVID-19 rates.  *Id.* ¶ 19.  It is a near certainty that the travel participants coming from these cities will be traveling to Texarkana on planes with at least one person who is COVID-19 positive.  *See* COVID-19 Event Risk Assessment Planning Tool, https://covid19risk.biosci.gatech.edu/ (last visited Feb. 17, 2021).  Further, travel to Texarkana will require these people to pass through some of the country's busiest airports, including Dallas-Fort Worth.

Apple's lawyers, witnesses, and client representatives would of course comply with the Court's safety procedures while at trial, and would comply with all local safety guidance while in Texarkana.  This would not, however, eliminate the risk that an asymptomatic person could unknowingly bring COVID-19 to (or from) Texarkana, such as by contracting it en route.  *Id.* ¶ 20.  The parties and their witnesses will necessarily have to interact with the local community while staying in Texarkana for trial.  Because COVID-19 can be transmitted asymptomatically, temperature and symptom screenings are not fully effective, and if even one person has it, then everyone is at risk of infection, including everyone in the courtroom, the courthouse, and the parties' hotels and conference rooms.  Even daily testing of trial participants would not effectively reduce the risk of exposure to and spread of COVD-19, as evidenced by a COVID-19 breakout at a conference in California despite 450 negative COVID-19 tests from attendees.  *Id.*  This also creates a risk of spreading the disease in the community.  Such an increase would further strain local hospitals and harm the local economy.

The trial will include participants who are at higher risk for severe illness if they become infected.  For example, Apple has three expert witnesses who are over 65, putting them in a particularly high-risk category.  Certain of Apple's witnesses and lawyers also are responsible for providing care to elderly family members or those with underlying conditions.  Moreover, for those trial participants coming from out of the county or state, there will be an undue risk of transmitting the disease to their families and their communities when they return, and especially in cases where family members are at higher risk, will need to self-quarantine.  For all of these reasons, a March 22 trial would pose an unnecessary risk to the participants and those they interact with, both in Texarkana and when they return home.  *Id.* ¶ 23.

C. **A Finite Continuance of the Trial Date Would Not Unduly Prejudice Maxell.**

Should the Court not be inclined to await the outcome of the post-grant proceedings, Apple suggests only a limited continuance of the trial is necessary, until later this year when those trial participants who want to receive the COVID-19 vaccine have the opportunity to do so.  Thus far, in Bowie County, 5.4% of the vaccine-eligible population has received one or more doses of the COVID-19 vaccine, and 2.7% are fully vaccinated.  *Id.* ¶ 14.  Numbers in surrounding counties are similar.  *Id.*  And Texas was the first state to administer 1 million COVID-19 vaccines.  *Id.* ¶ 13.  It was also recently announced that CHRISTUS St. Michael Health System was named as a COVID-19 Vaccination Hub by the State of Texas to serve the Texarkana region, which will accelerate the vaccination numbers in Bowie County and the surrounding areas.  *Id.* ¶ 15.  The vaccination rates will also increase in these areas, as well as around the country, as the vaccine supply continues to increase.  Just last week, it was announced that the United States had secured an additional 200 million doses of the vaccine.  *Id.* ¶ 16.  It is expected that by Fall 2021, most people in the United States who want the COVID-19 vaccine will be able to get it.  *Id.* ¶ 16.  Thus, at a minimum, the Court should continue the trial until all

trial participants have the opportunity to become fully vaccinated.

For the reasons discussed above, a continuance of the trial date will not prejudice Maxell. In contrast, proceeding with the March trial would unduly prejudice Apple. At least three of Apple's expert witnesses and two of its engineer fact witnesses will be unable to travel to Texarkana for trial in March due to their age, underlying health conditions, or other COVID-19 health concerns. Even if these witnesses testify remotely via videoconference, that is no substitute for the face-to-face interaction that is only possible with witnesses present in the courtroom. Apple's inability to present its witnesses in person would impinge upon Apple's due process rights to fully contest Maxell's evidence. Due process protects a civil defendant's "right to a full and fair opportunity to litigate an issue," *Hardy v. Johns-Manville Sales Corp.,* 681 F.2d 334, 338 (5th Cir. 1982), and "to present evidence and argument on the contested facts and legal issues framed by the answer to the complaint." *Thompson v. Madison Cty. Bd. of Ed.,* 476 F.2d 676, 678 (5th Cir. 1973). Similarly, proceeding with the March trial would also likely impact the representativeness of the jury pool, which also impacts Apple's due process rights. *Colgrove v. Battin*, 413 U.S. 149, 160 n.16 (1973) ("What is required for a 'jury' is…a likelihood of obtaining a representative cross section of the community."). Proceeding with the trial during the pandemic therefore would undermine Apple's due process rights to a full and fair trial.

## IV.   CONCLUSION

The reasons that previously caused the Court to deny a stay have changed, given that all ten asserted claims are now or will soon be subject to PTO review. Consistent with Chief Judge Gilstrap's order in *Ramot* and *AGIS*, the Court should stay this case pending completion of the proceedings at the PTO. At the very least, however, the Court should continue the March 22 trial to a time later this year when all trial participants will have had the opportunity to receive the COVID-19 vaccine.

Dated: February 17, 2021        Respectfully Submitted

By: */s/ Harry L. Gillam, Jr.*
Harry L. Gillam, Jr.
Texas Bar No. 07921800
Melissa Richards Smith
Texas Bar No. 24001351
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, TX 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
gil@gillamsmithlaw.com
melissa@gillamsmithlaw.com

Mark D. Fowler (*Pro Hac Vice*)
Brent K. Yamashita
Christian Chessman
**DLA PIPER LLP (US)**
2000 University Ave.
East Palo Alto, CA 94303-2214
Tel: 650.833.2000
Fax: 650.833.2001

Sean C. Cunningham (*Pro Hac Vice*)
Erin P. Gibson (*Pro Hac Vice*)
Kevin Hamilton (*Pro Hac Vice*)
David R. Knudson (*Pro Hac Vice*)
**DLA PIPER LLP (US)**
401 B Street, Suite 1700
San Diego, CA 92101
Tel: 619.699.2700
Fax: 619.699.2701

Michael Jay (*Pro Hac Vice*)
**DLA PIPER LLP (US)**
2000 Avenue of the Stars, Suite 400
Los Angeles, CA 90067
Tel: 310.595.3000
Fax: 310.595.3300

Aaron G. Fountain
Zachary Loney
**DLA PIPER LLP (US)**
401 Congress Avenue, Suite 2500
Austin, Texas 78701-3799
Tel: 512.457.7000
Fax: 512.457.7001

Dawn M. Jenkins
**DLA PIPER LLP (US)**
1000 Louisiana, Suite 2800
Houston, TX 77002-5005
Tel: 713.425.8490
Fax: 713.300.6012

Paul Steadman
Stephanie Lim (*Pro Hac Vice*)
**DLA PIPER LLP (US)**
444 West Lake Street, Ste. 900
Chicago, IL 60606
Tel: 312.368.4000
Fax: 312.236.7516

*COUNSEL FOR DEFENDANT APPLE INC.*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on this 17th day of February 2021, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3).  Any other counsel of record will be served by a facsimile transmission and/or first-class mail.

*/s/ Harry L. Gillam, Jr.*
Harry L. Gillam, Jr.

**CERTIFICATE OF CONFERENCE**

I hereby certify that counsel for Apple and Maxell complied with the meet and confer requirement specified in E.D. Tex. Local Rule CV-7(h) on February 17, 2021.  Counsel for Plaintiff indicated that Plaintiff is opposed to the relief sought by this Motion.

*/s/ Harry L. Gillam, Jr.*
Harry L. Gillam, Jr.
