**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION**

| | |
|---|---|
| MAXELL, LTD., | § |
| | § |
| Plaintiff, | §   CIVIL ACTION NO.  5:19-CV-00036-RWS |
| | § |
| v. | § |
| | § |
| APPLE INC., | § |
| | § |
| Defendant. | § |
| | § |

## ORDER

Before the Court are Plaintiff Maxell, Ltd.'s Motions *in Limine* (Docket No. 547), Defendant Apple Inc.'s Motions *in Limine* (Docket No. 548) and Maxell's Additional Motion *in Limine* (Docket No. 602).  The Court heard argument on all but the additional motion on November 12, 2020.[1]  For the following reasons, the motions are **GRANTED-IN-PART** and **DENIED-IN-PART**.  The Court takes each dispute in turn.

## I.     Maxell's MIL #1

Maxell asks the Court to preclude Apple from "entering into evidence, or offering testimony based upon, unauthenticated Sony MVC-FD83 and MVC-FD88 cameras" under Federal Rules of Evidence 901, 401–02, and 403.  Docket No. 547 at 1.  Maxell submits that Apple's expert intends to offer invalidity opinions for the '493 patent based on these cameras, as well as related product manuals, magazine advertisements and Sony sales data.  *Id.*  Maxell contends that

---

[1] The parties presented argument on the initial motions *in limine* at the pretrial conference on November 12, 2020. Docket No. 582.  Due to the COVID-19 global pandemic, jury trial in this matter was reset to March 22, 2021.  Docket No. 593.  Maxell filed its additional motion *in limine* (Docket No. 602) on December 21, 2020, and supplemental authority for its motion on January 8, 2021 (Docket No. 611).  Apple has filed a response (Docket No. 616).

"Apple has not presented evidence establishing that the manual, advertisements, and sales data are tied to the specific camera samples" and has not provided any other evidence of the cameras' authenticity.  *Id.* at 2–3.  Maxell argues that the cameras must be excluded as unauthenticated evidence under FRE 901, as irrelevant under FRE 402 and as prejudicial and confusing under FRE 403.  *Id.* at 4.

Maxell's MIL #1 is **DENIED**.  In substance, this motion is duplicative of Maxell's motion for summary judgment of no invalidity regarding the '493 patent (Docket No. 370), which the Court denied.  *See* Docket No. 586.  Further, Maxell's objections to the cameras under the Federal Rules of Evidence are not appropriate as a motion *in limine*.  To the extent that Maxell objects to the authenticity or relevance of the Sony cameras, it may submit an exhibit objection.

## II.      Maxell's MIL #2

Maxell moves to exclude "improper expert testimony or supplementation of facts from Dr. Gregory Abowd."  Docket No. 547 at 5.  Maxell submits that Dr. Abowd, as author of the prior art Cyberguide system, must confine his testimony to facts in evidence only and may not be portrayed by Apple as "someone knowledgeable in the art, an expert in his field, or anything of the like."  *Id.* at 6.  Maxell argues that "even presenting his background and experience will suggest to the jury that Dr. Abowd must be listened to with particular care given his particularized knowledge."  *Id.* Apple responds that Dr. Abowd is a fact witness who will testify as to the "bounds" of the prior art Cyberguide system based on his personal knowledge of that system and will not offer any expert opinions.  Docket No. 563 at 3–6.

Maxell's MIL #2 is **GRANTED-IN-PART** and **DENIED-IN-PART**.  Apple has agreed that Dr. Abowd is a fact witness only and will not provide any expert testimony or opinions.  Dr. Abowd may provide facts regarding prior art Cyberguide systems "that he personally perceived,"

provide facts regarding the prior art Abowd article, including "why, when, where, and to whom it was published," and testify as the "bounds" of the Cyberguide system as a topic within his personal knowledge.  Docket No. 563 at 6–7.  Apple shall not refer to Dr. Abowd as an expert witness and he may not provide any opinions that deviate from his personal knowledge or would require an expert report under FRE 702.  FED. R. EVID. 701.

But Dr. Abowd may testify regarding his background and experience in order to provide an appropriate foundation for his fact testimony.  *See* FED. R. EVID. 602 (a witness must lay a foundation establishing personal knowledge of the facts forming the basis of his or her testimony).  Maxell may raise an objection at trial to any testimony it feels is unduly prejudicial, and the Court will entertain proposals for a limiting instruction regarding Dr. Abowd's role as a fact witness, if necessary.

## III.    Maxell's MIL #3

Maxell moves to exclude "[a]ll references, evidence, testimony (including expert testimony), or argument regarding, or inquiries about or eliciting any testimony suggesting that Google Maps is a non-infringing alternative to the asserted patents."  Docket No. 547 at 7.  While Maxell has not specifically accused Google Maps of infringing the asserted patents, Maxell submits that this does not mean that it is a non-infringing alternative, as Apple's experts claim.  *Id.* at 8.  Apple responds that Maxell's motion is baseless, as its experts do not intend to provide any opinions regarding Google Maps and have not referenced Google Maps in their expert reports.  Docket No. 563 at 7.

At the pretrial conference, the parties appeared to have reached agreement on the substance of this motion.  *See* Docket No. 590 at 26:22–30:16.  The parties are ordered to meet and confer

and file a joint status report confirming their agreement with the Court or briefly describing the nature of any remaining dispute no later than Monday, March 8, 2021, at 5 p.m. CST.

## IV.    Maxell's MIL #4

Maxell moves to prohibit Apple from introducing "any references, evidence, testimony (including expert testimony), or argument regarding, or inquir[ing] about or elicit[ing] any testimony comparing any accused instrumentality to any purported prior are device, prior art patent, or any other prior art."  Docket No. 547 at 8.  Apple responds that none of its experts intend to assert a "practicing the prior art" defense, and that, to the extent that Maxell takes issue with its experts invalidity theories, those disputes are untimely *Daubert* challenges.  Docket No. 563 at 7–8.  Apple contends that its experts will apply the asserted claims to the prior art references under Maxell's experts' reading of the claims and the Court's claim construction, and that it will argue based on this evidence "that were the claims broad enough to be infringed as Maxell asserts, they are invalid."  *Id.* at 7.  This, Apple argues, is a permissible, "limitation-by-limitation anticipation analysis."  *Id.* (citing *HSM Portfolio LLC v. Elpida Memory Inc.*, No. 11-770-RGA, 2016 WL 561179, at *13 (D. Del. Feb. 11, 2016)).

At the pretrial conference, counsel for Maxell informed the Court that the parties had reached agreement on this motion.  Docket No. 590 at 31:4–6 ("I'll let [Apple's counsel] confirm that to be sure, but I think we have reached agreement on this MIL.").  Apple's counsel then indicated that the parties had reached agreement that Apple's expert would not be offering a "practicing the prior art" defense.  *Id.* at 31:14-18 ("I think as long as the agreement is limited to that, then I think there's no dispute here.").  The parties are ordered to meet and confer and file a joint status report confirming their agreement with the Court or briefly describing the nature of any remaining dispute no later than Monday, March 8, 2021, at 5 p.m. CST.

## V.      Maxell's MIL #5

Maxell moves to exclude any evidence, testimony or argument "concerning the quality of the United States Patent and Trademark Office's ("USPTO") examination process or its examiners or the percentages of patents that are invalidated in re-examinations or *Inter Partes* Review." Docket No. 547 at 10.  Maxell submits that any testimony regarding overwork, quotas, awards or promotions at the USPTO would be irrelevant and unfairly prejudicial.  *Id.*  Because "[t]he law mandates that patents are presumed valid," Maxell argues that any testimony that attempts to cast doubt on that presumption should be excluded.  *Id.* at 11.  Apple responds that it has "no intention of 'attacking' the Patent Office or its examiners."  Docket No. 563 at 9.  Apple does intend to argue that the Patent Office did not have the opportunity to consider its prior art references asserted in this case and make "generalizations that the examiner was in error."  Docket No. 563 at 9.  Apple also contends that if Maxell argues that the Patent Office "got it right" after "years" of analyzing Maxell's patent applications, then Apple is entitled to a rebuttal.  *Id.* at 10.

Based on counsels' presentations at the pretrial conference, the parties generally agree on the substance of this motion.  Apple agreed not to elicit testimony implying that the Patent Office or its examiners are overworked or overburdened, refer to quotas or promotions, or otherwise "attack" the USPTO or its examiners.  Docket No. 563 at 9–10; Docket No. 590 at 35:13–20.  But if Maxell attempts to bolster the USPTO or its examiners or imply that the USPTO always issues patents correctly, Apple intends to contradict that testimony.  Docket No. 563 at 10; Docket No. 590 at 35:13–36:2 ("But if Mr. Stoll gets up on the stand and says that the Patent Office is great, they take a long time to examine patents—in this particular instance, they spent three, four, five years examining the patent, then we have to cross-examine him on the basis of those statements.").  Maxell indicated that Mr. Stoll's testimony would not bolster the USPTO or its examiners, and

agreed that bolstering would "open the door" for Apple to rebut that testimony on cross-examination. Docket No. 590 at 36:12–22. Accordingly, the parties are ordered to meet and confer and file a joint status report confirming their agreement with the Court or briefly describing the nature of any remaining dispute no later than Monday, March 8, 2021, at 5 p.m. CST.

## VI.   Maxell's MIL #6

Maxell moves to exclude any negative references to Maxell as a Japanese company, "patent troll, troll, toll-collector, non-practicing entity or NPE, patent assertion company, litigious" or as being "in the business of filing lawsuits." Docket No. 547 at 11. Maxell argues that these terms are routinely excluded as prejudicial and irrelevant. *Id.* Apple agrees not to use the terms "troll," "patent troll," "toll collector" or refer in any derogatory way to Maxell as a Japanese company. Docket No. 563 at 10. But Apple argues that the term "non-practicing entity" is neutral, accurate and relevant to the jury's damages analysis. *Id.* at 10–11. Apple also contends that Maxell's motion is overbroad and precludes Apple from even referring to Maxell as a Japanese company. *Id.* at 11.

Maxell's MIL #6 is **GRANTED**. This motion does not prohibit Apple from factually asserting that Maxell is a Japanese company, but rather precludes "nefarious or derogatory references to the fact that Maxell is a Japanese company." Docket No. 547 at 11; Docket No. 590 at 45:19–46:1. Apple may provide <u>facts</u> regarding Maxell's background or business model but may not use the terms "non-practicing entity" or "NPE" or refer to Maxell as "litigious" or as being "in the business of filing lawsuits." *See* FED. R. EVID. 403; *see also Maxell, Ltd. v. ZTE Corp., et al.*, No. 5:16-cv-00179-RWS, Docket No. 176 at 1 (E.D. Tex. June 6, 2018).

## VII.    Maxell's MIL #7

Maxell moves to exclude "any lay witness references, evidence, testimony, or argument regarding" infringement and invalidity opinions.  Docket No. 547 at 12.  Maxell submits that lay witnesses should not be permitted to "testify as to why specific claim language in the asserted patents is not met by the accused products or use claim language while describing the features of prior art products," as these opinions would constitute expert testimony.  *Id.*  Maxell also argues that lay witnesses should be precluded from testifying about any specialized backgrounds or experience that would lend them credibility properly reserved for experts.  *Id.* at 13.  Apple responds that its engineers' testimony regarding infringement is necessary to rebut Maxell's willful infringement claim.  Docket No. 563 at 12.  In Apple's view, testimony regarding its subjective belief that it did not infringe the asserted patents or that they were invalid is best provided by Apple's engineers.  *Id.*  Apple also argues that there is no basis to preclude a fact witness from testifying about his or her relevant background and experience.  *Id.* at 13.

Maxell's MIL #7 is **GRANTED-IN-PART** and **DENIED-IN-PART**.  Apple's lay witnesses, including Apple engineers, may not compare the accused Apple products to Maxell's infringement contentions, nor provide any noninfringement analysis that would require an expert report under FRE 702.  FED. R. EVID. 701.  Apple's lay witnesses may provide facts within their personal knowledge about the structure, function or operation of the accused products.  *Id.*  These witnesses may also testify as to their background and experience to provide an appropriate foundation for their testimony.  *See* FED. R. EVID. 602 (a witness must lay a foundation establishing personal knowledge of the facts forming the basis of his or her testimony).  Maxell may raise an objection at trial to any testimony it feels is unduly prejudicial, and the Court will entertain proposals for a limiting instruction, if necessary.

## VIII.   Maxell's MIL #8

Maxell moves to exclude evidence and testimony regarding Apple's COVID-19 response efforts as irrelevant and prejudicial.  Docket No. 547 at 14.  Maxell argues that Apple's COVID-19 response efforts bear no relevance to any claim or defense at issue in this lawsuit, and would "only be used by Apple to attempt to paint itself in a positive light for the jury." *Id.*  Apple responds that its damages expert, Lance Gunderson, relies on Apple's COVID-related features in iOS 13.5 to explain the flaws in Maxell's damages expert's allocation methodology of her income approach with respect to the '438 patent.  Docket No. 563 at 13.  Apple therefore argues that precluding any mention of Apple's COVID-19 response efforts would wrongly prohibit portions of that testimony. *Id.*

At the pretrial conference, the parties indicated that there was some agreement on this motion, but that the parties could not fully agree on the degree to which Apple should be allowed to discuss its COVID-19 response efforts.  Docket No. 590 at 56:14–70:11.  The parties are ordered to meet and confer and file a joint status report confirming their agreement with the Court or briefly describing the nature of any remaining dispute no later than Monday, March 8, 2021, at 5 p.m. CST.

## IX.   Maxell's MIL #9

Maxell moves to exclude any references, evidence, testimony or argument regarding the value and propriety of patents acquired from others.  Docket No. 547 at 14–15.  Maxell submits that Apple should not be allowed to make "any disparaging remarks or arguments implying that (1) it is improper to assert patents acquired from others; (2) it is improper to assert patents without practicing them; and (3) acquired patents are less valuable than other patents." *Id.* at 15.  Apple responds that it does not intend to offer any of the above-listed statement or arguments, but that

precluding the parties from mentioning the "value" of Maxell's patents is overbroad and vague, as the value of Maxell's patents is central to the issue of damages.  Docket No. 563 at 14.

Maxell's MIL #9 is **GRANTED-AS-AGREED**.  The parties indicated at the pretrial conference that they had reached agreement on this motion.  Docket No. 590 at 71:8–14 ("So my understanding is we have agreement on this and I'll let Apple confirm . . . yes, we have agreement.").

## X.     Maxell's MIL #10

Maxell asks the Court to prohibit Apple from introducing evidence or arguments based on prior art beyond the 20 prior art references it elected to rely upon at trial in response to the Court's Focusing Order.[2]  Docket No. 602 at 1.  On November 6, 2020, Apple served its notice under 35 U.S.C. § 282(c) disclosing all the prior art references it intends to use at trial to demonstrate "anticipation" and to show "the state of the art."  Docket No. 602-3, Ex. 2.  Maxell argues that this notice, which lists 54 patents, 35 printed publications, articles and documents, six prior art systems, and incorporates by reference many others, including "any prior art cited during [the patents'] prosecution," "Apple's invalidity contentions and the references cited therein," "invalidity contentions served on Maxell, Ltd. by any other company . . . and the references cited therein," "[e]ach IPR petition . . . and the references cited therein," and "all prior art patents, publications, or products" cited in Apple's expert reports, and any invalidity expert reports in any other case involving Maxell and the asserted patents, violates the Local Patent Rules and the Court's Focusing Order.  Docket No. 602 at 1–2; Docket No. 602-3, Ex. 2.

Apple responds that its § 282 notice complies with the Local Patent Rules, courts in this district routinely allow a defendant to rely on unelected prior art references to show the state of

---

[2] Since Maxell's motion regarding this prior art was filed, Maxell has further narrowed its asserted claims and Apple has narrowed its elected prior art references.  *See* Docket Nos. 619, 624.

the art, and the Court's Focusing Order was not intended to prohibit Apple's ability to show the state of the art using unelected prior art.  Docket No. 616 at 1.  Apple argues that the state of the art is "a foundational factual inquiry underlying both motivation to combine and § 101 patent eligibility," and nothing in this district's Local Patent Rules limit a party's state-of-the-art evidence to only prior art disclosed in a party's invalidity contentions under LPR 3-3.  *Id.* at 1–2.  To the extent that Maxell is asking the Court to prohibit Apple's experts from testifying regarding any unelected prior art to show the state of the art, Apple argues that this request is untimely.  *Id.* at 4.

Maxell's MIL #10 is **GRANTED-IN-PART** and **DENIED-IN-PART.**  Maxell states in its motion that Apple "will use the references solely for the purpose of showing the 'state of the art' and/or to pursue invalidity under § 101."  Docket No. 602 at 3.  In arguing that this is not a permissible use of prior art, Maxell cites no case from this district.  *See id.*; *see also* Docket No. 611.  Maxell instead relies on cases from the Western District of Pennsylvania, the Northern District of Illinois and the Northern District of California.  Those districts each have local patent rules that require parties to disclose in their invalidity contentions a detailed explanation of any grounds of invalidity under § 101.  *See* W.D. Penn. LPR 3-4(c)(5); N.D. Ill. LPR 2.3(b)(5); N.D. Cal LR 3-3(d).  The Local Patent Rules of this district do not contain such a requirement.  Indeed, "courts in the Eastern District have permitted defendants to rely on references that were not included in their invalidity contentions when the references were not proposed as invalidating prior art, but were directed to other purposes, such as showing the state of the art at the time of the invention or rebutting the patentee's secondary consideration evidence."  *Allergan, Inc. v. Teva Pharm. USA, Inc., et al.*, No. 2:15-cv-1455-WCB, Docket No. 395 at 7 (E.D. Tex. Aug. 3, 2017). That is precisely what Apple seeks to do here.

Maxell points to the Focusing Order as its basis for limiting Apple to only its 20 elected prior art references at trial.  Docket No. 602 at 1.  In *Allergan*, the plaintiff asked the court to exclude three journal articles that were cited in the defendants' invalidity contentions but not among the 11 references listed by the defendants as part of the parties' agreement to narrow the case.  No. 2:15-cv-1455-WCB, Docket No. 395 at 16.  In rejecting the plaintiff's request, Judge Bryson found that the "best interpretation" of the parties' agreement was "that it limits the defendants to asserting the 11 specified prior art references as invalidating references, either alone or in combination, but it does not prohibit the use of other references, in particular those cited in [an expert] report, as supportive evidence indicative of the state of the art."  *Id.* at 17.  That analysis applies here.  Neither the Court's Focusing Order (Docket No. 602) nor its order narrowing the case (Docket No. 619) prohibits Apple's use of prior art references to show the state of the art. Indeed, the Court's order narrowing the parties' contentions explicitly exempts Apple's § 101 challenges from the prior art limitations.  Docket No. 619 at 1.

Further, limiting Apple's use of prior art discussed and referenced in its expert reports would be improper at this stage.  Many of the cases that Maxell cites involve motions to strike portions of expert reports that discuss unelected prior art references.  *See, e.g., Medline Indus. Inc. v. C.R. Bard, Inc.*, No. 1:17-cv-7216 (N.D. Ill. Jan. 5, 2021).  To the extent that Maxell is objecting to portions of Apple's expert reports that rely on unelected prior art references to describe the state of the art, Maxell could have filed a motion to strike on that basis.  Maxell did not do so.  A motion *in limine* is not the appropriate remedy for such an objection.  There is "even less prejudice" to Maxell where the disputed prior art references are discussed in expert reports that Maxell has known about for months.  *Allergan*, No. 2:15-cv-1455-WCB, Docket No. 395 at 17.

This does not mean, however, that Apple can use all of the prior art listed in its § 282 notice at trial.  "[T]he Court has often barred parties from using unelected references when the use of those references risks juror confusion.  The risk can rise to high levels when the unelected references are patents and patent applications."  *Better Mouse Co. v. SteelSeries ApS*, No. 2:14-cv-198, 2016 WL 3611560, at *1 (E.D. Tex. Jan. 5, 2016); *see also Allergan*, No. 2:15-cv-1455-WCB, Docket No. 395 at 13.  The use of unelected patent and patent applications "gives rise to the substantial risk that jurors will perceive those patents and patent applications as similar to the elected patent and patent applications and thus as unrebutted evidence of invalidity."  *Better Mouse*, 2016 WL 3611560, at *1.  Depending on the nature of the prior art reference and the specific purpose for which it will be used, this risk may be mitigated.  *Allergan*, No. 2:15-cv-1455-WCB, Docket No. 395 at 12–13 (finding that the proposed prior art references were "clearly offered for . . . limited purposes.").  Exclusion is appropriate where "it appears that the real purpose for offering the prior art reference is to . . . invite the jury to consider the reference for an improper purpose."  *Id.*

Apple specifically lists 54 patents in its § 282 notice and incorporates by reference potentially hundreds more. Docket No. 602-3, Ex. 2.  Each of these patents and patent applications, considered alone, carry a substantial risk of jury confusion; the sheer number of patents listed only heightens that risk.  The Court is unable to determine a specific, limited purpose for which more than 50 patents and patent applications may be used other than to invite the jury to improperly consider them as evidence of invalidity.  Any prejudice to Apple in excluding the use of these references is minimal.  Apple is free to use the myriad other prior art publications, articles, documents, products and systems identified in its § 282 notice as evidence of the state of the art.

Accordingly, Maxell's additional motion *in limine* is **GRANTED-IN-PART** and **DENIED-IN-PART**.  Apple and its experts may rely on unelected prior art contained in its § 282 notice, excluding patents and patent applications, for the limited purpose of providing evidence regarding state of the art in its § 101 challenges, but may not rely on any unelected references as invalidating prior art.

## XI.    Apple's MIL #1

Apple asks the Court to exclude references to Apple's size, financial resources, market power, or overall financial numbers, including overall revenues and profits earned by Apple from selling the accused products.  Docket No. 548 at 1.  Maxell agrees not to refer to market capitalization, stock price, cash reserves, revenues associated with unaccused products and Apple's ability to pay Maxell's alleged damages, but contends that Apple's market share and volume of sales is directly relevant to the hypothetical negotiation framework and availability of non-infringing alternatives.  Docket No. 564 at 1–2.

Apple's MIL #1 is **GRANTED-IN-PART** as agreed.  At the pretrial conference, the parties discussed the possibility of stipulating to average sales price of each accused device, obviating the need for Maxell to refer to Apple's volume of sales.  Docket No. 590 at 82:12–17, 84:15–17, 85:22–86:4 ("[I]f they stipulate to the average selling price, the revenue won't come in.").  The parties also discussed agreeing to referring to Apple's market share as a percentage or relative size rather than a total number of sales.  *Id.* at 84:20–85:17.  Accordingly, the parties are ordered to meet and confer and file a joint status report confirming their agreement with the Court or briefly describing the nature of any remaining dispute no later than Monday, March 8, 2021, at 5 p.m. CST.

XII.   **Apple's MIL #2**

Apple asks the Court to exclude references "about other litigations, administrative proceedings, investigations, or accusations, including other U.S. and foreign proceedings between Maxell and Apple, the prior litigation between Maxell and ZTE (including its outcome), or any other litigations or accusations involving Apple and its counsel." Docket No. 548 at 3. Maxell responds that it does not oppose Apple's motion with respect to other litigations between it and Apple, but that granting Apple's motion as written would prevent Maxell from introducing any licenses to the asserted patents that bear connection to previous litigations. Docket No. 564 at 3. Maxell's damages expert, Dr. Carla Mulhern, relies on prior licenses in calculating a reasonable royalty in this case. *Id.* Further, Maxell contends that the ZTE verdict is necessary to rebut Apple's arguments challenging Maxell's secondary considerations of non-obviousness for the asserted patents. *Id.* at 4.

Apple's MIL #2 is **GRANTED**. Neither party will be permitted to refer to other litigations or parallel proceedings, including any other litigations between Maxell and Apple or the ZTE jury verdict. Evidence of prior verdicts "can be prejudicial and must be treated with great care," but "it is admissible if it is relevant to a material issue in the case and its use is limited to the purpose for which it is relevant." *Sprint Communications Co. v. Time Warner Cable, Inc.*, 760 F. App'x 977, 980 (Fed. Cir. 2019). Maxell argues that the ZTE verdict is relevant to rebutting Apple's challenges to its secondary considerations of non-obviousness. Docket No. 564 at 4.

"The [ZTE] verdict may be relevant, but it is unfairly prejudicial and confusing." *VirnetX Inc., et al. v. Apple Inc.*, No. 6:12-cv-00855-RWS, Docket No. 937, at 8 (E.D. Tex. Sept. 1, 2020). While the prior verdict involved some of the same patents asserted here, its probative value is minimal, as the ZTE case involved different parties, accused products, witnesses and prior art.

And admitting the ZTE verdict would unfairly prejudice Apple by "invit[ing] the jury here to defer to the [ZTE] jury's verdict, rather than discharging their duty to resolve the current dispute."  *Id.* Such a result would be inappropriate and constitutes unfair prejudice.  FED. R. EVID. 403.

At the pretrial conference, Apple indicated that it was not opposed to allowing references to licenses or settlement agreements, and that this motion was not intended to prohibit such references. *See* Docket No. 590 at 86:14–22 ("[T]o the extent that our motion suggested it, we're not at all seeking to exclude settlement agreements.  The ZTE settlement agreement, I think both experts talk about it."); 89:15–21 ("Maxell's expert . . . will say these patents have value, look at all the people who have taken licenses to them, including ZTE, and that is not something we're seeking to prevent, obviously.").  This order therefore does not prohibit references to licenses or settlement agreements resulting from previous litigations.

## XIII.   Apple's MIL #3

Apple asks the Court to prohibit Maxell from presenting evidence or argument about Hitachi's history, licensing practices and discussions between Hitachi and Apple to which Maxell was not a party.   Docket No. 548 at 4.   Maxell responds that it is not relying on "hearsay statements," but rather documents and materials held by both Apple and Hitachi in the ordinary course of business and produced by both parties in this case.  Docket No. 564 at 4–5.  Regarding Hitachi's history and licensing practices, Maxell responds that it is not "placing itself in Hitachi's shoes," but relying on Maxell's direct knowledge of Hitachi's history based on its experience— and that of its predecessor HMX—working with Hitachi.  *Id.* at 6.  Further, any evidence of Hitachi's licensing practices is not offered to prove Hitachi's standard rate or licensing practices, but rather to explain how Maxell arrived at its own standard license rate for the smartphone patent portfolio.  *Id.*

Apple's MIL #3 is **DENIED**.  The documents detailing the discussion between Hitachi and Apple that Apple seeks to prohibit have been produced by Apple in this case, and there is no genuine dispute as to their authenticity.  *See* Docket No. 590 at  93:25–94:10.  These documents, used to prove notice, do not implicate issues of hearsay, and Maxell agrees that it will not offer any details regarding this discussion beyond what is reflected in those documents.  Docket No. 564 at 4–5.  Maxell has also agreed that it will not place itself in Hitachi's shoes or tout Hitachi's accomplishments as its own, but rather refer to Hitachi, when necessary, as the previous owner of the asserted patents.  *Id.* at 6.  Maxell shall limit its discussion of Hitachi's licensing practices to only what is necessary to provide testimony and evidence regarding how Maxell arrived at its own licensing rates.

## XIV.   Apple's MIL #4

Apple asks the Court to prohibit Maxell from offering evidence or argument about Maxell Research and Development America (MRDA).  Docket No. 548 at 6.  Apple submits that MRDA is an affiliate of Maxell with no connection to any issue the jury will decide.  *Id.* at 7.  Nonetheless, Apple argues that Maxell will attempt to elicit testimony that MRDA is developing a product that practices three of the asserted patents and that Maxell has a "local presence" in the district through MRDA.  *Id.*  Maxell responds that references to MRDA are relevant for background purposes, to explain the nature of Maxell's business, and for demonstrating development of the underlying technologies at issue in this case.  Docket No. 564 at 7.  Maxell argues that two witnesses it intends to call at trial work at or with MRDA and will provide testimony discussing MRDA.  *Id.*  Apple's motion would therefore unfairly preclude this witness testimony.  *Id.*

Apple's MIL #4 is **DENIED**.  Maxell indicates that MRDA will be factually relevant to witness testimony and Apple has not persuasively argued that such testimony will be overly

confusing or prejudicial.  If Apple feels that Maxell's proffered testimony or evidence is irrelevant, it may object at trial.  But the Court sees no reason to institute a blanket prohibition regarding MRDA.

## XV.    Apple's MIL #5

Apple asks the Court to prohibit Maxell from offering evidence or argument that Apple Watch or iPad infringes the '317, '999 and '498 patents.  Docket No. 548 at 8.  Although Maxell accuses several versions of iPad and the Apple Watch Series 5 of infringing the '317, '999 and '498 patents, Maxell's damages expert does not contend that Maxell suffered any damages as a result of Apple's alleged infringement.  *Id.*  Because Maxell seeks no remedy for this alleged infringement, Apple argues that evidence about alleged infringement of those patents by those devices would be irrelevant, wasteful and confusing to the jury.  *Id.*  Maxell responds that damages is not a required element of patent infringement, and Maxell is therefore not required to show monetary damages in order to succeed on its infringement claims of the '317, '999 and '498 patents.  Docket No. 564 at 8.

Apple's MIL #5 is **GRANTED**.  Maxell is correct in noting that damages are not an essential element of infringement.  But Maxell intends to use evidence of Apple's infringement of these patents by Apple Watch and iPad to "help the jury understand that [the] damages calculation for the '317, '999 and '498 patents is conservative."  Docket No. 564 at 8–9.  This is improper. Evidence of Apple's infringement that will not be factored into the final damages calculation, to the extent that such evidence might be relevant, carries a high risk of jury confusion. FED. R. EVID. 403.  Maxell can introduce other evidence and argument demonstrating that its expert's damages calculation is "conservative," but the likelihood that the jury would be unable to extricate

infringement of these patents by Apple Watch and iPad—for which Maxell seeks no damages—and infringement by iPhone—for which it must award monetary damages—is too great.

## XVI.   Apple's MIL #6

Apple asks the Court to prohibit Maxell "from offering evidence or argument about Steve Jobs, political positions taken by Apple or its leadership, media reports unrelated to this litigation, and media speculation about Apple."  Docket No. 548 at 8.  Apple argues that any such evidence is irrelevant to any issue in this case and would only be used to confuse or prejudice the jury.  *Id.* at 9.  Maxell responds that Apple's motion is overly broad and vague and would preclude relevant evidence.  Docket No. 564 at 9.  Maxell does not oppose the motion with respect to political positions taken by Apple or its leadership or media speculation.  *Id.*  But, Maxell argues, Apple's motion would categorically exclude any reference to Steve Jobs, as well as prevent Maxell from responding to Apple's damages expert, Mr. Gunderson, who opines on Apple's brand strength and customer loyalty.  *Id.*  Without knowing what arguments Apple may make at trial or what positions it may take, Maxell argues that the Court should not categorically exclude all references to Steve Jobs or media reports on Apple at this stage.  *Id.*

At the pretrial conference, the parties' presentations reflected that there was general agreement regarding this motion.  *See* Docket No. 590 at 126:25–127:2 ("Now, we have eliminated many of the disputes and [Maxell is] not suggesting that speculation and political positions are even an issue . . ."); 130:10–11 ("I can represent firmly to the Court that Lance Gunderson is not going to talk about Mr. Jobs."); 130:19–22.  The parties are ordered to meet and confer and file a joint status report confirming their agreement with the Court or briefly describing the nature of any remaining dispute no later than Monday, March 8, 2021, at 5 p.m. CST.

## XVII.  Apple's MIL #7

Apple asks the Court to prohibit Maxell from characterizing the burden of proof or other legal standards in this case with references to other areas of the law, including child custody and mental commitment proceedings.  Docket No. 548 at 9.  Apple specifically refers to Maxell's closing argument in the ZTE case, where Maxell's counsel compared the "clear and convincing evidence" standard to "the same burden that the State has to meet to take your children away."  *Id.* at 9–10.  Maxell responds that Apple's motion is overly vague, would preclude relevant comparisons that help the jury understand the burden of proof standard, and notes that Apple's proposed jury instructions include a reference to "beyond a reasonable doubt."  Docket No. 564 at 10.

Apple's MIL #7 is **GRANTED-IN PART** and **DENIED-IN-PART**.  A blanket prohibition on any and all references to outside burdens of proof is not necessary.  But no party shall make inflammatory or misleading comparisons concerning the burden of proof in this case to the jury, such as comparing the "clear and convincing evidence" standard in this case to "the same burden that the State has to meet to take [the jurors'] children away."

## XVIII. Apple's MIL #8

Apple asks the Court to preclude any evidence or argument "about any witness's compensation, stock options, or net worth, or the income, net worth, or other personal financial information of any of the parties' experts that is unrelated to this litigation, including amounts paid to the parties' expert to testify on behalf of, or against, the parties in other litigations."  Docket No. 548 at 10.  Apple contends that such information is irrelevant because Apple's employees have no direct financial stake in the outcome of the case and that the probative value of any such information is substantially outweighed by its potential prejudice.  *Id.*  Maxell responds that it has

agreed to preclude such evidence or argument for expert witnesses, but that any compensation received by a fact witness or other financial ties Apple's fact witnesses may have to Apple would be directly relevant to demonstrating bias.  Docket No. 564 at 11–12.

At the pretrial conference, the parties' presentations reflected that there was general agreement regarding this motion.  *See* Docket No. 590 at 134:15–20, 135:2–6 ("My colleagues on the other side agree not to reference personal finances [or] net worth.").  The sole remaining potential dispute related to this motion concerns the degree to which Maxell may question Apple's fact witnesses on compensation, including stock ownership, to determine bias.  The parties are ordered to meet and confer and file a joint status report confirming their agreement with the Court or briefly describing the nature of any remaining dispute no later than Monday, March 8, 2021, at 5 p.m. CST.

## XIX.   Apple's MIL #9

Apple asks the Court to prohibit Maxell from offering evidence or argument "regarding Apple's foreign operations, including the size of Apple's operations abroad and its corporate tax structure; the location of Apple's suppliers, manufacturers, or assemblers; working conditions or labor issues; and any press concerning such companies or issues."  Docket No. 548 at 10.  Apple argues that any such evidence is not relevant to any issue in this case and "would have no purpose other than to invite a negative emotional jury response by suggesting unfairly that Apple outsources American jobs and does so under poor working conditions."  *Id.* at 11.  Maxell responds that it does not oppose Apple's motion in regard to working condition or labor issues, but that the motion is otherwise overbroad and would preclude any mention of the name of an Apple supplier if the supplier's name included a foreign location or otherwise indicated that the supplier was foreign-based.  Docket No. 564 at 12.

Apple's MIL #9 is **GRANTED-IN PART** and **DENIED-IN-PART**.  Maxell has agreed not to refer to Apple's foreign operations in regard to working conditions or labor issues.  Evidence or references to Apple's foreign operations used to imply that Apple outsources American jobs, "sources from abroad," or otherwise unfairly prejudice the jury will be prohibited.  FED. R. EVID. 403.  But Maxell is not prohibited from simply referring to an Apply supplier or related company because that supplier is based abroad.  To the extent that such evidence is relevant, Maxell may reference a component of an Apple accused product that is produced by a foreign supplier or manufacturer without violating this order.  *See* Docket No. 590 at 143:1–8.

## XX.    Conclusion

For the foregoing reasons, Maxell's Motions *in Limine* (Docket No. 547), Apple's Motions *in Limine* (Docket No. 548) and Maxell's Additional Motion *in Limine* (Docket No. 602) are each **GRANTED-IN-PART** and **DENIED-IN-PART**.  Further, the parties are **ORDERED** to meet and confer regarding the outstanding motions and, no later than **5 p.m. CST on Monday, March 8, 2021**, provide the Court with a status report confirming their agreement or informing the Court of any outstanding disagreements.  That report shall not re-brief the arguments contained in the parties' respective motions *in limine*, but rather inform the Court which, if any, disputes remain regarding the outstanding motions and, if a dispute remains, briefly describe the nature of that dispute.

**So ORDERED and SIGNED this 26th day of February, 2021.**

ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE